UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIDEON RAPAPORT,

                    Plaintiff,

          - vs. -

ABIGAIL FINKELMAN,

                    Defendant.

No.: 1:24-cv-05942 (JGLC)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABIGAIL FINKELMAN'S MOTION TO DISMISS WITH PREJUDICE FOR FAILURE TO STATE A CLAIM

Max Rodriguez
LAW OFFICE OF MAX RODRIGUEZ PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
max@maxrodriguez.law
(646) 741-5167
*Attorney for Defendant Abigail Finkelman*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 2

SUMMARY OF ALLEGATIONS ....................................................................................... 3

PROCEDURAL HISTORY ................................................................................................... 5

ARGUMENT ......................................................................................................................... 7

I.     PLAINTIFF HAS FAILED TO STATE A CLAIM FOR DEFAMATION .......................... 7

    A.   Ms. Finkelman is immune from Plaintiff's claims under New York Civil Rights Law ...... 8

    B.   Ms. Finkelman's statements are non-actionable opinions ................................................... 10

    C.   To the extent they communicate any statements of fact, Ms. Finkelman's statements are true ......................................................................................................................................... 14

    D.   Plaintiff fails to make any allegations of actual malice ...................................................... 15

II.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR FALSE LIGHT AND INVASION OF PRIVACY ........................................................................................................................ 17

    A.   New York law applies and does not recognize Plaintiff's claim ....................................... 17

    B.   Even considered on the merits, Plaintiff fails to state a claim for false light and invasion of privacy ........................................................................................................................................ 20

III.  THE COURT SHOULD GRANT MS. FINKELMAN'S MOTION WITH PREJUDICE ... 21

CONCLUSION ...................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Aboutaam v. Dow Jones & Co.*,
   180 A.D.3d 573 (N.Y. App. Div. 1st Dep't 2020)....................................................................... 9

*Actos End-Payor Antitrust Litig.*,
   848 F.3d 89 (2d Cir. 2017) .......................................................................................................... 3

*Aguirre v. Best Care Agency, Inc.*,
   961 F. Supp. 2d 427 (E.D.N.Y. 2013) ......................................................................................... 9

*Ali v. Woodbridge Township Sch. Dist.*,
   957 F.3d 174 (3d Cir. 2020) ...................................................................................................... 20

*Andros v. Gross*,
   No. 03-cv-1775, 2005 WL 3500058 (D.N.J. Dec. 21, 2005) .................................................... 20

*Arista Records, Inc. v. Flea World, Inc.*,
   356 F. Supp. 2d 411 (D.N.J. 2005) ........................................................................................... 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................................... 3

*Bose Corp. v. Consumers Union of United States*,
   466 U.S. 485 (1984).................................................................................................................. 16

*Bouchard v. Daily Gazette Co.*,
   136 A.D.3d 1233 (N.Y. App. Div. 3d Dep't 2016) .................................................................... 8

*Brandon v. Musoff*,
   No. 10-cv-9017, 2012 WL 135592 (S.D.N.Y. Jan. 17, 2012) ................................................... 3

*BYD Co. Ltd. v. VICE Media LLC*,
   531 F. Supp. 3d 810 (S.D.N.Y. 2021) ................................................................................. 15, 17

*Celle v. Filipino Reporter Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000) ...................................................................................................... 12

*Contemp. Mission, Inc. v. N.Y. Times Co.*,
   842 F.2d 612 (2d Cir. 1988) ...................................................................................................... 16

*Correa v. Lynch*,
   No. 20-CV-02875 (PMH), 2022 WL 161446 (S.D.N.Y. Jan. 18, 2022)................................... 17

*Cortes v. Twenty-First Century Fox America, Inc.*,
   285 F. Supp. 3d 629 (S.D.N.Y. 2018) ....................................................................................... 14

*Daleiden v. Planned Parenthood Fed. of America*,
  No. 21-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) .............................................. 9, 11, 13

*Daytree at Cortland Square, Inc. v. Walsh*,
  332 F. Supp. 3d 610 (E.D.N.Y. 2018) ...................................................................................... 6

*Fishof v. Abady*,
  280 A.D.2d 417 (N.Y. App. Div. 1st Dep't 2001) ...................................................................... 9

*Ford v. Levinson*,
  90 A.D.2d 464 (N.Y. App. Div. 1st Dep't 1982) ........................................................................ 9

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
  669 F. Supp. 2d 405 (S.D.N.Y. 2009) ....................................................................................... 7

*Garrison v. State of La.*,
  379 U.S. 64 (1964) ................................................................................................................... 15

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ................................................................................................................. 16

*Gonzalez v. Gray*,
  216 F.3d 1072 (2d Cir. 2000) .................................................................................................... 9

*Gross v. N.Y. Times Co.*,
  82 N.Y.2d 146 (1993) .............................................................................................................. 11

*Henry v. Fox News Network LLC*,
  629 F. Supp. 3d 136 (S.D.N.Y. 2022) ..................................................................................... 18

*Hosseinzadeh v. Klein*,
  276 F. Supp. 3d 34 (S.D.N.Y. 2017) ....................................................................................... 11

*Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. v. City of New York
  Dep't of Parks & Recreation*,
  311 F.3d 534 (2d Cir. 2002) .................................................................................................... 16

*Idema v. Wager*,
  120 F. Supp. 2d 361 (S.D.N.Y. 2000) ................................................................................. 9, 13

*Int'l Bhd. of Teamsters Loc. 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*,
  No. 10-CV-1692 (RJD), 2012 WL 13202126 (E.D.N.Y. Apr. 19, 2012) .............................. 16

*Jacob v. Lorenz*,
  626 F. Supp. 3d 672 (S.D.N.Y. 2022) ............................................................................... 11, 18

*Jeanty v. Cerminaro*,
  No. 21-1974, 2023 WL 325012 (2d Cir. Jan. 20, 2023) ........................................................... 9

iii

*Katz v. Ambit Northeast, LLC*,
    No. 3:20-cv-1289, 2020 WL 5542780 (D.N.J. Sept. 16, 2020)................................................ 20

