UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GIDEON RAPAPORT,<br><br>                              Plaintiff,<br><br>          - vs. -<br><br>ABIGAIL FINKELMAN,<br><br>                              Defendant. | No.: 1:24-cv-05942 (JGLC) |

### NOTICE OF PLAINTIFF GIDEON RAPAPORT'S MOTION
### FOR SANCTIONS AGAINST MAX E. RODRIGUEZ
### <u>COUNSEL FOR DEFENDANT ABIGAIL FINKELMAN</u>

PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law in Support of Plaintiff's Motion for Sanctions Against Defendant's Counsel Max E. Rodriguez, the annexed exhibits thereto, and all the pleadings and proceedings herein, Plaintiff Gideon Rapaport *pro se*, hereby moves this Court before the Honorable Jessica G.L. Clarke, United States District Judge for the Southern District of New York, at the United States Courthouse located at 500 Pearl Street, Room 1040, New York NY 10007, for an order, pursuant to the inherent authority of the Court and New York Judiciary Law § 487, ordering sanctions against Max E. Rodriguez of the Law Office of Max Rodriguez as the Court may deem appropriate.

Plaintiff respectfully requests oral argument on this motion.

**Memorandum of Law in Support of Plaintiff's Motion for Sanctions Against Defendant's Counsel Max E. Rodriguez**

**Table of Contents**

Preliminary Statement..................................................................................................................1

Factual Background....................................................................................................................2

Argument....................................................................................................................................3

    Mr. Rodriguez's Sanctions Threats are Frivolous...................................................................3

    Mr. Rodriguez's Frivolous Sanctions Threats Have No Colorable Basis and are Made in Bad Faith

        Justifying Sanction Through the Inherent Authority of This Court...................................8

    Mr. Rodriguez's Frivolous Sanctions Threats are Harassing and Malicious......................................10

    Mr. Rodriguez Has Engaged in Deceit Through False and Deceptive Communications in Violation

        of New York Judiciary Law § 487..................................................................13

    Mr. Rodriguez Claims With No Proof That the Defamatory Images and Claims Against the Plaintiff

        Are All True..........................................................................................16

Conclusion................................................................................................................................16

    Sanctioning and Deterring Mr. Rodriguez Prior to His Threatened Frivolous Sanction Motion is the

        Only Remedy Which Can Avoid Prejudicing the Plaintiff............................................16

**Table of Authorities**

Rules

Federal Rules of Civil Procedure Rule 5

Federal Rules of Civil Procedure Rule 11

Statutes

New York Consolidated Laws Civil Rights Law § 74

New York Judiciary Law § 487

Cases

*Kinsey v. New York Times Co.*, 991 F.3d 171, 179 (2d Cir. 2021)

*Catalanello v. Kramer*, 18 F. Supp. 3d 504 (S.D.N.Y. 2014)

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012)

*Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 n. 4 (2d Cir.2002)

*Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327–29 (2d Cir.1995)

*L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 89–90 (2d Cir.1998)

*Gal v. Viacom Int'l, Inc.*, 403 F.Supp.2d 294, 309 (S.D.N.Y.2005)

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999)

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)

*Amalfitano v. Rosenberg*, 428 F. Supp. 2d 196 (S.D.N.Y. 2006), *aff'd*, 572 F.3d 91 (2d Cir. 2009)

*Trepel v. Dippold*, No. 04 CIV. 8310 (DLC), 2005 WL 1107010 (S.D.N.Y. May 9, 2005)

*Izko Sportswear Co. v. Flaum*, 20 A.D.3d 392, 395, 798 N.Y.S.2d 136, 138 (2d Dep't 2005)

*Solow Mgmt. Corp. v. Seltzer*, 18 A.D.3d 399, 399–400, 795 N.Y.S.2d 448, 448 (1st Dep't 2005)

*Schindler v. Issler & Schrage, P.C.*, 262 A.D.2d 226, 226, 692 N.Y.S.2d 361, 362 (1st Dep't 1999)

*Olshansky v. Sutton*, 2001 WL 99857 (S.D.N.Y. 2001)

## Preliminary Statement

Counsel for defendant Abigail Finkelman, Mr. Max Rodriguez, has engaged in sanctionable malfeasance that has harassed and maliciously injured the *pro se* plaintiff in this case under the laws of the State of New York, and which also justifies the exercise of the inherent authority of this Court.

Mr. Rodriguez's persistent and repeated threats of sanctions against the Plaintiff and his former counsel, which are so frivolous so as to be farcical, are made for no purpose but to harass and injure the plaintiff by intimidating him, as a *pro se* litigant, into moving for a dismissal with prejudice of his legally meritorious and factually documented claims which are supported by dispositive exhibits already in the record. In so doing, Mr. Rodriguez has also made false and deceptive private communications to the plaintiff in which he also provided unsolicited legal advice to the adverse *pro se* plaintiff. These unsolicited statements included, among others, an egregious insinuation that Mr. Rodriguez's frivolous sanctions threat will affect the plaintiff's admission to the bar in the future.

Because his client, defendant Finkelman, who is also an attorney admitted to the New York bar, relied on her anonymity[1] in her many publications on the X social media platform, formerly known as Twitter, pertaining to the plaintiff, she did not even take minimal precautions to limit her own liability as part of her campaign to maliciously defame, humiliate and otherwise injure the plaintiff. Mr. Rodriguez has evidently assessed her defense as hopeless, and so when the plaintiff returned to representing himself *pro se*, he capitalized on this opportunity for tactical advantage to intimidate the *pro se* plaintiff into withdrawing his meritorious case, and prejudice him by using FRCP Rule 11 to force his former counsel to continue making filings in this case, including as to the merits.

Although Mr. Rodriguez's frivolous sanctions threats refer to the entire case as being frivolous in general, he ignores the false light claim arising under New Jersey law, except in a single footnote discussing choice of law. He does not even attempt to argue this claim is frivolous, for despite his one cite of a District of Columbia law case, this District routinely applies New Jersey law for such claims.

---

1    Posting under the arguably offensive name "Mrs. Detective Pikajew Esq." and handle @clapifyoulikeme

## Factual Background

On July 28, 2023, this plaintiff filed a John Doe case[2] *pro se* against individuals who defamed him by posting and forwarding false and defamatory statements that he had been fired from his summer associate position at Kirkland & Ellis LLP and was barred from entry to the building that were accompanied by digitally manipulated and defamatory images, in two versions, purporting to be a "Do Not Admit" notice posted by that firm at the security desk. These John Does have since been identified by subpoenas as Ajay Srinivasan Iyer, Zachary George Garrett and Richard Allen Epstein.

Within about a week of the initiation of that case, defendant Finkelman became aware of, and amplified it greatly on #LawTwitter, causing it to become viral and receive hundreds of thousands of views within days. Although her commentary upon and amplification of the plaintiff's suffering which caused him to file that case was entirely cruel and malicious, the only stated basis for defamation in this matter is her republication of the first version of the defamatory image on August 6, 2023, which was not available anywhere on the internet at the time (as she recognized herself in writing that post).

The defendants in the first case had removed the first version from the internet when it was disbelieved as an obvious forgery because the digitally inserted image of the plaintiff was completely unwrinkled against the background of a physical page that was thoroughly wrinkled. They did so in order to prevent comparison with the second version which was more sophisticated and blended the digitally inserted image of the plaintiff with the underlying wrinkles of the page, that they disseminated directly and personally to decision makers in the Federalist Society among others.

The first (and second) versions of the forgery, were only entered into the record of *Rapaport v. Iyer et al.* as exhibits on May 24, 2024. For 292 days, and approximately 300,000 views on X alone, the first version of the defamatory image was made available solely by defendant Finkelman, and the second version, which proves it (and thus also itself) to be a forgery upon immediate comparison was available nowhere.

---

2    The related case's caption and docket are *Rapaport v. Iyer et al.*, 23-cv-06709(JGLC)

**Argument**

<u>Mr. Rodriguez's Sanctions Threats are Frivolous</u>

The beginning must be an examination of Mr. Rodriguez's sanctions threats on their merits, or rather their total lack thereof. In his September 16, 2024 letter to the Court ECF. No. 11 at 2, Mr. Rodriguez presents that "the sole alleged defamatory statement in this case referenced in the complaint at paragraphs 15–20 is the discussion concerning and re-posting of an already-public image directly referenced and filed by Mr. Rapaport in his other defamation lawsuit before this Court". This sentence is primae facie deceptive, because it suggests that when defendant Finkelman posted the image, it was available elsewhere (it was not), and that it had been filed by the plaintiff in *Rapaport v. Iyer et al.* (it would not be filed as an exhibit until 292 days after her post). Mr. Rodriguez then proceeds to argue that because the plaintiff eventually included the defamatory image as an exhibit, defendant Finkelman enjoys a kind of a retroactive immunity that is completely unfounded in any law or precedent, or argument for the modification of the same. Such a retroactive immunity would also contradict basic logic obvious to anyone let alone an attorney, because every defamation that is litigated eventually enters the public record through pleadings, exhibits and testimony.