*Kinsey v. New York Times Co.*,
    991 F.3d 171 (2d Cir. 2021) ............................................................................ passim

*Kramer v. City of New York*,
    No. 04-cv-106, 2004 WL 2429811 (S.D.N.Y. Nov. 1, 2004) .................................................. 17

*LaNasa v. Stiene*,
    No. 22-cv-5686, 2024 WL 1648001 (E.D.N.Y. Apr. 17, 2024)............................................... 11

*Leang v. Jersey City Bd. of Educ.*,
    198 N.J. 557 (2009) ......................................................................................... 20

*Lee v. Bankers Trust Co.*,
    166 F.3d 540 (2d Cir. 1999) .............................................................................. 18

*Lee v. TMZ Productions Inc.*,
    710 Fed. Appx. 551 (3d Cir. 2017)...................................................................... 10

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*,
    239 F.3d 172 (2d Cir. 2001) ................................................................................ 6

*Misek-Falkoff v. McDonald*,
    63 Fed. Appx. 551 (2d Cir. 2003) ........................................................................ 9

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ............................................................................... 3

*Prince v. Intercept*,
    634 F. Supp. 3d 114 (S.D.N.Y. 2022) ................................................................... 18

*Reliance Ins. Co. v. Barron's*,
    442 F. Supp. 1341 (S.D.N.Y. 1977) ..................................................................... 16

*Reus v. ETC Hous. Corp.*,
    72 Misc. 3d 479 (N.Y. Sup. Ct. 2021) .................................................................... 7

*Seymour v. Lakeville J. Co. LLC*,
    150 Fed. Appx. 103 (2d Cir. 2005)........................................................................ 9

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)....................................................................................... 15

*Tacopina v. O'Keeffe*,
    No. 15-3003, 645 Fed. Appx. 7 (2d Cir. 2016).......................................................... 9

*Tannerite Sports, LLC v. NBCUniversal News Grp.,*
  *a division of NBCUniversal Media, LLC*, 864 F.3d 236 (2d Cir. 2017) .................................. 14

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.,*
  603 F. Supp. 2d 584 (S.D.N.Y. 2009) ................................................................ 9, 10

*Tracy v. Newsday, Inc.,*
  5 N.Y.2d 134 (1959) ............................................................................. 13

*Wilcox v. Superior Ct.,*
  27 Cal. App. 4th 809 (1994) ......................................................................... 2

## **Statutes**

N.Y. Civil Rights L. § 74 ............................................................................. 8

N.Y. Civil Rights L. § 76 ......................................................................... 7, 15

## **Rules**

Fed. R. Civ. P. 11 ................................................................................. 6, 17

Fed. R. Civ. P. 12 ................................................................................. 1, 21

Defendant Abigail Finkelman respectfully submits this Memorandum of Law in support of her motion to dismiss the complaint in this action, No. 1:24-cv-05942, ECF no. 1 (the "Complaint"), with prejudice, for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

Plaintiff Gideon Rapaport has in the last couple years revealed himself to be not just litigious, but also thin-skinned, self-aggrandizing, and vindictive. Ms. Finkelman, a young public interest attorney in New York who has never met Mr. Rapaport and had never heard of him before reading his prior filings with this Court, has been forced to retain a lawyer and defend herself in this case for one reason: she dared to mock him and his now-former lawyer that he fired. For exercising her Constitutional rights to share her opinions online in the court of public opinion about Plaintiff's other litigation, Plaintiff has asserted claims against her in this Court for defamation and "False Light and Invasion of Privacy" with no basis in law or fact. Plaintiff's claims are frivolous and fail to state a claim for several reasons.

First, Plaintiff's claims are barred by New York law, which provides a specific statutory immunity for fair and true statements concerning judicial proceedings. Ms. Finkelman's posts were unquestionably related to Plaintiff's other litigation. And they were fair and true because, as relevant here, she merely re-posted a photograph that was the subject of his prior lawsuit. Plaintiff confirmed as much when he filed the same photograph in that lawsuit as an exhibit.

Second, Ms. Finkelman's statements are protected and non-actionable opinions. In positing about Plaintiff's other litigation, she clearly to any reasonable reader meant to express one opinion: she thought that Plaintiff's litigation was mockworthy and amusing. Such statements are not actionable and fail to state a claim.

Third, even if the statements were actionable and capable of being proven true or false (which they are not), Plaintiff's claims would still fail because Ms. Finkelman's statements are true. She accepted Plaintiff's representations in his litigation and merely re-posted content that was the subject matter of that litigation. To the extent those statements communicated any facts at all, they merely represented that what she was posting was the same content at issue in his lawsuit. It was, making those statements true and not actionable.

Fourth, Plaintiff's other litigation before this Court attracted the attention and amusement of others in the legal community beside Ms. Finkelman. For this reason, under both New York law and prior precedent, even assuming he could plausibly allege a provably false statement of fact (which he can't), Plaintiff is required to plausibly allege that Ms. Finkelman made such a statement with actual malice. His complaint includes no allegations about her state of mind at all, nor could it.

This case is a prime example of a strategic lawsuit against public participation (a "SLAPP" suit). Despite "masquerad[ing] as [an] ordinary lawsuit[]," Plaintiff's allegations and claims are entirely meritless and appear intended not to vindicate any real legal right or address any real legal injury, but instead to deter "common citizens" like Ms. Finkelman "from exercising their political or legal rights or to punish them for doing so." *Wilcox v. Superior Ct.*, 27 Cal. App. 4th 809, 816 (1994). This Court must not countenance this cynical abuse of the legal system and should dismiss the complaint in its entirety with prejudice for failure to state a claim.