It is quite telling, that in his attempts to deceive the plaintiff and this Court, Mr. Rodriguez fails to mention a single specific date or range of dates in the entirety of that letter (other than the date of the letter itself and of cited opinions). If he did, his deceptive masking of his own frivolous argument would be completely hopeless and fall apart, because it would be even more obvious to the plaintiff and the Court that defendant Finkelman republished something that had never been in the record of any case, and was not available online either. Only 292 days later would the first version of the forgery be filed in the docket of *Rapaport v. Iyer et al.*, at a time when it could be presented alongside the second version of the forgery, with each tending to disprove the authenticity of the other, and in the context of a defamation suit. Because defendant Finkelman had already enthusiastically republished and promoted the first defamatory forgery, and amplified the engagement of online users falsely supporting its

3

authenticity even as she ignored those who pointed it out to be an obvious fake, there was no reputational downside to the plaintiff resulting from including both versions as exhibits. Mr. Rodriguez is obviously well aware of the importance of context in the law of defamation, but he remains willfully ignorant in order to deceive the Court and the *pro se* plaintiff.

The crux of Mr. Rodriguez's argument, which he further develops in private emails with attachments to the plaintiff that have not heretofore been available to the Court, see Sanctions Exhibit A, is that the complaint against defendant Finkelman is sanctionable because all of her conduct was protected by an absolute immunity to cover official proceedings per New York Consolidated Laws Civil Rights Law § 74. In his September 16 letter to the Court, Mr. Rodriguez only quoted the first sentence of this section, and ignored the second which would prove to any reasonable person, or minimally competent attorney that defendant Finkelman's conduct is not covered by this immunity.

NY CVR § 74 consists of only two sentences, and disclaims any immunity derived from the first sentence being applicable to defendant Finkelman, who added the defamatory image Exhibit 1, in the context of a post that was part of a thread shown in Exhibit 2. The second sentence, which Mr. Rodriguez has failed to inform of the Court of in his letter or the plaintiff in further private and unsolicited communications is underlined below. NY CVR § 74:

> "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.
>
> This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof."

It is obvious, and cannot be contested in any but a frivolous manner, as evidenced by the docket of *Rapaport v. Iyer et al.* and defendant Finkelman's own writings in the post containing the image "We got it lads, s/o [shout out] to an anonymous tipster" Exhibit 2 at 20, that the defamatory image could not have been part of a fair and true report of any judicial proceeding, because that image had never

been a part of any judicial proceeding. The second sentence of NY CVR § 74 specifically uses the word "added", which is the perfect description for what defendant Finkelman did with the defamatory image, sent to her by the "anonymous tipster" in her publications. If the defamatory image were a part of any public proceeding she was providing a "fair and true report" of, defendant Finkelman would have not needed to obtain that defamatory image from an "anonymous tipster".

Even putting aside the matter of the defamatory image being "added" by defendant Finkelman, which is the sole basis of the defamation claim, her publications were not a "fair or true report" as required, and the reality that their fairness and trueness may be fairly contested defeats the possibility of sanctions being justified as a result of NY CVR § 74. Throughout her malicious, obsessive and intensely personal commentary, which included engagements and amplifications of other malicious users contrasted by her ignoring of users sympathetic to the plaintiff, defendant Finkelman made numerous errors pertaining to the proceedings she claims to have reported on, and did not provide fair coverage. In fact, defendant Finkelman manifestly demonstrated that she had a reckless disregard for whether or not her coverage was true, and succeeded in being as unfair as possible in her 'reporting'.

For some highlights as to unfairness, defendant Finkelman compared the plaintiff to Sephiroth, Exhibit 2 at 21, who is a recurring villain in the *Final Fantasy* series of Japanese role-playing  video games. Sephiroth is broadly considered to be an exceptionally evil character even compared to other villains across genres, and his appearance is preluded by a specific theme that begins shrill and dissonant in imitation of the soundtrack to the infamous shower-stabbing scene of Hitchcock's *Psycho* (1960). Defendant Finkelman also referred to the plaintiff as a "monster" who was created by "FedSoc ghouls" Exhibit 2 at 23.

As an example of both untruth and unfairness, in her publications defendant Finkelman fabricated a quote which was not extant anywhere in the proceedings she now claims to have provided a true report of. She published this fabricated quote attributed to the plaintiff in Exhibit 2 at 6 ""To be clear, I was excited about women's rights being stripped, but I was way more excited about getting to

play with guns"". Even if this quote were a headnote and not a quote, it could not be fair. Because the

plaintiff specifically wrote in his original *pro se* complaint in *Rapaport v. Iyer et al.*, that he was "not

particularly interested" in the case representing the former issue, and defendant Finkelman wrote in her

fabricated quote that he was "excited" about it, it is directly contradictory and thus cannot be fair.

As an additional example of both untruth and unfairness, defendant Finkelman was asked by

one of her readers "Does your anonymous tipster know what this jack weasel is alleged to have done",

to which her reply consisted entirely of the typographical emoji of a person smiling carelessly hands

raised in flippant expression "¯\_(ツ)_/¯", Exhibit 2 at 37. This typographical emoji represents a

smiling and carefree person putting up their hands, palms facing upwards, and indicates an indifferent

or pleased attitude towards lack of knowledge. This callous communication by defendant Finkelman

evidences a reckless disregard for the truth or falsehood of her publications relating to the matter.

It is obvious for these reasons that defendant Finkelman's 'reporting' cannot be "fair and true"

even under Mr. Rodriguez's cited standard which describes a statement as immune if "it is substantially

accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than

would a report containing the precise truth." *Kinsey v. New York Times Co.*, 991 F.3d 171, 179 (2d Cir.

2021)  at 178. By expressing such vile hatred and contempt for a person she never met including

describing the plaintiff as a monster created by ghouls, comparing him to an arch-villain of science

fiction, presenting fabricated quotes that are contradicted by his actual writing, a drastically different

effect is produced than that of a report containing the precise truth on typical readers.

Asides from a minor reference to "choice of law", and citing a single case in which this District

found that District of Columbia law did not apply after a choice of law analysis to a defamation claim

(there was no false light invasion of privacy claim in *Kinsey v. New York Times* just defamation), Mr.

Rodriguez ignores the false light invasion of privacy claim arising under the laws of New Jersey. This

claim protects the inherently local aspects of the plaintiff's life in his community, and is frequently

applied by this District as in *Catalanello v. Kramer*, 18 F. Supp. 3d 504 (S.D.N.Y. 2014). Per the

doctrine of dépeçage, the laws of different jurisdictions may be applied to different claims in a single case and because false light invasion of privacy exclusively protects local interests within the plaintiff's state from injury suffered there, the choice of law analysis requires this local interest to be protected by that law. Far from being frivolous, this is the only reasonable conclusion for the false light claim.

Finally, Mr. Rodriguez's proposed sanctions must necessarily fail for entirely procedural reasons as well. He has failed to even cause the 21-day safe-harbor period to begin, because he has failed to serve the motion per FRCP Rule 11, which requires service to be effectuated as detailed in FRCP Rule 5. FRCP Rule 11 requires formal service, and mere notice is insufficient. In *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012) the Second Circuit explained: "The safe-harbor provision is a strict procedural requirement. *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 n. 4 (2d Cir.2002); *see also Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327–29 (2d Cir.1995). An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21–day safe-harbor period. *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 89–90 (2d Cir.1998) (request for sanctions in letter without separate service of motion did not comply with Rule 11's requirement that sanctions motion be made separately); *Gal v. Viacom Int'l, Inc.*, 403 F.Supp.2d 294, 309 (S.D.N.Y.2005) ("[T]he plain language of the rule states explicitly that service of the motion itself is required to begin the safe-harbor clock—the rule says nothing about the use of letters.")".