## **LEGAL STANDARD**

"To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*In re Actos End-Payor Antitrust Litig.*, 848 F.3d 89, 97 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard "is not akin to a 'probability requirement,' [] it asks for more than a sheer possibility that a defendant has acted unlawfully." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019). Determining whether a complaint plausibly states a claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## SUMMARY OF ALLEGATIONS

Accepting Plaintiff's allegations as true, his claims concern a series of posts by Ms. Finkelman on X (formerly known as Twitter).[1] Ms. Finkelman has an account on X under the name "@clapifyoulikeme." Complaint ¶ 11.

On July 28, 2023, Plaintiff filed a *pro se* complaint in another action before this Court, *Rapaport v. Iyer et al.*, No. 1:23-cv-06709 (S.D.N.Y.) ("*Rapaport I*").[2] Complaint ¶ 9. In *Rapaport I*, Plaintiff asserted claims for defamation, defamation by implication, defamation *per se*, invasion of privacy and false light, and intentional infliction of emotional distress against three John Doe defendants. *Rapaport I*, ECF no. 1.[3] The complaint in *Rapaport I* was later

---

[1] All of Ms. Finkelman's relevant posts are attached to and incorporated in the Complaint. *See* No. 1:24-cv-05942, ECF no. 1-2.

[2] The original complaint in *Rapaport I* is enclosed in support of this motion. Declaration of Max Rodriguez in Support of Motion to Dismiss with Prejudice (Oct. 21, 2024) ("Rodriguez Dec."), Ex. 1.

[3] The Court "may take judicial notice of filings in other courts 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Brandon v. Musoff*, No. 10-cv-9017, 2012 WL 135592, at *3 (S.D.N.Y. Jan. 17, 2012) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

amended, with Plaintiff represented by his now-former counsel Mr. Altman, naming three individuals as defendants. Rodriguez Dec., Ex. 2. Among other things, the Complaint in *Rapaport I* alleged that the defendants in that case "forged a document" by adding "a corporate headshot style photograph of the Plaintiff" to a document he claimed "was in the style of a 'wanted' or 'public enemy' poster" and added "the bolded and capitalized text 'DO NOT ADMIT.'" Rodriguez Dec., Ex. 1, ¶ 7. Plaintiff alleged in *Rapaport I* that the defendants used this supposedly fictitious document to stage or forge a photograph that showed the document posted "at the guarded security gate at 601 Lexington Avenue, New York," the office of Plaintiff's former employer, Kirkland & Ellis LLP. *Id.* ¶¶ 6–8.

On August 6, 2023, Ms. Finkelman, using her X account, made a "thread" (a series of connected posts) discussing the *Rapaport I* lawsuit. Complaint ¶ 11. These posts, sometimes enclosing screenshots of excerpts from the original complaint in *Rapaport I* and other related public materials, laid out Ms. Finkelman's reactions to Plaintiff's *Rapaport I* lawsuit. In sum, her posts reflected her opinion that *Rapaport I* was a mockworthy lawsuit, and that others should read it for their own amusement.

Specifically, among other things, she said "all of #lawtwitter [should] read this complaint. I promise you will not regret it." Complaint ¶ 12; ECF no. 1-2 at 2. She referred to potential discovery in *Rapaport I* as "interesting." ECF no. 1-2 at 4; *see also id.* at 23. She joked about potential witnesses at a potential trial in *Rapaport I. Id.* at 5. She mocked Plaintiff's writing style, litigation tactics, descriptions of himself, and descriptions of his political and legal opinions described in his complaint. *See id.* at 6, 17, 21, 24, 29, 32. She expressed disbelief or skepticism at a variety of the claims he made in *Rapaport I. See id.* at 7–12, 14–16, 27. She mocked his monetary prayer for relief. *Id.* at 18. And she mocked Plaintiff's now-former

attorney in *Rapaport I* and this action, Mr. Altman. *Id.* at 25. Plaintiff acknowledges that this "series of comments about the allegations" were "within her First Amendment rights, despite their critical nature." Complaint, ¶ 13.

Most relevant here, in her thread, Ms. Finkelman expressed sarcastic disappointment that the original complaint in *Rapaport I* did not include the supposedly faked photograph of the supposedly forged document, saying "Smh [shaking my head] why wouldn't you include screenshots, I wanna see the fake 'wanted' or 'public enemy' poster." Complaint ¶ 14; ECF no. 1-2 at 3. Later in her thread, Ms. Finkelman posted the photograph, saying "We got it lads, s/o [shout out] to an anonymous tipster." Complaint ¶ 15; ECF no. 1-2 at 20. As the Complaint says, the photograph Ms. Finkelman posted "is a copy of the faked photograph of plaintiff" described in his original complaint in *Rapaport I*. Complaint ¶ 16; *see* Rodriguez Dec., Ex. 1 at ¶ 7. Plaintiff alleges that the photograph "falsely accuses plaintiff, by name and likeness, of being a trespasser, and it falsely implies that he is unfit to practice his profession." Complaint ¶ 20.

The Complaint notes that in 2024, Ms. Finkelman updated her thread to include updates from *Rapaport I*, including that Mr. Altman had appeared as Plaintiff's counsel, that an amended complaint was filed, and that she found both Mr. Altman and the amended complaint similarly mockworthy. *See* Complaint ¶¶ 24–26.

## PROCEDURAL HISTORY

Plaintiff filed this action and his Complaint on August 5, 2024. He asserts claims for defamation *per se* and "False Light and Invasion of Privacy." Complaint ¶¶ 27–41. He seeks

declaratory relief[4] that the photograph and the document therein are fake, an injunction[5] requiring Ms. Finkelman to remove the photograph from anywhere she has published it, and compensatory and punitive damages. Complaint at 7–8. On August 28, 2024, Ms. Finkelman filed a proposed stipulation and order agreeing to accept service and setting her deadline to answer or move to dismiss as October 28, 2024. ECF no. 6. The Court issued the order so proposed the next day. ECF no. 7.