Mr. Rodriguez could have easily effectuated service through a variety of the Rule 5(b) required methods, but he has not fulfilled any of them with respect to the plaintiff. He has not personally served it upon the plaintiff, left it at the address provided by the plaintiff which is staffed by authorized agents of the plaintiff, mailed it to the "last known address" of the plaintiff if he believed that address was not current, or filed it with the court's electronic-filing system as a "proposed" motion specifically designated not to be acted on, which would have also effectuated service.

Mr. Rodriguez has deceived the plaintiff as to this, and this deception is further discussed *infra*

when he falsely presented to the plaintiff that the informal and thus defective notice began that time period on September 27, 2024. Mr. Rodriguez is aware of FRCP Rule 11(c)(2) because he wrote in his September 16 filing ECF No. 11 that he did not consider that filing to meet the requirements of FRCP Rule 11(c)(2), but he never actually met its requirements as he indicated he would in Footnote 1.

<u>Mr. Rodriguez's Frivolous Sanctions Threats Have No Colorable Basis and are Made in Bad Faith Justifying Sanction Through the Inherent Authority of This Court</u>

The frivolous sanctions threats made by Mr. Rodriguez lack any colorable basis and are made in bad faith. The Second Circuit requires both factors to be present in the conduct of an attorney or party *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999) and both are clearly present in Mr. Rodriguez's frivolous sanctions threats.

The sanctions threatened by Mr. Rodriguez are impossible for patently obvious reasons, and are based entirely on an immunity which facially does not apply to libels arising from "added" materials not present in judicial proceedings, according to the plain text of the statute from which this immunity is enacted into law. The frivolity of Mr. Rodriguez's contemplated sanctions is explained in greater detail *supra*, and these same factors demonstrate that there is no colorable basis for Mr. Rodriguez to believe that he is justified in seeking sanctions against the plaintiff or his former counsel. Such an aggressive advancement of a claim with no colorable basis inherently supports a finding that this advancement is made for improper purposes, which would be a correct conclusion in this case as demonstrated by a significant amount of further evidence. Because Mr. Rodriguez cannot defend his client's tortious actions, which were protected only by the now-pierced veil of internet anonymity, his best strategy is to intimidate the plaintiff into withdrawing his meritorious claims, or prejudicing the plaintiff's interests by forcing his former counsel's continued involvement in this case.

This improper motive, of intimidating the plaintiff into withdrawing his meritorious claims, accompanied by an additional and ulterior motive of forcing the plaintiff's former counsel to continue to file and litigate the merits of this case, demonstrates bad faith. Mr. Rodriguez knows that these

sanctions he has threatened the plaintiff with cannot succeed on their merits, but he threatens them anyway in order to cause delay, expense and injury to the plaintiff.

Because there is no particular federal statute fit to address the unique harm caused in these rare circumstances, and FRCP Rule 11 with it's safe-harbor provision is not capable of preventing the injury that Mr. Rodriguez is attempting to cause by his manifest threats to abuse FRCP Rule 11, the Court must rely on its inherent authority or state law to prevent the imminent injury. "It is in cases when 'neither the statute nor the Rules are up to the task, [that] the court may safely rely on its inherent power.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Specifically, in *Chambers*, the Supreme Court identified "tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhausted compliance" which are a perfect description of Mr. Rodriguez's goal in wasting the Court's time on his frivolous sanctions threats, delaying adjudication on the merits of the case, and a harassing the plaintiff as demonstrated by his threatening and rather strange letter Sanctions Exhibit A.

<u>Mr. Rodriguez's Frivolous Sanctions Threats are Harassing and Malicious</u>

In his strange and very aggressive letter to the plaintiff of September 27, Sanctions Exhibit A, further punctuated by an additional email and a phone call which resulted in a voicemail, Mr. Rodriguez has harassed and attempted to maliciously coerce the *pro se* plaintiff into giving up on his meritorious claims.

Mr. Rodriguez decided to phrase his verbose yet hollow threatening letter in as personal a manner as possible, with little regard for professionalism, and chose to insult and demean the plaintiff for reasons unrelated to this matter, particularly in section V titled "Your lawsuit has been filed and pursued for an improper purpose". That section also contains an awe-inspiring amount of self-contradiction by Mr. Rodriguez, because he essentially lists malicious acts alleged to have been committed by defendant Finkelman, even as he elsewhere claims that malice was not alleged against her, and then presents them as evidence of the plaintiff's motive for filing for an "improper purpose".

Before getting to section V however, it must be noted that in section IV purporting to contain "verifiably false factual allegations" (which are not verifiably false Sanctions Exhibit A at 8-9, Mr. Rodriguez illogically asserts that because the defendants in *Rapaport v. Iyer et al.*, are alleged to have injured the plaintiff by causing him to not seek admission to the bar in that case's First Amended Complaint of May 2024, that it is impossible for defendant Finkelman to have caused or be legally liable for that injury as well. This assertion is so illogical as to be strange, and not only because joint and several liability is a universally recognized legal concept. It ignores the basic chronological facts of this case relating to this injury, which are that although Iyer et al. perpetrated their defamations in July and August 2022, the plaintiff could only have been eligible to apply to join the bar after his exam would be graded in October 2023. October 2023 was after August 2023, which was the month in which defendant Finkelman succeeded in obtaining from an "anonymous tipster" the first version of the defamatory forged image and republishing it. She thus made it into a viral sensation, particularly as she targeted it to #LawTwitter and caused it to be indexed by major search engines in association with the plaintiff's name. Mr. Rodriguez ignores the obvious possibility that defendant Finkelman's viral and persistent promotion of the defamations made against the plaintiff are what factually caused the plaintiff to not seek admission to the bar, parallel legal liability for originating the defamation aside, or the possibility that the degree of rancor and false light generated by the combined efforts of both Iyer et al. and defendant Finkelman working to the same end caused this grave injury.

As part of his efforts at intimidation against this *pro se* plaintiff, Mr. Rodriguez veered aggressively into the realm of the personal, and speculates wildly in order to fabricate his own set of falsehoods to attach to this action and the plaintiff, who is a victim of defendant Finkelman's gleeful defamation, invasion of privacy and celebration of his suffering resultant from the original defamation. In his letter Sanctions Exhibit A at 9, Mr. Rodriguez grasps at straws to find fault with the plaintiff or his complaint, as he imputes malice to the plaintiff's short and factual description in his complaint of defendant Finkelman as an attorney who works for the Legal Aid Society of Brooklyn. How such a

short and true description could be improper is genuinely perplexing, especially when one of the most essential requirements for a complaint is to properly identify the defendants, and basic information such as employment or public records relating to licensing (which in this case also include her place of employment as a public record) assist in identifying the proper defendant, which is *this* Abigail Finkelman as opposed to any other. In Mr. Rodriguez's perspective, a short and true description of a defendant's employment relevant to their identification is an improper and sanctionable act, but the hateful diatribes of defendant Finkelman, persisting over many months are sacrosanct speech. Incredibly, Mr. Rodriguez still attempts to make such an argument even after defendant Finkelman posted the New York Attorney Registration Information of the plaintiff's former counsel, which includes his residential address, publicly on X while insulting him for his age. Mr. Rodriguez is highly selective with regard to any mention of who is an attorney and who isn't, as he also saw fit, for some reason, to include a parenthetical directed at the plaintiff which reminds him, as if he needs reminding, "which, unlike you, she is [an attorney]" at the end of page 9.

Mr. Rodriguez continues to grasp at straws as he speculates that the plaintiff only brought a claim because he assumes that because she works for the Legal Aid Society that she does not have money to defend herself. He also speculates that the plaintiff only mentioned that the defendant is an attorney when identifying her, as a threat against her "status as an attorney in good standing". It is not the plaintiff's fault that defendant Finkelman is an attorney, or that she engaged in malicious, tortious and wanton conduct over a span of several months to injure him. Defendant Finkelman's vile publications speak loudly for themselves, and make it obvious to any reasonable person that her conduct is incompatible with honorable membership in the legal profession, but this is no bar to the plaintiff's interest in redeeming his reputation and obtaining compensation for his suffering as he would from anyone who is not a member of the bar. The plaintiff has not brought or indicated any intention to bring disciplinary charges against defendant Finkelman.

After exploring the duality of attorney-labeling or shaming, which according to him is only

permissible when done by defendant Finkelman, Mr. Rodriguez continues to theorize that the plaintiff brought this case because he has "personal disagreement with and dislike of [defendant] Finkelman", as he attempts to concoct a malicious or vexatious motive. Rather than personal disagreement or dislike of her, defendant Finkelman caused the plaintiff grievous injuries to his reputation, including by republishing the defamatory image in Exhibit 1, which caused it to become associated with his name on major search engines, and burdened him in his employment and social prospects, among others.