On September 9, 2024, Plaintiff's now-former counsel Mr. Altman notified the Court in a letter motion to withdraw that Plaintiff had terminated his representation. ECF no. 8. On September 16, 2024, Ms. Finkelman filed a letter noting she did not oppose the motion to withdraw subject to a limited request that the Court retain jurisdiction over Mr. Altman for purposes of a future motion for sanctions under Rule 11. ECF no. 11. On September 17, 2024, the Court granted the motion to withdraw and granted Ms. Finkelman's request to retain jurisdiction over Mr. Altman. ECF no. 13. Mr. Rapaport is now proceeding *pro se* in this case. On October 4, 2024, Mr. Altman filed a "Letter Motion for Conference" seeking either a conference or modification of the Court's prior order releasing him from the Court's jurisdiction. ECF no. 14. The same day, Ms. Finkelman opposed Mr. Altman's motion. ECF no. 15. On October 9, 2024, the Court denied Mr. Altman's motion. ECF no. 16.

---

[4] The claims should separately be dismissed, at least in this respect, because Plaintiff requests declaratory relief for an alleged injury not traceable to Ms. Finkelman and which would amount to an advisory opinion. *See Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 627–28 (E.D.N.Y. 2018) (rejecting request for declaratory relief on defamation claim).

[5] The claims should separately be dismissed, at least in this respect, because the Second Circuit has made clear that injunctive relief is not available for claims like defamation. *See Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F.3d 172, 177 (2d Cir. 2001) (explaining "the Second Circuit has subscribed to the majority view that, absent extraordinary circumstances, injunctions should not ordinarily issue in defamation cases").

## ARGUMENT

## I.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR DEFAMATION

Under New York law, a defamation claim must allege "(1) a false statement about the [complainant]; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) (alterations in original) (quoting *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009)).

However, when the statement alleged to be defamatory is a "communication in a place open to the public or a public forum in connection with an issue of public interest" New York considers the defamation case to be an "action involving public petition and participation" and requires the plaintiff to prove that "any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false," i.e., actual malice, rather than mere negligence. N.Y. Civil Rights L. § 76-a(1)(a)(1), (2). The term "public interest" is "construed broadly, and shall mean any subject other than a purely private matter." *Id.* § 76-a(1)(d). This includes public statements concerning lawsuits. *See, e.g.*, *Reus v. ETC Hous. Corp.*, 72 Misc. 3d 479, 485 (N.Y. Sup. Ct. 2021), *aff'd*, 203 A.D.3d 1281 (N.Y. App. Div. 3d Dep't 2022).

Plaintiff does not and cannot state a claim for defamation against Ms. Finkelman for four principal reasons.[6] First, Plaintiff's claim is barred by statutory immunity under New York law protecting statements concerning judicial proceedings. Second, the statements Plaintiff alleges

---

[6] The arguments raised by Ms. Finkelman in support of her motion to dismiss the defamation claim apply with equal force to the false light and invasion of privacy claim. *See supra* § II(B).

are defamatory are non-actionable opinions. <u>Third</u>, even if the Court found the statements were not opinions, the statements are true. <u>Fourth and finally</u>, even if the Court found the statements were not opinions and were not true, Plaintiff is required to allege the statements were made with actual malice and has not made (and could not make) any allegations to satisfy that burden.

### A.    Ms. Finkelman is immune from Plaintiff's claims under New York Civil Rights Law

New York provides absolute immunity barring civil actions "against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." N.Y. Civil Rights L. § 74. A statement qualifies for the privilege if "'the ordinary viewer or reader' can 'determine from the publication itself that the publication is reporting on a judicial proceeding.'" *Kinsey v. New York Times Co.*, 991 F.3d 171, 179 (2d Cir. 2021).

A statement to which the immunity applies is "fair and true" if "it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Id.* at 178; *Bouchard v. Daily Gazette Co.*, 136 A.D.3d 1233, 1234 (N.Y. App. Div. 3d Dep't 2016) ("[T]he language used 'does not suggest more serious conduct than that actually suggested in the official proceeding.'" (quoting *Geiger v. Town of Greece*, 311 Fed. Appx. 413, 417 (2d Cir. 2009)). The immunity provided by section 74 has "a liberal interpretation … so as to provide broad protection to [] accounts of judicial proceedings." *Kinsey* at 179 (quoting *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir.

2017)). New York courts and courts in the Second Circuit have repeatedly applied section 74 in this manner to dismiss defamation claims where relevant.[7]

Ms. Finkelman's statements at issue in this lawsuit (including the posting of the photograph) are fair and true reports concerning *Rapaport I*, which is a judicial proceeding. Plaintiff's pleadings explicitly state that this is what Ms. Finkelman was doing. *See* Complaint ¶ 11 ("The plaintiff's *pro se* complaint was the subject of a series of comments by the defendant shortly after it was filed."). Although the photograph was not included in the original complaint in *Rapaport I*, that is of no moment. Speakers are entitled to reference "background material with regard to the case so long as the statement is a substantially accurate description of the allegation." *Fishof v. Abady*, 280 A.D.2d 417, 417–18 (N.Y. App. Div. 1st Dep't 2001) (citation omitted).[8] The *Rapaport I* pleadings described precisely the photograph Ms. Finkelman posted. *See Rapaport I*, ECF No. 1, ¶¶ 7–9. The application of section 74 immunity does not turn on whether something is directly drawn from a document. Instead, it turns on whether the statement

---

[7] *See, e.g.*, *Jeanty v. Cerminaro*, No. 21-1974, 2023 WL 325012 (2d Cir. Jan. 20, 2023) (summary order); *Daleiden v. Planned Parenthood Fed. of America*, No. 21-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022) (summary order); *Kinsey*, 991 F.3d at 179–180; *Tacopina v. O'Keeffe*, No. 15-3003, 645 Fed. Appx. 7 (2d Cir. 2016) (summary order); *Seymour v. Lakeville J. Co. LLC*, 150 Fed. Appx. 103 (2d Cir. 2005) (summary order); *Misek-Falkoff v. McDonald*, 63 Fed. Appx. 551 (2d Cir. 2003) (summary order); *Gonzalez v. Gray*, 216 F.3d 1072 (2d Cir. 2000) (summary order); *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 457–60 (E.D.N.Y. 2013); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 588–89 (S.D.N.Y. 2009); *Idema v. Wager*, 120 F. Supp. 2d 361, 367–69 (S.D.N.Y. 2000), *aff'd*, 29 Fed. Appx. 676 (2d Cir. 2002); *Aboutaam v. Dow Jones & Co.*, 180 A.D.3d 573, 574–75 (N.Y. App. Div. 1st Dep't 2020); *Ford v. Levinson*, 90 A.D.2d 464, 465 (N.Y. App. Div. 1st Dep't 1982).