Mr. Rodriguez ought to be commended for his sensitivity to the interests of his client in his zealous advocacy, including her privacy, if only his conduct were not sanctionable and self-contradictory to an extent that demonstrates bad faith. New York State does not recognize privacy rights almost at all, and certainly not of the kind asserted by Mr Rodriguez on behalf of defendant Finkelman to operate a defamatory and tortious anonymous account. Incidentally, Mr. Rodriguez has argued that the plaintiff is not entitled to privacy for reasons that even more applicable to defendant Finkelman, which demonstrates bad faith on his part for following the law in some parts of his threatening letter but ignoring those same laws in others. Criminal or tortious activity is ordinarily remedied by legal process undertaken under the true legal names of the parties involved as required by the relevant service rules. When Ted Kacyznski was identified as the Unabomber, would that have been a "doxxing" as well according to Mr. Rodriguez?

It is not surprising that defendant Finkelman chose to keep her account anonymous as she used it to illegally defame, harass, humiliate and intrude upon people other than the plaintiff for years prior to her targeting of him. Nor is it surprising that after being identified as its owner, as an affirmation of her guilt and culpability, she made this entire account "protected" (hidden) in order to prevent anyone except for those especially authorized from viewing the hundreds of thousands of posts she has made already. Why suddenly hide the entire library of her posts publicly available for many years if there is nothing to hide? Upon information and belief, defendant Finkelman has averaged approximately 100 tweets or posts a day, a significant portion of which are as vile as those exhibited in the record already.

Mr. Rodriguez also accuses the plaintiff of impropriety because the plaintiff's former counsel, according to Mr. Rodriguez, allegedly told him that removal of the thread would "go a long way". It is unclear how this would support any theory of this litigation being pursued for an improper purpose, because defendant Finkelman's series of publications injures the plaintiff by placing him in a false light before the world in a manner that shocks the conscience, and invade his privacy and solitude.

<u>Mr. Rodriguez Has Engaged in Deceit Through False and Deceptive Communications in Violation of New York Judiciary Law § 487</u>

All of Mr. Rodriguez's filings and communications relating to this matter have been part of a campaign of deceit that is in violation of New York Judiciary Law § 487. Furthermore, it is evident that the threat letter he sent to plaintiff was tailored to the plaintiff, supporting a reasonable inference that he sent a different letter to the plaintiff's former counsel. In so doing, Mr. Rodriguez expects to effectively turn the plaintiff's former counsel into a party, and unethically gain access to information under duress of (frivolous) sanctions that he would not be able to obtain otherwise, while forcing him to litigate the merits of this case. These results would be a travesty of justice and must be stopped.

In *Amalfitano v. Rosenberg*, 428 F. Supp. 2d 196 (S.D.N.Y. 2006), *aff'd*, 572 F.3d 91 (2d Cir. 2009) N.Y. Jud. Law § 487 was applied against an attorney by this District, and in affirming the Second Circuit instructed trial courts that "[a] single act or decision, if sufficiently egregious and accompanied by an intent to deceive, is sufficient to support liability." *Trepel v. Dippold*, No. 04 Civ. 8310(DLC), 2005 WL 1107010, at \*4; see *Izko Sportswear Co. v. Flaum*, 20 A.D.3d 392, 395, 798 N.Y.S.2d 136, 138 (2d Dep't 2005), rehearing granted, 25 A.D.3d 534, 809 N.Y.S.2d 119; but see *Solow Mgmt. Corp. v. Seltzer*, 18 A.D.3d 399, 399–400, 795 N.Y.S.2d 448, 448 (1st Dep't 2005). Intentionally withholding information may also constitute an act of deception. See *Schindler v. Issler & Schrage, P.C.*, 262 A.D.2d 226, 226, 692 N.Y.S.2d 361, 362 (1st Dep't 1999) (finding liability under § 487 where defendant "knowingly withheld crucial information" from the court)". See also *Olshansky v. Sutton*,

2001 WL 99857 (S.D.N.Y. 2001).

Mr. Rodriguez has deceptively represented the facts and exhibits in the record, and ignored evidence that clearly contradicts his general statements. Just to reintroduce a few examples, defendant Finkelman's 'reporting' cannot be "fair and true" if she fabricates quotes that are not extant anywhere in the record. Her republication as the sole public source of the defamatory image for 292 days to hundreds of thousands of viewers on X alone is a distinct injury, even as Mr. Rodriguez omitted any mention of any dates, and pretended that the defamatory image was present concurrently in the docket of *Rapaport v. Iyer et al.* in his communications to the Court and the *pro se* plaintiff. Her description of the plaintiff as a "monster" created by "FedSoc ghouls", was also omitted by Mr. Rodriguez, and the Court or a jury may easily consider whether such a comment indicates unfair coverage.

Mr. Rodriguez has deceptively presented the law as well. In his hubristic and aggressive threats, he ignores the second sentence of NY CVR § 74, which squarely and unconditionally provides that "added" materials extraneous to a judicial proceeding are not protected by immunity. He also pretends that a single case about choice of law for defamation deliberating between New York and District of Columbia law, renders any allegation of a false light claim under New Jersey law, which are routinely accepted by this District, as frivolous. He ignores the clearest case endorsing the correctness of applying New Jersey law to false light claims in this District, which is itself favorably cited in that context by the sole case he offers in support of his own choice of law argument *Kinsey v. New York Times Co.* at footnote 21, referencing *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014).

Mr. Rodriguez has specifically tried to deceive the plaintiff throughout his previously undocketed communications. Two examples are most egregious. First, is the deception that the 21-day safe-harbor period began to run in the absence of Rule 5 service of the motion being effectuated on the plaintiff. He repeated these claims by pressing through an additional email that was followed up by a voice message, in order to attempt to place time pressure and duress upon the plaintiff to withdraw his

own meritorious claims. As described *supra*, he has still failed to effectuate the required service.

Second, is his obviously incorrect assertion to the plaintiff, in the form of bad and unsolicited legal advice, that withdrawal of his entire complaint is his only way to avoid sanctions, which ignores that one of two claims brought by the plaintiff is false light invasion of privacy. As explained *supra*, besides from a token mention of a single case that did not find that District of Columbia law applied to a defamation claim, he did not address that cause of action at all.

Mr. Rodriguez has also abused FRCP Rule 11 by placing his reasons for sanctions, thus prejudicing the plaintiff in the motion he filed to retain jurisdiction over the plaintiff's former counsel. He could have simply requested for the Court to retain jurisdiction without specifying reasons, but he contradicted the clear command of FRCP Rule 11 which provides that the motion or its reasoning "must not be filed or be presented to the court" until 21-days after service under Rule 5 have elapsed.

Although phrased in the context of N.Y. Jud. Law § 487, all of this examples of sanctionable misconduct also warrant sanctions according to the Court's inherent authority as argued *supra.*

<u>Mr. Rodriguez Claims With No Proof That the Defamatory Images and Claims Against the Plaintiff Are All True</u>

Mr. Rodriguez also extraordinarily claims, without any evidence, in Footnote 2 ECF No. 11 that the forged image and defamatory statements against the plaintiff are "true". He has also repeated these claims in his direct communications to the plaintiff in Sanctions Exhibit A. Mr. Rodriguez is the only attorney that has claimed this, as even the attorneys for defendants in *Rapaport v. Iyer et al.* have not done so in any filing. If Mr. Rodriguez cannot produce any reasonable basis for this, or demonstrate that he met his duty of reasonable inquiry in making such a claim, he should be sanctioned for this as well. This violation is especially egregious because he introduced these baseless claims in a docketed letter ECF No. 11 threatening sanctions, in which he himself contradicted the Rule 11 safe-harbor requirement by entering his reasons into the docket prior to service plus 21-days.

**Conclusion**

<u>Sanctioning and Deterring Mr. Rodriguez Prior to His Threatened Frivolous Sanction Motion is the Only Remedy Which Can Avoid Prejudicing the Plaintiff</u>

Sanctions under the inherent authority of the Court or New York Judiciary Law § 487 are necessary to deter Mr. Rodriguez from continuing to maliciously injure the plaintiff through his bad faith abuse of FRCP Rule 11, which threatens plaintiff's attorney-client privilege by effectively converting his former counsel into a party, and prejudicing his meritorious claims.