[8] The Second Circuit "ha[s] made clear that '[t]he holding of an intermediate appellate state court … is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Misek-Falkoff v. McDonald*, 63 Fed. Appx. 551, 552–53 (2d Cir. 2003) (summary order) (cleaned up) (quoting *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399 (2d Cir. 2001)).

is "a fair and accurate report…." *Test Masters Educ. Servs.*, 603 F. Supp. 2d at 588 (applying section 74 immunity to report about investigation regardless of whether the writer "learned of the investigation through an official press release or a draft release or some other means").

Furthermore, Plaintiff admitted in the Complaint that the photograph Ms. Finkelman posted was the same one at issue in *Rapaport I*. Complaint ¶¶ 8–9. And then Plaintiff filed an amended complaint in *Rapaport I* that enclosed as an exhibit two versions of the same photograph Ms. Finkelman posted. *See* Rodriguez Dec., Ex. 3–4. It is axiomatic that public speakers referencing the contents of documents filed in a judicial proceeding, including text and images, are entitled to section 74 immunity. *See Kinsey*, 991 F.3d at 179. Plaintiff's admissions in this case, and his amended complaint and associated exhibits in *Rapaport I* confirm beyond any doubt that Ms. Finkelman's posts were fair and true reports of his complaint in *Rapaport I*.

Ms. Finkelman's reference to and posting of the same photograph at issue in (and ultimately publicly filed in) Plaintiff's *Rapaport I* lawsuit is a core example of a fair and true report of a judicial proceeding. Accordingly, Plaintiff's claims against Ms. Finkelman, including his defamation claim, are barred as a matter of law. [9]

### B.    Ms. Finkelman's statements are non-actionable opinions

Even if the Court did not find that section 74 immunity applied to bar Plaintiff's claims, he still fails to state a claim for defamation because the statements alleged to be defamatory are non-actionable opinions. "Among other questions of law, courts are charged with distinguishing

---

[9] New Jersey law also recognizes an absolute immunity for fair and true reports concerning judicial proceedings. *See Lee v. TMZ Productions Inc.*, 710 Fed. Appx. 551, 557–59 (3d Cir. 2017) (Scirica, J.) (non-precedential opinion) (describing New Jersey doctrine). Plaintiff's pleadings appear to assert his defamation claim under New York law. *Compare* Complaint ¶¶ 27–33, *with id.* ¶ 35. But even if he attempted to assert his defamation claim — or any claim — under New Jersey law, it would still be barred.

between statements of fact, which may be defamatory, and expressions of opinion, which 'are

not defamatory; instead, they receive absolute protection under the New York Constitution.'"

*Jacob v. Lorenz*, 626 F. Supp. 3d 672, 690 (S.D.N.Y. 2022) (quoting *Live Face on Web, LLC v.*

*Five Boro Mold Specialist Inc.*, No. 15-cv-4779, 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28,

2016)). When determining whether a statement is a non-actionable opinion, courts evaluate "(1)

whether the specific language in issue has a precise meaning which is readily understood; (2)

whether the statements are capable of being proven true or false; and (3) whether either the full

context of the communication … [or the] surrounding circumstances are such as to 'signal…

readers or listeners that what is being read or heard is likely to be opinion, not fact.'" *Gross v.*

*N.Y. Times Co.*, 82 N.Y.2d 146, 153 (1993) (cleaned up). "In determining what constitutes a

nonactionable opinion, the 'dispositive inquiry' is whether a reasonable reader 'could have

concluded that [the statements in question were] conveying facts about the plaintiff.'" *Daleiden*,

2022 WL 1013982, at *2 (2d Cir. Apr. 5, 2022) (alterations in original) (quoting *Gross*, 82

N.Y.2d at 152).

Statements criticizing or mocking a party's public pre-litigation or litigation positions are

classic statements of opinion. Indeed, precisely these sorts of statements have been deemed

opinions by courts in the Second Circuit. *See, e.g.*, *LaNasa v. Stiene*, No. 22-cv-5686, 2024 WL

1648001, at *8 (E.D.N.Y. Apr. 17, 2024); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 47–48

(S.D.N.Y. 2017).

None of Ms. Finkelman's statements, together or individually, including her posts of or

concerning the photograph, could be reasonably read to convey facts about Plaintiff. Instead, Ms.

Finkelman's entire thread, including her posting of the photograph, communicated one clear

opinion to any reasonable reader: she thought *Rapaport I* was a mockworthy and amusing

lawsuit. Among other things, she said "all of #lawtwitter [should] read this complaint. I promise you will not regret it." ECF no. 1-2 at 2. She referred to potential discovery in *Rapaport I* as "interesting." *Id.* at 4; *see also id.* at 23. She joked about potential witnesses at a potential trial in *Rapaport I. Id.* at 5. She mocked Plaintiff's writing style, litigation tactics, descriptions of himself, and descriptions of his political and legal opinions in his complaint. *See id.* at 6, 17, 21, 24, 29, 32. She expressed disbelief or skepticism at a variety of the claims he made in *Rapaport I. See id.* at 7–12, 14–16, 27. She mocked his monetary prayer for relief. *Id.* at 18. She mocked Plaintiff's now-former attorney in *Rapaport I* and this action, Mr. Altman. *Id.* at 25. These statements are all opinions, and Plaintiff does not claim otherwise. *See* Complaint, ¶ 13 (noting most of Ms. Finkelman's posts "were within her First Amendment rights, despite their critical nature").