The sanctions requested are monetary in an amount deemed appropriate by the Court, and procedural in modifying the schedule to demand an answer of defendant Finkelman with 21 days' notice after which a discovery conference may be scheduled.

Dated: New York, NY
October 18, 2024

                              Respectfully submitted,


                                   /s/ Gideon Rapaport, pro se
                                   GideonRapaportLaw@Outlook.com
                                   (862) 213-0895
                                   #627 1078 Summit Avenue
                                   Jersey City, New Jersey, 07310

**SANCTIONS EXHIBIT A**

 Outlook

---

**Rapaport v. Finkelman, 1:24-cv-05942-JGLC (S.D.N.Y.)**

---

**From** Max Rodriguez <max@maxrodriguez.law>

**Date** Fri 9/27/2024 8:38 AM

**To** gideonrapaportlaw@outlook.com <gideonrapaportlaw@outlook.com>

**Cc** Richard A. Altman <altmanlaw@earthlink.net>

📎 1 attachments (411 KB)

2024.09.27 Finkelman Rule 11(c)(2) Letter with Enclosure.pdf;

Dear Mr. Rapaport,

I represent Abigail Finkelman in the above-captioned case, and now that you are representing yourself *pro se*, am contacting you directly in that capacity. If at any time you obtain new counsel that comes to represent you in this matter, please inform me or have them contact me so I may direct my communications appropriately.

Attached to this email is a letter and enclosed proposed motion for sanctions against you and your former counsel Mr. Altman (who is copied on this email). This letter and enclosed proposed motion constitute pre-filing service of the motion under Rule 11(c)(2), and the grounds for the motion are discussed therein. Per Rule 11(c)(2), if the challenged paper and claims (i.e., your complaint) are dismissed with prejudice within the 21-day safe harbor period, this motion will not be filed.

Ms. Finkelman reserves all rights and remedies with respect to you and Mr. Altman.

Sincerely,

**MAX RODRIGUEZ**
Principal and Founder
(he/him/his)



575 5th Avenue
14th Floor
New York, NY 10017

T 646-741-5167
max@maxrodriguez.law
www.maxrodriguez.law

This message is confidential and may be legally privileged or otherwise protected from disclosure.  If you are not the intended recipient, please telephone or email the sender and delete this message and any attachments from your system; you must not copy or disclose the contents or any attachments to any other person.



LAW OFFICE OF
**MAX RODRIGUEZ**

575 5th Avenue, 14th Floor
New York, NY 10017

Max Rodriguez
max@maxrodriguez.law
T 646-741-5167

September 27, 2024

<u>**Via Email**</u>

Gideon Rapaport
1078 Summit Avenue, Suite 627
Jersey City, NJ 07307

Address Unknown
Vancouver, BC, Canada[1]
*Email*: gideonrapaportlaw@outlook.com

   Re: *Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC

Dear Mr. Rapaport:

   I represent Defendant Abigail Finkelman in the above-captioned action. I write to provide notice[2] that, on or before October 28, 2024, but no earlier than October 21, Ms. Finkelman will file the enclosed motion for sanctions under Rule 11(c)(2), along with a separate motion to dismiss the complaint in this action with prejudice.

   The complaint you have filed asserts claims that are barred as a matter of law and are, in every respect under, among other things, the law of defamation, choice-of-law analysis, and New York Civil Rights Law, frivolous. Further, the thrust of your complaint strongly suggests that you filed this lawsuit and asserted these claims against Ms. Finkelman for an improper purpose, namely to harass, intimidate, and inconvenience her with needless legal costs for making legally and constitutionally protected public comments on X (formerly known as Twitter) about your

---

[1] Multiple filings you have made *pro se* in *Rapaport v. Iyer et al.* refer to having been executed in "Vancouver, British Columbia (Canada)." *See, e.g.*, No. 1:23-cv-06709, ECF Nos. 67, 68 (Sept. 13, 2024 S.D.N.Y.). You list the above address in Jersey City in your signature block and on CM/ECF. However, your pleadings in your case against Ms. Finkelman say that you resided in New Jersey "during the events complained of herein" but the description of you as a party describes you as "a citizen of Canada, [who] has been previously lawfully admitted to the United States as a nonresident alien, and that is his current status as well." No. 1:24-cv-05942, ECF No. 1, ¶¶ 1, 35 (Aug. 5, 2024). This suggests you no longer reside at the Jersey City address. Whether you reside in Vancouver or somewhere else, you are obligated to provide the Court with an updated address where you can successfully be reached for service under Rule 11(a). *See, e.g.*, *Correa v. Lynch*, No. 20-CV-02875 (PMH), 2022 WL 161446, at *1 (S.D.N.Y. Jan. 18, 2022). Accordingly, please provide and/or confirm your present updated address in your response to this letter and share the same with the Court.

[2] This letter is also sent to and directed towards Mr. Richard A. Altman, your prior attorney, and should serve as notice under Rule 11(c)(2) to him.

LAW OFFICE OF

# MAX
# RODRIGUEZ

Mr. Gideon Rapaport
*Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC
September 27, 2024
Page 2 of 12

other lawsuit, *Rapaport v. Iyer et al.*, No. 1:23-cv-06709 (S.D.N.Y.) ("*Rapaport I*"). Your complaint in this case also asserts verifiably false allegations that Ms. Finkelman caused injuries that you yourself have admitted in other public filings she did not cause. Taken together, this case is a prime example of frivolous litigation pursued for an improper purpose.

To avoid the need for Ms. Finkelman to incur additional legal fees, costs, and other injuries arising from your frivolous lawsuit, you may cure your sanctionable conduct (and Mr. Altman's) by immediately dismissing this case in its entirety with prejudice, but certainly no later than twenty-one days after transmission of this letter. Ms. Finkelman reserves all her rights and remedies, including but not limited to those described in this letter.

## I.    Motions for Sanctions Generally

When a pleading is filed with and advocated for before the court, the attorney and/or unrepresented party[3] responsible for that pleading certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," among other things, "it is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," or "the factual contentions have evidentiary support…." Fed. R. Civ. P. 11(b), (b)(1), (b)(2), (b)(3).

Accordingly, there is an "affirmative duty … to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) (cleaned up). And when "it should have been patently obvious to [anyone] who had familiarized himself with the law" that the action was frivolous, the continued pursuit of the action is objectively unreasonable and sanctionable. *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988). Further, it is also sanctionable "where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that [the claim is] groundless." *Int'l Techonologies Mktg., Inc. v. Cognyte Techs. Israel Ltd.*, No. 1:15-CV-2457-GHW, 2022 WL 11280876, at *6 (S.D.N.Y. Oct. 19, 2022) (quoting *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 597 (S.D.N.Y. 2013)).

In the context of defamation or equivalent claims, courts in the Second Circuit have imposed sanctions for the assertion of frivolous claims, including those asserted with respect to claims

---

[3] In this case, both you and Mr. Rapaport, your former attorney, are responsible for this frivolous lawsuit and may both be held responsible for pursuing it under Rule 11(b)(1) and 11(b)(2), and for making false allegations under 11(b)(3), because Mr. Rapaport filed it on your behalf, and you, now as a *pro se* plaintiff, continue to pursue it.



Mr. Gideon Rapaport
*Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC
September 27, 2024
Page 3 of 12

protected by a legal privilege or immunity. *See Chemiakin v. Yefimov*, 932 F.2d 124, 126 (2d Cir. 1991) (affirming and restating district court's imposition of sanctions because complaint was "patently frivolous" and "does not, and cannot, state a claim in defamation"); *Gray v. Millea*, 892 F. Supp. 432, 437–38 (N.D.N.Y. 1995) (granting sanctions motion because "plaintiff failed to point to any even arguably defamatory statement by any defendant" and conduct in opposition to dismissal that indicated "a willful disregard of the facts and law amounting to bad faith litigation"); *Zerman v. Sullivan & Cromwell*, 677 F. Supp. 1316, 1324 (S.D.N.Y. 1988) ("Plaintiff could not have held a reasonable belief that liability could be based on the lawyers' statements reported in the article. Those statements are either clearly protected reports of judicial proceedings or clearly protected expressions of opinion."); *Kearney v. Todd L. Smith, P.A.*, 624 F. Supp. 1008, 1013, 1015 (S.D.N.Y. 1985) (granting sanctions motion because allegedly defamatory statements were "absolutely privileged" and "do not provide a basis for a claim" leading to conclusion that "litigation was [] intended to harass or needlessly increase the cost of litigation").