But the posts Plaintiff claims are actionable cannot, individually or together with her other statements, be read differently. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (noting courts must "give the disputed language a fair reading in the context of *the publication as a whole*" (emphasis in original) (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 380 (1995))). Ms. Finkelman expressed sarcastic disappointment that the original complaint in *Rapaport I* did not include the photograph, saying "Smh [shaking my head] why wouldn't you include screenshots, I wanna see the fake 'wanted' or 'public enemy' poster." ECF no. 1-2 at 3. When Ms. Finkelman posted the photograph, she said "We got it lads, s/o [shout out] to an anonymous tipster." *Id.* at 20.[10] Posting the photograph in that context cannot

---

[10] Even if the statements or posts were actionable (which they aren't), Ms. Finkelman's posting of the photograph separately forecloses Plaintiff's claims against Ms. Finkelman. "[A]lthough a statement of opinion may be actionable if it 'implies a basis in facts which are not disclosed to the reader or listener,' that was not the case here. Instead, [the] statements were 'accompanied by

reasonably be read to be anything but an opinion, in particular an opinion that the photograph was as amusing as the lawsuit. *See Daleiden*, 2022 WL 1013982, at *3 ("[A] reasonable reader would have 'arrive[d] with an appropriate amount of skepticism, with the expectation that they [were], in all probability, going to hear opinion[.]" (alterations in original) (quoting *Melius v. Glacken*, 943 N.Y.S.2d 134, 136 (2d Dep't 2012)).

Plaintiff's claims seem to turn exclusively on squinting at Ms. Finkelman's statements to contort them into anything but the opinions that they are. But none of Ms. Finkelman's statements can be reasonably read to have the meaning Plaintiff claims. The Complaint alleges that Ms. Finkelman posting the photograph communicated that the photo "had been publicly posted in the lobby of the office building where plaintiff was employed" and "was evidence that he had been fired for sexual misconduct and was somehow barred from entry to the building." Complaint ¶ 17.

This reading is not a reasonable one. Rather, this reading runs afoul of courts' frequent and repeated dismissal of defamation claims based on "insufficient innuendo when only a strained, unreasonable, unjustifiable innuendo … would support the plaintiff's contention that the challenged language exposes [him] to 'public shame, hatred, or ostracism.'" *Idema v. Wagner*, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000) (cleaned up); *see also, e.g.*, *Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 137 (1959) ("'The pleaded innuendo is strained, unreasonable and unjustified.' It does not explain any statement in the article, but adds an entirely new and independent thought that finds no support in the article." (cleaned up)).

Accordingly, Ms. Finkelman's statements are non-actionable opinions.

---

a recitation of the facts on which [they were] based,' which signaled to readers 'that what [was] being read … [was] likely to be opinion, not fact." *Daleiden*, 2022 WL 1013982, at *3 (alterations in original) (quoting *Gross*, 82 N.Y.2d at 153–54).

**C.      To the extent they communicate any statements of fact, Ms. Finkelman's statements are true**

Even if the Court found that Ms. Finkelman's statements concerning the photograph were actionable statements of fact or mixed opinion, which they aren't, Plaintiff's claims would still fail because any statement of fact was true. "[T]ruth is an absolute, unqualified defense to a civil defamation action and 'substantial truth' suffices to defeat a charge of libel." *Cortes v. Twenty-First Century Fox America, Inc.*, 285 F. Supp. 3d 629, 642 (S.D.N.Y. 2018) (quoting *Giuffre v. Maxwell*, 15 Civ. 7433 (RWS), 2017 WL 1536009, at *4 (S.D.N.Y. Apr. 27, 2017)). A plaintiff must "plead facts that, if proven, would allow a reasonable person to consider the statement false." *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017).

Ms. Finkelman expressed a desire to "see the <u>fake</u> 'wanted' or 'public enemy' poster." Complaint ¶ 14 (emphasis added). She then said she had received the photo, and posted the photo, with no contrary commentary suggesting she believed the photo communicated anything about Plaintiff's tenure at Kirkland & Ellis. *Id.* ¶¶ 15–17. A reasonable person reading Ms. Finkelman's posts would understand her to be (1) accepting Plaintiff's allegation in *Rapaport I* that the photo was fake; (2) expressing an interest in seeing it for her own and others' amusement; and (3) posting the photo at issue in *Rapaport I*. None of these statements are false. To the extent they communicate any facts at all, which Ms. Finkelman maintains they do not, they are completely true. And again, Plaintiff admits the photograph Ms. Finkelman posted "is a copy of the faked photograph of plaintiff" described in his original complaint in *Rapaport I*. Complaint ¶ 16. Plaintiff also filed the same photo as an exhibit to his amended complaint in *Rapaport I*.

In other words, Ms. Finkelman accepted Plaintiff's representation that the photo was faked, and that is what she said. If she communicated any statement of fact, it was that the photo she was posting was the same photo at issue in *Rapaport I*, and Plaintiff has repeatedly confirmed that to be true. Accordingly, Plaintiff's claims separately fail because Ms. Finkelman's statements are true.

### D. Plaintiff fails to make any allegations of actual malice

Finally, Plaintiff's complaint is separately lacking because he has not made (and cannot make) any allegations that Ms. Finkelman acted with actual malice. Actual malice covers "only those false statements made with the high degree of awareness of their probable falsity[.]" *Garrison v. State of La.*, 379 U.S. 64, 74 (1964). The allegations must plausibly allege the defendant knew their statements were false or "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [the] publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). At the motion to dismiss stage, the plaintiff must plausibly allege some indicia of actual malice. *See BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 822 (S.D.N.Y. 2021) (collecting examples).

Actual malice applies to Plaintiff's claims in this case. As explained above, New York Civil Rights Law requires Plaintiff to adequately and plausibly allege that Ms. Finkelman made the statements alleged to be defamatory "with knowledge of [their] falsity or with reckless disregard of whether [they are] false," New York Civil Rights L. § 76-a(2), because they were statements on "any subject other than a purely private matter," *id.* § 76-a(1)(d).