## II.     Your defamation claim against Ms. Finkelman is frivolous and barred as a matter of law

As you hopefully know, under New York law, a defamation claim must allege "(1) a false statement about the [complainant]; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) (alterations in original) (quoting *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009)).

However, when the statement alleged to be defamatory is a "communication in a place open to the public or a public forum in connection with an issue of public interest" New York considers the defamation case to be an "action involving public petition and participation" and requires the plaintiff to prove that "any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false," i.e., actual malice, rather than mere negligence. N.Y. Civil Rights L. § 76-a(1)(a)(1), (2). The term "public interest" is "construed broadly, and shall mean any subject other than a purely private matter." *Id.* § 76-a(1)(d). This includes public statements concerning lawsuits. *See, e.g.*, *Reus v. ETC Hous. Corp.*, 72 Misc. 3d 479, 485 (N.Y. Sup. Ct. 2021), *aff'd*, 203 A.D.3d 1281 (N.Y. App. Div. 3d Dep't 2022).

The complained-of statement by Ms. Finkelman is protected by a statutory immunity under New York law. Furthermore, your complaint fails to allege any of the requisite elements of a claim for defamation, and could not truthfully do so through an amended pleading.



Mr. Gideon Rapaport
*Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC
September 27, 2024
Page 4 of 12

## A.  Your claims are barred by N.Y. Civil Rights Law § 74

New York provides absolute immunity barring civil actions "against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." N.Y. Civil Rights L. § 74. A statement qualifies for the privilege if "the ordinary viewer or reader can determine from the publication itself that the publication is reporting on a judicial proceeding." *Kinsey v. New York Times Co.*, 991 F.3d 171, 179 (2d Cir. 2021). A statement to which the immunity applies is "fair and true" if "it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Id.* at 178; *Bouchard v. Daily Gazette Co.*, 136 A.D.3d 1233, 1234 (N.Y. App. Div. 3d Dep't 2016) ("[T]he language used 'does not suggest more serious conduct than that actually suggested in the official proceeding." (quoting *Geiger v. Town of Greece*, 311 Fed. Appx. 413, 417 (2d Cir. 2009)). The immunity provided by section 74 has "a liberal interpretation … so as to provide broad protection to [] accounts of judicial proceedings." *Id.* at 179 (quoting *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017)).

Ms. Finkelman's statements at issue in this lawsuit concern *Rapaport I*. Indeed, your pleadings state this explicitly. *See* No. 1:24-cv-05942, ECF No. 1 ("Complaint"), ¶ 11 ("The plaintiff's *pro se* complaint was the subject of a series of comments by the defendant shortly after it was filed."). Furthermore, the statement you claim is defamatory — i.e., the reproduction of a photograph you claim is fake showing your picture posted at a security desk with the caption "DO NOT ADMIT GIDEON RAPAPORT KIRKLAND AND ELLIS" — is a fair and true report because it is a reproduction of the photograph at issue in *Rapaport I*. Beyond that, you subsequently caused the same photo to be publicly filed as an exhibit to your amended complaint in *Rapaport I*. *See Rapaport I*, ECF No. 1, ¶¶ 7–9; ECF No. 38, ¶¶ 35–37, 41, 47, 56; ECF No. 38-1; ECF No. 38-2.

Ms. Finkelman's publication of the photograph and statements concerning it (and all other statements referenced in your complaint), are squarely protected by section 74 under binding Second Circuit and New York precedents. Public speakers are entitled to reference the contents of documents filed in a judicial proceeding, including text and images. *See Kinsey*, 991 F.3d at 179. Speakers are also entitled to reference "background material with regard to the case so long as the statement is a substantially accurate description of the allegation." *Fishof v. Abady*, 280 A.D.2d 417, 417–18 (N.Y. App. Div. 1st Dep't 2001) (citation omitted).

Accordingly, before even considering the insufficiency of your allegations as to the elements of a defamation claim, your claims against Ms. Finkelman are barred as a matter of



Mr. Gideon Rapaport
*Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC
September 27, 2024
Page 5 of 12

law. The case law cited above is but a small sample of the copious available precedents that
foreclose your claims because of section 74.[4]

### B.  Ms. Finkelman's statements are non-actionable opinions

Turning to the elements of your defamation claim, your case fares no better. Your claim
turns exclusively on arguing that Ms. Finkelman posting the photograph communicated that the
photo "had been publicly posted in the lobby of the office building where plaintiff was
employed" and "was evidence that he had been fired for sexual misconduct and was somehow
barred from entry to the building." Complaint ¶ 17. But that is not what Ms. Finkelman's
statements, read in context as an ordinary reader would understand them, said. Ms. Finkelman's
entire thread, including her posting of the photograph, are protected statements of opinion that
communicated one clear opinion to any reasonable reader: she thought your *Rapaport I* lawsuit
was ridiculous, mockworthy, and amusing. She was not the only one.[5]

"Among other questions of law, courts are charged with distinguishing between
statements of fact, which may be defamatory, and expressions of opinion, which 'are not
defamatory; instead, they receive absolute protection under the New York Constitution.'" *Jacob
v. Lorenz*, 626 F. Supp. 3d 672, 690 (S.D.N.Y. 2022) (quoting *Live Face on Web, LLC v. Five*

---

[4] *See, e.g.*, *Jeanty v. Cerminaro*, No. 21-1974, 2023 WL 325012 (2d Cir. Jan. 20, 2023)
(summary order); *Daleiden v. Planned Parenthood Fed. of America*, No. 21-2068, 2022 WL
1013982 (2d Cir. Apr. 5, 2022) (summary order); *Kinsey*, 991 F.3d at 179–180; *Tacopina v.
O'Keeffe*, No. 15-3003, 645 Fed. Appx. 7 (2d Cir. 2016) (summary order); *Seymour v. Lakeville
J. Co. LLC*, 150 Fed. Appx. 103 (2d Cir. 2005) (summary order); *Misek-Falkoff v. McDonald*,
63 Fed. Appx. 551 (2d Cir. 2003) (summary order); *Gonzalez v. Gray*, 216 F.3d 1072 (2d Cir.
2000) (summary order); *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 457–60
(E.D.N.Y. 2013); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584,
588–89 (S.D.N.Y. 2009); *Idema v. Wager*, 120 F. Supp. 2d 361, 367–69 (S.D.N.Y. 2000), *aff'd*,
29 Fed. Appx. 676 (2d Cir. 2002); *Aboutaam v. Dow Jones & Co.*, 180 A.D.3d 573, 574–75
(N.Y. App. Div. 1st Dep't 2020); *Ford v. Levinson*, 90 A.D.2d 464, 465 (N.Y. App. Div. 1st
Dep't 1982).

[5] The following posts and comment threads are examples:
https://www.otbl.org/node/405/page32;
https://www.reddit.com/r/biglaw/comments/15l7o2n/rip_to_cf_is_big_law_rally_this_toxic/;
https://www.reddit.com/r/biglaw/comments/1bkckm9/ever_heard_of_or_seen_a_summer_associ
ate_being/; https://www.glassdoor.com/Community/big-law/a-former-summer-is-suing-ke;
https://bsky.app/profile/kenwhite.bsky.social/post/3kzmu7m7oh227.



Mr. Gideon Rapaport
*Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC
September 27, 2024
Page 6 of 12

*Boro Mold Specialist Inc.*, No. 15 Civ. 4779 (LTS) (SN), 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016)).[6] Statements criticizing or mocking a party's public pre-litigation or litigation positions are classic statements of opinion. Indeed, precisely these sorts of statements have been deemed opinions by courts in the Second Circuit. *See, e.g.*, *LaNasa v. Stiene*, No. 22-CV-5686 (KAM) (VMS), 2024 WL 1648001, at *8 (E.D.N.Y. Apr. 17, 2024); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 47–48 (S.D.N.Y. 2017).

### C. To the extent they are statements of fact, Ms. Finkelman's statements are true

Even if Ms. Finkelman's statement you allege to be defamatory is not a protected opinion, that does not change that your claim is frivolous because what Ms. Finkelman said about the photograph was true. "[T]ruth is an absolute, unqualified defense to a civil defamation action and 'substantial truth' suffices to defeat a charge of libel." *Cortes v. Twenty-First Century Fox America, Inc.*, 285 F. Supp. 3d 629, 642 (S.D.N.Y. 2018) (quoting *Giuffre v. Maxwell*, 15 Civ. 7433 (RWS), 2017 WL 1536009, at *4 (S.D.N.Y. Apr. 27, 2017)). A plaintiff must "plead facts that, if proven, would allow a reasonable person to consider the statement false." *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017).