Further, even if section 76-a(2) did not apply, Plaintiff's *Rapaport I* lawsuit made him a limited purpose public figure separately required to plead actual malice in this case. A limited purpose public figure is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v.*

*Robert Welch, Inc.*, 418 U.S. 323, 351–52 (1974). The public figure doctrine speaks to "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open…." *Contemp. Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 619 (2d Cir. 1988) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

Plaintiff is a limited purpose public figure with respect to his *Rapaport I* lawsuit. Plaintiff was the subject of copious discussion and mockery online by many people and publications besides Ms. Finkelman. Rodriguez Dec., Ex. 5–7.[11] Furthermore, the Complaint specifically admits that *Rapaport I* was a matter of public interest. *See* Complaint ¶ 10 ("The action garnered attention in the legal community….").

Reviewing the allegations considering the applicability of the actual malice requirement, Plaintiff's Complaint is wholly insufficient. Indeed, he fails to make any allegations concerning Ms. Finkelman's state of mind at all. But even if he did, they would either be conclusory or implausible. Even if the Court credited Plaintiff's allegation concerning defamatory meaning and falsity, which it shouldn't, "inaccuracy itself will not demonstrate 'actual malice' in a libel case." *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1350 (S.D.N.Y. 1977); *see also Bose Corp. v. Consumers Union of United States*, 466 U.S. 485, 511 & n.30 (1984) (noting falsity does not establish knowledge of falsity or reckless disregard of truth); *BYD Co.*, 531 F. Supp. 3d at 822–

---

[11] The Court can take judicial notice of a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 540 n.1 (2d Cir. 2002) (quoting Fed. R. Evid. 201). This includes taking judicial notice of "materials available on the internet" like articles or forum threads. *Int'l Bhd. of Teamsters Loc. 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, No. 10-CV-1692 (RJD), 2012 WL 13202126, at *9 n.17 (E.D.N.Y. Apr. 19, 2012). Furthermore, the Court may infer that these materials are incorporated by reference into the Complaint, which alleges that *Rapaport I* "garnered attention in the legal community…." Complaint ¶ 10.

27; *Kramer v. City of New York*, No. 04-cv-106, 2004 WL 2429811, at *8 (S.D.N.Y. Nov. 1, 2004).

Accordingly, Plaintiff has failed to allege actual malice as required, and cannot allege it, separately failing to state a claim.

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR FALSE LIGHT AND INVASION OF PRIVACY

Plaintiff also asserts a claim against Ms. Finkelman for "False Light and Invasion of Privacy." This claim also fails. First, under New York's choice-of-law analysis, New Jersey law — the law Plaintiff claims allows him to assert this separate claim — does not apply, and New York does not recognize a false light or invasion of privacy claim. Second, for all the reasons already stated with respect to Plaintiff's defamation claim, even considered on the merits, this claim also fails.

### A.    New York law applies and does not recognize Plaintiff's claim

The Complaint says that "[t]his claim is alleged under the laws of the State of New Jersey where plaintiff resided during the events complained of herein." Complaint ¶ 35.[12] This second claim is asserted under New Jersey law because "New York does not recognize a separate cause

---

[12] Multiple filings Plaintiff has made *pro se* in *Rapaport I* refer to having been executed in "Vancouver, British Columbia (Canada)." *See, e.g.*, Rodriguez Dec., Ex. 8–9. Although Plaintiff lists an address in Jersey City in his signature block and on CM/ECF in this case and others, it is unclear whether he still lives there. The Complaint says that Plaintiff resided in New Jersey "during the events complained of herein" but the description of Plaintiff as a party describes him as "a citizen of Canada, [who] has been previously lawfully admitted to the United States as a nonresident alien, and that is his current status as well." Complaint ¶¶ 1, 35. This suggests Plaintiff no longer reside at the Jersey City address. Whether he resides in Vancouver or somewhere else, Plaintiff is obligated to provide the Court with an updated address where he can successfully be reached for service under, among other things, Rule 11(a). *See, e.g.*, *Correa v. Lynch*, No. 20-CV-02875 (PMH), 2022 WL 161446, at *1 (S.D.N.Y. Jan. 18, 2022).

of action for false light/invasion of privacy." *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 151 (S.D.N.Y. 2022).

"Under New York's choice-of-law rules, 'the first step in any choice of law inquiry is to determine whether there is an 'actual conflict'' between the rules of the relevant jurisdictions." *Kinsey*, 991 F.3d at 176. Where there is an actual conflict between the laws of two different jurisdictions, New York "applies the law of the state with the most significant interest in the litigation." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). In this case, there is a conflict between New York law, which does not recognize Plaintiff's claim, and New Jersey law, which does.

In tort cases like this one, "New York 'applies the law of the state with the most significant interest in the litigation.'" *Kinsey*, 991 F.3d at 176 (quoting *Lee*, 166 F.3d at 545). When so-called "conduct-regulating" rules between jurisdictions conflict, "New York law usually applies the traditional law of the place of the tort…." *Kinsey*, 991 F.3d at 176.

In circumstances both similar and exactly analogous to this case, courts have repeatedly applied New York law, especially where the defendant is domiciled in New York and/or the statements emanated from New York. *See, e.g.*, *Kinsey*, 991 F.3d at 175–78; *Jacob*, 626 F. Supp. 3d at 684–86 (S.D.N.Y. 2022); *Prince v. Intercept*, 634 F. Supp. 3d 114, 131–34 (S.D.N.Y. 2022); *Henry*, 629 F. Supp. 3d at 151–52.