In this case, as your pleadings state, Ms. Finkelman expressed a desire to "see the <u>fake</u> 'wanted' or 'public enemy' poster." Complaint ¶ 14 (emphasis added). She then said she had received the photo, and posted the photo, with no contrary commentary suggesting she believed the photo communicated anything about your tenure at Kirkland & Ellis. *Id.* ¶¶ 15–17. A reasonable person reading Ms. Finkelman's posts would understand her to be (1) accepting your allegation in *Rapaport I* that the photo was fake; (2) expressing an interest in seeing it for her own and others' amusement; and (3) posting the photo at issue in *Rapaport I*. None of these statements are false. Indeed, they are completely true. You confirmed their truth when you posted the same photo as an exhibit to your amended complaint in *Rapaport I*.

Your attempt to claim the posting of the photograph carries some "false and defamatory impression" regardless of the context in which the speaker posted it (i.e., explicitly saying the

---

[6] Even if they are not entirely statements of opinion, Ms. Finkelman's posts in the thread cannot be understood to communicate the defamatory meaning you allege. In order to be actionable for defamation, a statement does not just need to be a statement of fact capable of being proven or disproven, it also must be susceptible to having a defamatory intent. This evaluation is made by "giv[ing] the disputed language a fair reading in the context of *the publication as a whole*." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (emphasis in original) (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 380 (1995)).



LAW OFFICE OF
MAX RODRIGUEZ

Mr. Gideon Rapaport
*Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC
September 27, 2024
Page 7 of 12

photo is faked, but is relevant to *Rapaport I*) falls flat. Complaint ¶ 17. Further, it runs afoul of courts' frequent and repeated dismissal of defamation claims based on "insufficient innuendo when only a strained, unreasonable, unjustifiable innuendo … would support the plaintiff's contention that the challenged language exposes [him] to public shame, hatred, or ostracism." *Idema v. Wagner*, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000) (cleaned up); *see also Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 137 (1959) ("The pleaded innuendo is strained, unreasonable and unjustified. It does not explain any statement in the article, but adds an entirely new and independent thought that finds no support in the article." (cleaned up)).

Ms. Finkelman accepted your representation that the photo was not authentic, and that is what she said. That she found the photo as amusing as she found the rest of your lawsuit in *Rapaport I* does not alter that her statements, to the extent they were not opinions, were true. The law does not allow you to squint at a statement to manufacture defamation liability.

**D.  Your complaint does not and cannot allege actual malice**

Your complaint is separately lacking and frivolous because you have not made (and cannot make) any allegations that Ms. Finkelman acted with actual malice. As explained above, New York Civil Rights Law § 76-a(2) requires you to adequately and plausibly allege that Ms. Finkelman made the statements you allege to be defamatory "with knowledge of [their] falsity or with reckless disregard of whether [they] are false…." Further, even if section 76-a(2) did not apply, which it does, your lawsuit was the subject of copious discussion and mockery online, making you for these purposes a limited-purpose public figure obligated to plead actual malice. *See* Complaint ¶ 10 ("The action garnered attention in the legal community….").

You have not made any allegations about Ms. Finkelman's intent in making the statements, much less demonstrated any actual malice. This is not a pleading deficiency you could cure through amendment because, to state the obvious, Ms. Finkelman did not make any statements with actual malice.

**III.  <u>Your false light and invasion of privacy claim against Ms. Finkelman is frivolous and barred as a matter of law</u>**

You also assert a claim against Ms. Finkelman for "False Light and Invasion of Privacy." Your complaint says that "[t]his claim is alleged under the laws of the State of New Jersey where plaintiff resided during the events complained of herein." Complaint ¶ 35. No doubt you assert this second claim under New Jersey law because "New York does not recognize a separate cause of action for false light/invasion of privacy." *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 151 (S.D.N.Y. 2022).

LAW OFFICE OF

# MAX
# RODRIGUEZ

Mr. Gideon Rapaport
*Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC
September 27, 2024
Page 8 of 12

Where there is an actual conflict between the laws of two different jurisdictions, New York "applies the law of the state with the most significant interest in the litigation." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). In circumstances both similar to and exactly analogous to this case, courts have repeatedly applied New York law, especially where the defendant is domiciled in New York and/or the statements emanated from New York. *See, e.g.*, *Kinsey*, 991 F.3d at 175–78; *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 684–86 (S.D.N.Y. 2022); *Prince v. Intercept*, 634 F. Supp. 3d 114, 131–34 (S.D.N.Y. 2022); *Henry*, 629 F. Supp. 3d at 151–52.

The Second Circuit's decision in *Kinsey* is especially worth noting in this letter because the circumstances considered by the court in that case are analogous to this case, and would weigh heavily on (if not control) the court's analysis of comparable choice-of-law questions in this case. Your attempt to assert New Jersey law is indeed even less defensible than the attempt to assert District of Columbia law in *Kinsey* because in that case, the plaintiff alleged that relevant "events [] took place at a bar in the District of Columbia and [] adversely affected his employment in the District of Columbia." *Kinsey*, 991 F.3d at 178. In this case, your complaint alleges: (1) "a substantial part of the events or omissions giving rise to the claims occurred in [S.D.N.Y.]," Complaint ¶ 5; and (2) "[a]s a direct result of defendant's posting, plaintiff has not yet sought admission to the New York bar," *id.* ¶ 7. And in *Rapaport I*, you discuss in greater detail how yet more of the relevant facts in this case occurred in New York. *See Rapaport I*, ECF No. 1, ¶ 9 (describing photograph as "falsely asserted to have been taken at the guarded security gate at 601 Lexington Avenue, New York"). Accordingly, New York law applies and forecloses your false light or invasion of privacy claim, and there is no serious argument to the contrary.

Finally, the points raised above with respect to the insufficiency of your defamation claim on the merits apply with equal force to your false light or invasion of privacy claim. Even if New Jersey law somehow applied, which it doesn't, this claim would still fail. *See Henry*, 629 F. Supp. 3d at 151–52 ("Because his complaint lacks sufficient facts to support his defamation by implication claim, and there are no additional facts related to his invasion of privacy claim, his claim fails under Maryland law as well.").

## IV.    <u>Your complaint contains verifiably false factual allegations</u>

Separately, your complaint includes false allegations that purport to attribute supposed injuries you have suffered to Ms. Finkelman. In particular, you allege that "[a]s a direct result of defendant's posting, plaintiff has not yet sought admission to the New York bar, despite having passed the bar examination, due to his fear of the adverse effect of defendant's actions upon the Committee on Character and Fitness." Complaint ¶ 7. The trouble is that you made this same near-verbatim allegation in your amended complaint in *Rapaport I* (also filed on your behalf by Mr. Altman). *See Rapaport I*, ECF no. 38, ¶ 14. The amended complaint in *Rapaport I* was filed



LAW OFFICE OF
**MAX RODRIGUEZ**

Mr. Gideon Rapaport
*Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC
September 27, 2024
Page 9 of 12

about two and a half months before you filed the complaint in this case, and arises from alleged injuries that you allege occurred in July and August 2022, i.e., the messages, supposedly fake photograph, and other acts that form the basis of your claims in *Rapaport I. See id.* ¶¶ 32–77.

If you were already supposedly injured by not seeking admission to the New York bar because of what you allege in *Rapaport I* happened in July and August 2022, you cannot credibly allege that anything Ms. Finkelman said or did in August 2023 caused those same injuries.

### V.  <u>Your lawsuit has been filed and pursued for an improper purpose</u>

Considering the total lack of merit to the claims you assert against Ms. Finkelman, it is unavoidable to conclude that you, with Mr. Altman's assistance, filed this case and now continue to pursue it *pro se* for an improper purpose. "A court may infer an improper purpose if, in light of Plaintiffs' conduct during and outside the litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit." *An v. Despins*, No. 22-cv-10062, 2023 WL 4931832, at *6 (S.D.N.Y. Aug. 2, 2023). Where the plaintiff's claims "are legally frivolous and factually flawed," there is "no difficulty finding that Plaintiff [] initiated [the] action for an improper purpose." *Gong v. Sarnoff*, No. 23-CV-343 (LJL), 2023 WL 5372473, at *13 (S.D.N.Y. Aug. 22, 2023). The *Gong* decision warrants further focus. In that case, the court reached the clear logical inference that the plaintiff had not filed his complaint "to redress any injury … or to obtain judicial relief, but to harass [] Defendants" for doing something completely within their rights to do "and to deter others from doing the same." *Id.* at *14.