The Second Circuit's substantive reasoning in *Kinsey* is especially worth noting. In *Kinsey*, the plaintiff argued District of Columbia law should apply because in that case, the plaintiff alleged that relevant "events [] took place at a bar in the District of Columbia and [] adversely affected his employment in the District of Columbia." *Kinsey*, 991 F.3d at 178. The plaintiff also argued that his residence in Maryland weighed against the application of New York

law. *Id.* But despite those connections to the District of Columbia and to Maryland, the court rejected plaintiff's argument and applied New York law, explaining that the defendant "is domiciled in New York," "the alleged defamatory statement emanated from New York" and "New York has strong policy interests in regulating the conduct of its citizens and its media." *Id.* at 178.

Not only do each of these factors applied in *Kinsey* weigh in favor of the application of New York law here, there are almost no countervailing factors that warrant applying New Jersey law at all. In this case, Ms. Finkelman resides in New York and made her statement in New York. In the Complaint, Plaintiff alleges: (1) "a substantial part of the events or omissions giving rise to the claims occurred in [S.D.N.Y.]," Complaint ¶ 5; and (2) "[a]s a direct result of defendant's posting, plaintiff has not yet sought admission to the <u>New York</u> bar," *id.* ¶ 7 (emphasis added). And in *Rapaport I*, Plaintiff discusses in greater detail how yet more of the relevant facts in this case occurred in New York, including his study and graduation from New York University School of Law, his employment at Kirkland & Ellis in New York, and the location of the security desk where the faked photograph was taken or staged. *See, e.g.*, Rodriguez Dec., Ex. 1 at ¶¶ 1, 9, 23, 37. By contrast, in *Kinsey*, the plaintiff not only lived in Maryland but practiced law in (and was admitted to practice law in) the District of Columbia, which was also where the facts at issue in the alleged defamatory statements took place. *See id.* at 178. None of these non-New York factors exist in this case.

Accordingly, New York law applies and forecloses Plaintiff's false light and invasion of privacy claim.

19

**B.      Even considered on the merits, Plaintiff fails to state a claim for false light and invasion of privacy**

Even if the Court did apply New Jersey law to Plaintiff's false light and invasion of privacy claim, which it shouldn't, he still fails to state a claim. Under New Jersey law, "[t]he tort of false light has two elements: (1) 'the false light in which the other was placed would be highly offensive to a reasonable person'; and (2) 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 588 (2009) (quoting *Romaine v. Kallinger*, 109 N.J. 282, 294 (1988)). Similarly to defamation, one of the requirements of a false light claim "is, obviously, falsity." *Andros v. Gross*, No. 03-cv-1775, 2005 WL 3500058, at *9 (D.N.J. Dec. 21, 2005). In other words, "[t]ruth is a complete defense to both false light and defamation" claims under New Jersey law. *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 425 (D.N.J. 2005). Similarly, false light claims also cannot apply to statements of opinion under New Jersey law. *Id.*[13] New Jersey also recognizes immunity for fair and true reports of judicial proceedings. *See supra* n.9.

---

[13] Although Plaintiff's second count in the Complaint is styled as "False Light and Invasion of Privacy," these are two distinct torts under New Jersey law. "Under New Jersey law, a claim for invasion of privacy 'involves the intentional intrusion, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person.'" *Katz v. Ambit Northeast, LLC*, No. 3:20-cv-1289, 2020 WL 5542780, at *5 (D.N.J. Sept. 16, 2020) (quoting *Dolphin v. Bank of Am. Mortg. Co.*, 641 Fed. Appx. 131, 134 (3d Cir. 2016)). But whether considering the tort of false light, or the tort of invasion of privacy, Plaintiff's claim fails for the same reasons. *See Ali v. Woodbridge Township Sch. Dist.*, 957 F.3d 174, 183 (3d Cir. 2020) (affirming dismissal of "false light/invasion of privacy" claim because challenged statements failed to state a defamation claim, were opinions, and were true). There are additional reasons why an invasion of privacy claim would fail. *See Katz*, 2020 WL 5542780, at *5 (dismissing invasion of privacy claim because plaintiff could not allege any plausible reasonable expectation of privacy).

Accordingly, even if New Jersey law somehow applied, which it doesn't, Plaintiff's false light and invasion of privacy claim would still fail. *See Henry*, 629 F. Supp. 3d at 151–52 ("Because his complaint lacks sufficient facts to support his defamation by implication claim, and there are no additional facts related to his invasion of privacy claim, his claim fails under Maryland law as well.").

## III.    THE COURT SHOULD GRANT MS. FINKELMAN'S MOTION WITH PREJUDICE

For all the reasons explained above, the Court should grant Ms. Finkelman's motion to dismiss for failure to state a claim. The Court should also grant the motion with prejudice. Although courts "should freely give leave" to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), there is no need to grant leave to amend "when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006).

In this case, there are no amendments that could transform Plaintiff's patently frivolous and legally barred claims into valid ones capable of withstanding Rule 12(b)(6). Where "statements [are] dismissed due to being true, lacking defamatory meaning, or being hyperbole or opinion," or even more importantly because they are barred by statutory immunity, they "cannot be saved by amendment." *Jacob*, 626 F. Supp. 3d at 694; *see also Jeanty*, 2023 WL 325012, at *3 n.2 ("[T]o the extent Jeanty suggests that he should have been given leave to amend his dismissed claims, any such amendments would be futile given the non-curable nature of the legal defect in his claims.").

Ms. Finkelman has already endured too much cost, stress, and abuse of the legal system by Plaintiff's doing. The Court should not countenance any further attempts to subject her to frivolous litigation. The Complaint should be dismissed with prejudice.

## **CONCLUSION**

For all of the foregoing reasons, this Court should grant Ms. Finkelman's motion to

dismiss the Complaint with prejudice.

Respectfully submitted,


DATED:        October 21, 2024          /s/ Max Rodriguez
                                        Max Rodriguez
                                        LAW OFFICE OF MAX RODRIGUEZ PLLC
                                        575 5th Avenue, 14th Floor
                                        New York, NY 10017
                                        max@maxrodriguez.law
                                        (646) 741-5167
                                        *Attorney for Defendant Abigail Finkelman*