For a variety of reasons laid out below, it is clear from the face of your complaint, as well as from Mr. Altman's conduct during his brief tenure as your attorney in this case, that you filed and continue to pursue this case to harass Ms. Finkelman for mocking your risible *Rapaport I* lawsuit as she is legally allowed to do.

First, in describing Ms. Finkelman in your complaint, you mention that she is "a member of the New York State Bar" and "an employee of the Legal Aid Society." Complaint ¶ 2. These facts have no bearing on your claims, raising the question why a plaintiff would reference this information. To refer to Ms. Finkelman's status as a licensed attorney admitted to practice law (which, unlike you, she is), raises the clear suggestion you intended to damage or endanger her status as an attorney in good standing. Further, to mention her employment as an attorney at the Legal Aid Society similarly has no relevance to your claims. Instead, it speaks to your calculated and cynical choice to sue a person employed by a public interest legal organization, who would be in a less strong financial position to defend herself from your frivolous claims than alternative targets.

LAW OFFICE OF

# MAX RODRIGUEZ

Mr. Gideon Rapaport
*Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC
September 27, 2024
Page 10 of 12

Second, several allegations in your complaint reveal your personal disagreement with and dislike of Ms. Finkelman. For example, for no relevant legal purpose, your complaint discusses the "arguably offensive" quality of Ms. Finkelman's account name, Complaint ¶ 11, elaborates in detail about critical posts that are not relevant, *id.* ¶¶ 12–14, 24–26, quotes Ms. Finkelman's posts that include her opinions about Mr. Altman's appearance as your attorney, *id.* ¶ 24, and the filing of your amended complaint, noting that she "apparently closely monitors the public docket," *id.*; *see also id.* ¶ 26.[7] These "allegations" transparently reveal your displeasure with Ms. Finkelman's interest in and commentary about your case in *Rapaport I* (and seemingly Mr. Altman's displeasure at his mention). In the absence of any valid or even arguably valid claim against her, filing a lawsuit including these allegations is telling.

Third, in filing this frivolous action against Ms. Finkelman, and in tying her directly to the account at issue — which was anonymous — you have essentially doxxed[8] Ms. Finkelman. Your complaint directly and publicly associated her with an online account she had intentionally chosen to keep anonymous. Because your claims have no conceivable merit, the decision to proceed in this manner speaks to your desire to harm, humiliate, and intimidate Ms. Finkelman by revealing her identity against her will.

Fourth, during his brief tenure as your attorney in this case, Mr. Altman's conduct further reveals that you filed this lawsuit for an improper purpose. During an August 27, 2024 phone call between myself and Mr. Altman, which I initiated to discuss waiver of service and a schedule by which to respond to the complaint, Mr. Altman told me that it would "go a long way" to resolve this case if Ms. Finkelman would delete her entire thread of posts. I informed him in response that my early assessment of the case (at that point I had only been engaged for a few days) suggested that the case was frivolous and you should consider dismissing it.

Mr. Altman's comment speaks volumes. Among other purposes described above, your strategy in filing this lawsuit appears to have been to intimidate Ms. Finkelman by forcing her to defend herself in a lawsuit for which you believed she could not afford to hire an attorney (noting your previous "Legal Aid" allegation), and that you would leverage that to demand that she delete her entire thread, including comments that your Complaint (in a rare moment of legal

---

[7] In case you are not aware, there are many free services that check, index, and update court dockets, and provide pdfs of the relevant filings. These include examples that are easy to find for your case. *See, e.g.*, *Rapaport I* Docket, *available at* https://www.courtlistener.com/docket/67655347/rapaport-v-doe-1/.

[8] Doxxing refers to the nonconsensual publication of personally identifiable information. *See* Wikipedia, Doxxing, *available at* https://en.wikipedia.org/wiki/Doxing.



Mr. Gideon Rapaport
*Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC
September 27, 2024
Page 11 of 12

accuracy) noted "were within her First Amendment rights, despite their critical nature." Complaint ¶ 13.

Taking together the frivolousness of your claims and the litany of suggestions of improper, cynical, and (especially for someone who purports to aspire to become an attorney) unethical motives for pursuing those claims, it is clear to me that you have filed this lawsuit for an improper purpose in violation of Rule 11. I believe the court will reach the same conclusion.

## VI.    Ms. Finkelman has additional rights and remedies she reserves the right to pursue

In addition to pursuing dismissal of your complaint with prejudice and sanctions, I advise you that Ms. Finkelman reserves the right to assert claims (whether as counterclaims in this action or claims in a separate action) against you under New York Civil Rights Law. Even though federal procedural law likely precludes the assertion of a so-called "anti-SLAPP motion" in federal court, a defamation defendant may under New York law "maintain an action, claim, cross claim or counterclaim to recover damages … from any person who commenced or continued" a defamation action "involving public petition and participation [that] was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. Civil Rights L. § 70-a(1), (1)(a) (describing standard for costs and attorney's fees). In addition, section 70-a permits a defamation defendant to recover "other compensatory damages" when a plaintiff "commenced or continued [a defamation action] for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights" as well as "punitive damages" if the plaintiff commenced his case "for the sole purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights." *Id.* § 70-a(1)(b), (1)(c).

Prior decisions in the Southern District of New York strongly suggest that such a claim would be meritorious. In particular, at least one decision denied a motion to dismiss a counterclaim under section 70-a where the counterclaimant at issue had — similarly to Ms. Finkelman — merely "republished" content that the defamation plaintiff alleged was defamatory in its original context. *Watson v. NY Doe 1*, No. 19-CV-533 (JGK), 2023 WL 6540662, at *5 (S.D.N.Y. Oct. 6, 2023).

\*        \*        \*

As explained at the outset, under the Rule 11 safe harbor, you may cure the sanctionable conduct described in this letter by voluntarily dismissing your complaint in its entirety and with



LAW OFFICE OF
**MAX
RODRIGUEZ**

Mr. Gideon Rapaport
*Rapaport v. Finkelman*, No. 1:24-cv-05942-JGLC
September 27, 2024
Page 12 of 12

prejudice within the period described in Rule 11. No other remedy would cure the issue because your claims are frivolous and no amendment to the pleading can change that.

      If you choose not to dismiss your complaint in its entirety and with prejudice before that deadline, Ms. Finkelman will vigorously defend herself and reserves all rights and remedies available to her under the law.

                        Sincerely,

                        */s/ Max Rodriguez*

                        Max Rodriguez

cc: Mr. Richard A. Altman, Esq. (former counsel for Plaintiff subject to court's jurisdiction)

Enclosure (Draft Notice of Motion for Sanctions)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GIDEON RAPAPORT, | |
| Plaintiff, | |
| - vs. - | No.: 1:24-cv-05942 (JGLC) |
| ABIGAIL FINKELMAN, | |
| Defendant. | |

## NOTICE OF PLAINTIFF GIDEON RAPAPORT'S MOTION
## FOR SANCTIONS AGAINST COUNSEL RICHARD A. ALTMAN

PLEASE TAKE NOTICE that, upon the accompanying Memorandum of Law in Support of Defendant's Motion for Rule 11 Sanctions Against Plaintiff Gideon Rapaport and Plaintiff's Former Counsel Richard A. Altman, the annexed Declaration of Max Rodriguez and the exhibits thereto, and all the pleadings and proceedings herein, Defendant Abigail Finkelman, by and through her undersigned counsel, hereby moves this Court before the Honorable Jessica G.L. Clarke, United States District Judge for the Southern District of New York, at the United States Courthouse located at 500 Pearl Street, Room 1040, New York NY 10007, for an order, pursuant to Federal Rule of Civil Procedure 11, ordering sanctions against Plaintiff Gideon Rapaport, and his former counsel, Richard A. Altman of the Law Office of Richard A. Altman, and requiring them to pay all of the attorneys' fees, costs, and other expenses that Defendants have incurred in defending against this action, as well as any other sanctions the Court deems appropriate. Defendant respectfully requests oral argument on this motion.

Dated: October 21, 2024
      New York, New York

                         LAW OFFICE OF MAX RODRIGUEZ PLLC

                         By:     /s/ *DRAFT*

                         Max Rodriguez
                         575 5th Avenue
                         14th Floor
                         New York, NY 10017
                         (646) 741-5167
                         max@maxrodriguez.law
                         *Attorney for Defendant Abigail Finkelman*