**Opposition to Defendant Finkelman's Motion to Dismiss**

**Table of Contents**

Preliminary Statement.................................................................................................................3

Factual Background....................................................................................................................4

Argument....................................................................................................................................5

Defendant Finkelman Has No Immunity For Her Defamatory and Tortious Publications..................5

Defendant Finkelman Republished A Defamatory Image That Was Not A Part of Any Proceeding

.............................................................................................................................................5

Defendant Finkelman's "Reporting" Was Neither Fair nor True.......................................9

Defendant Finkelman Republished A Defamation Capable of Factual and Judicial Determination

Rather Than an Opinion..........................................................................................................14

The Plaintiff is a Private Person Who Cannot Be Converted Into a Public Figure By a Defamation

Against Him............................................................................................................................15

Defendant Finkelman's Actual Malice Is Evident In All of Her Myriad Actions.............................15

New Jersey Law Applies to Defendant Finkelman's False Light and Invasion of Privacy................16

Conclusion...............................................................................................................................18

## **Preliminary Statement**

Defendant Finkelman begins her Motion to Dismiss, filed through her counsel, with further personal attacks against the plaintiff, adding to the immense volumes she has already maliciously and obsessively dedicated to him through her defamatory and tortious online activities, which could also be described as cyberbullying on steroids, with life-altering implications relating to reputation, career opportunities, personal relationships and basic participation as a member of society.

Defendant Finkelman mentions that she "has never met Mr. Rapaport and had never heard of him before reading his prior filings with this Court", yet she has dedicated significant efforts and time to cruelly defame and humiliate him, including by digging up with the help of an "anonymous tipster" a defamatory image that caused him immense personal and professional injury, a fact that she obviously enjoys as demonstrated by the exhibits to the Complaint already in the record.

Defendant Finkelman believed that due to online anonymity[1] she would be able to maliciously injure the plaintiff and others, through her X account among others, and did not take even the minimal precautions to protect herself from legal liability, necessitating in desperation, frivolous and malicious threats of sanctions designed to intimidate the plaintiff into moving for a dismissal of his own case.

Absent any meritorious defenses, defendant Finkelman unwisely introduces through the public record the writings of other commentators on Rapaport v. Iyer et al., who unlike defendant Finkelman, were reasonably fair and accurate, and, showed at least a token amount of consideration for the immense suffering and loss described by the plaintiff in his original *pro se* complaint, brought against John Does who have since been identified in Rapaport v. Iyer et al.

While attempting to reach for any part of the public record that may assist her, defendant Finkelman has hidden her entire X account, otherwise a part of the public record, which contains hundreds of thousands of posts, from public view. She does so even as she claims that she is totally immune for all of her conduct on that platform and did nothing wrong. This cover-up does not fit with

---

1    Posting under the arguably offensive name "Mrs. Detective Pikajew Esq." and handle @clapifyoulikeme

her arguments to for a dismissal of this action, and the bringing of these claims against her as frivolous. Defendant Finkelman has defamed or otherwise tortiously injured many others in addition to the plaintiff, and she may be attempting to continue to hide from her many victims or deny them evidence.

### Factual Background

On July 28, 2023, this plaintiff filed a John Doe case[2] *pro se* against individuals who defamed him by posting and forwarding false and defamatory statements that he had been fired from his summer associate position at Kirkland & Ellis LLP, was barred from entry to the building that were accompanied by digitally manipulated and defamatory images, in two versions, purporting to be a "Do Not Admit" notice posted by that firm at the security desk. These John Does have since been identified by subpoenas as Ajay Srinivasan Iyer, Zachary George Garrett and Richard Allen Epstein.

Within about a week of the initiation of that case, defendant Finkelman became aware of, and amplified it greatly on #LawTwitter, causing it to go viral and receive hundreds of thousands of views within days. Although her commentary upon and promotion of the plaintiff's suffering which caused him to file that case was entirely cruel and malicious, the only stated cause of action for defamation in this matter is her republication of the first version of the defamatory image on August 6, 2023, which was not available anywhere on the internet (as she recognized herself in writing in that post).

The defendants in the first case had removed the first version from the internet when it was disbelieved as an obvious forgery because the digitally inserted image of the plaintiff was completely unwrinkled against the background of a physical page that was thoroughly wrinkled. They did so in order to prevent comparison with the second version which was more sophisticated and blended the digitally inserted image of the plaintiff with the underlying wrinkles of the page, that they disseminated directly and personally to decision makers in the Federalist Society among others.

The first (and second) versions of the forgery, were only entered into the record of *Rapaport v.*

---

2    The related case's caption and docket are *Rapaport v. Iyer et al.*, 23-cv-06709(JGLC)

*Iyer et al.* as exhibits on May 24, 2024. For 292 days, and approximately 300,000 views on X alone, the first version of the defamatory image was made available solely by defendant Finkelman, and the second version, which proves it (and thus also itself) to be a forgery upon immediate comparison was available nowhere, and defendant Finkelman never even commented upon this contrast despite her obsessive coverage of this issue.

Defendant Finkelman also amplified her defamatory and tortious 'thread', as evidenced by the public record, by posting it on Reddit.com and on Fishbowlapp.com.

### Argument

**Defendant Finkelman Has No Immunity For Her Defamatory and Tortious Publications**

<u>Defendant Finkelman Republished A Defamatory Image That Was Not A Part of Any Proceeding</u>

Defendant Finkelman claims immunity under NY Civil Rights Law § 74, as if she had produced a "fair and true report" of a judicial proceeding. Her defamatory, hateful and intrusive publications, meant to, and which did in fact, bring malevolent enjoyment and internet fame to herself while defaming, degrading and humiliating the plaintiff, included a defamation which was not part of a judicial proceeding, nor were they "fair" or "true" in any ordinary or legal meaning of those words.

This immunity does not apply because the defamatory image Defendant Finkelman republished to hundreds of thousands of viewers *Complaint Exhibit 2 at 20*, which was and remains indexed by search engines, was "added" by her from outside the record of Rapaport v. Iyer et al., as she herself admits *Id.* The republication of the defamatory image created and originally published by Ajay Srinivasan Iyer and Zachary George Garrett, and then conveyed by an "anonymous tipster" to defendant Finkelman after she sought it, is specifically excluded from protection by NY Civil Rights Law § 74. The second and final sentence of NY Civil Rights Law § 74, which defendant Finkelman

simply ignores wholesale, for it obviously obliterates any benefit she may derive from this statute, reads:

> "This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof."

If the defamatory material were in the record, defendant Finkelman would not have had to seek it from other persons on the internet, nor thank them for providing it to her "[shout out] to an anonymous tipster" *Complaint Exhibit 2 at 20*, as she gleefully added it to her 'thread', which garnered much attention. Any suggestion to the contrary is simply absurd and demonstrates the desperation and lack of persuasive arguments available to defendant Finkelman in her attempts to avoid liability for the immense malicious harm that she has inflicted upon an entirely innocent plaintiff.

Defendant Finkelman relies upon cases which are not relevant to this matter, which arises from the shocking and primal power of a digitally manipulated defamatory image that was identically republished in a context meant to magnify its defamatory harm, as opposed to a textual summary in a news article which may be fair and accurate or not. Defendant Finkelman's citations of *Kinsey v. New York Times Co.*, 991 F.3d 171, 179 (2d Cir. 2021), *Bouchard v. Daily Gazette Co.*, 136 A.D.3d 1233, 1234 (N.Y. App. Div. 3d Dep't 2016), *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017) and *Test Masters Educ. Servs.*, 603 F. Supp. 2d are simply irrelevant because they pertain to text that was accused of not being identical or a fairly accurate representation of the text in the record, and that the *difference* caused the defamation or negated the privilege. Here, an image is at question, and this image *is* the defamation itself, and was never in the official record as an image when defendant Finkelman republished it to hundreds of thousands of viewers and the indexing of search engines.

If defendant Finkelman had verbatim copied, or very accurately rewritten the plaintiff's description of the defamatory image, and posted that copy or summary in her 'thread', such a defense could rightly apply, but she did not do so, and instead sought out the image for her malicious reasons. The defamatory image that defendant Finkelman republished, is the same image as was initially

published by the defendants of *Rapaport v. Iyer et al.*, and which was described but not exhibited in that case,. If the textual description and the image were really the same, and the republication did not constitute a harmful and injurious defamation, there would have been no reason, as unlike a textual summary of a written portion of a judicial proceedings, there is nothing gained from abbreviating or summarizing, causing results which are not "identical" as defendant Finkelman spuriously claims.

Nor can the defamatory image that defendant Finkelman republished be explained as mere "background material". There is no issue with defendant Finkelman having immunity to discuss background material relating to Rapaport v. Iyer et al. or any other case and fairly and truly reporting upon such background material, but here, the defamatory image is an entire self-contained defamation unto itself, and republication of it, is a republication of the defamation. Any other interpretation, such as that of defendant Finkelman, would eliminate republication liability for defamation because the content of a defamation could then simply be presented as "background material" of the original publication. There must be reason for why authors such as Joe Patrice and David Latt who covered this matter, and countless newspapers covering countless other cases provide at least a token statement alongside materials with a defamatory payload being litigated that would raise some doubt as to their veracity in order to exculpate themselves, or else they would be doing the same thing.

The irrelevant cases cited by defendant Finkelman as to "background materials" are applicable in other contexts to ensure that "added" materials, which explicitly are *not* protected per the second sentence of NY Civil Rights Law § 74 that defendant Finkelman routinely and deceptively ignores, do not cause the entire report to lose protection when repeating materials that *are* a part of the judicial proceeding. In other words, if the added material is not inherently defamatory, it should not give rise to a defamation claim when presented alongside materials subject to the reporting privilege. Here, the added "background material" is not even "background material", and is falsely painted as such to allow for a republication of the defamation itself, when it was not in the judicial record.

Defendant Finkelman also relies upon a twisting of her own words, and taking them grossly out of context to concoct an exculpatory implication. She claims that because she referred initially to a "fake wanted poster" before ever seeing it or obtaining it for republication herself, that this statement somehow indicates that she truly communicated the defamatory image in a way to negate a communication of defamatory implications of her later republication of the defamatory image absent any indication that it may be digitally manipulated or false in any way. This concoction is meritless for five reasons, first is that the meaning ascribed to what defendant Finkelman wrote is incorrect because a "wanted poster", fake or real, was never at issue, instead a notice to prevent admission was at issue[3], and so a "fake 'wanted' or 'public enemy' poster" could still be a *real* "do not admit" notice styled like a "'wanted' or 'public enemy' poster" physically posted at the premises. The second reason is that it is obvious to any reader that the plaintiff in the original *pro se* complaint brought against Does of *Rapaport v. Iyer et al.*, described the poster as fake, and that referring to it as such cannot be taken as defendant Finkelman's assessment of representation of the exhibit as a fake but rather a mere repetition of the plaintiff's allegations (which defendant Finkelman expresses doubts including through mockery and humiliation of the plaintiff at every turn, and so there is no reason for a reasonable reader to find that she believes him in his allegation of the image being fake). The third reason, is that when defendant Finkelman actually republished the defamatory image, she did not represent it then or at any later time as a fake, but rather she represented its source as a "tipster", which would indicate a source that knows some truth about something[4]. Also, defendant Finkelman engaged with and amplified the commentators on her 'thread' that indicated belief in the false defamations against the plaintiff, such as when she responded with the text emoji "¯\_(ツ)_/¯" to a user who asked her "Does your anonymous tipster know what this jack weasel is alleged to have done" *Complaint Exhibit 2 at 37,* but she never

---

3    The notice was described by the plaintiff as featuring a picture of him to only be similar to a "wanted" poster as would be seen in a Western film or a police station as a matter of style, not that it was an actual "wanted" poster. No reasonable person would think that a law firm would designate someone as "wanted" through a poster in their lobby.

4    The reference of the provider of the image as a "tipster" who elsewhere in the thread was not rejected by defendant Finkelman as a potentially accurate source in response to inquiries by other users, meaning that defendant Finkelman's claim *Finkelman Motion to Dismiss at* 14 is flat out false.

engaged with or amplified others that pointed out that the defamatory image looked like an obvious fake to them. Fourthly, there is a liminal space unaddressed by defendant Finkelman but which is highly relevant to the reputation of the plaintiff, which is the possibility that the defamatory image that she republished featured an unauthorized (and for that reason fake) "do not admit" notice which was actually physically posted, as many viewers may believe it to be, when in truth such a physical page was never posted, with the illusion being created by digital manipulation. Fifthly, as a matter of law, the broader context must be considered, and defendant Finkelman's attempt to cut a single word, "fake" out of all possible context and use it as a talisman to avoid all liability must be rejected. *Gaeta v. New York News, Inc.*, 62 N.Y.2d 340, 477 N.Y.S.2d 82, 465 N.E.2d 802 (1984)

Unlike every other person who significantly commented publicly on this matter, such as Joe Patrice of AbovetheLaw.com or David Latt of Original Jurisdiction, defendant Finkelman did not positively comment upon a single fact or even allegation by the plaintiff that would be exculpatory of him, despite highly detailed coverage and commentary of that case and its docket.

Finally, defendant Finkelman's absurd argument, that because the plaintiff eventually included the defamatory image as an exhibit, that she has a kind of a retroactive immunity that must be rejected as being completely unfounded in any law or precedent. Such a retroactive immunity would also contradict basic logic, because every defamation that is litigated eventually enters the public record through pleadings, exhibits and testimony.

<u>Defendant Finkelman's "Reporting" Was Neither Fair nor True</u>

Even if Defendant Finkelman's thread, including the republication of a defamatory image were accepted as a report on a judicial proceedings (they were not) which included the defamatory image (they did not), it could be neither fair nor accurate, as required by NY Civil Rights Law § 74.

Defendant Finkelman knows that even a cursory look at the entirety of her thread will reveal the extreme unfairness and inaccuracy manifest therein (as well as hate and malevolence), and without any

plausible justification of her conduct, she simply ignores a significant portion of the her posts already in the record in *Complaint Exhibit 2*. Because she cannot make any argument to redeem her actions, she ignores them and hopes that they will not be pointed out.

Throughout her malicious, obsessive and intensely personal commentary, which included engagements and amplifications of other malicious users contrasted by her ignoring of users sympathetic to the plaintiff, defendant Finkelman made numerous errors pertaining to the proceedings she claims to have reported on, and did not provide fair coverage. In fact, defendant Finkelman manifestly demonstrated that she had a reckless disregard for whether or not her coverage was true, and succeeded in being as unfair as possible in her 'reporting'.

For some highlights as to unfairness, defendant Finkelman compared the plaintiff to Sephiroth, *Complaint Exhibit 2 at 21*, who is a recurring villain in the Final Fantasy series of Japanese role-playing video games. Sephiroth is broadly considered to be an exceptionally evil character even compared to other villains across genres, and his appearance is preluded by a specific theme that begins shrill and dissonant in imitation of the soundtrack to the infamous shower-stabbing scene of Hitchcock's *Psycho* (1960). Defendant Finkelman also referred to the plaintiff as a "monster" who was created by "FedSoc ghouls" *Complaint Exhibit 2 at 23*.

As an example of both untruth and unfairness, in her publications defendant Finkelman fabricated a quote which was not extant anywhere in the proceedings she now claims to have provided a true report of. She published this fabricated quote attributed to the plaintiff in *Complaint Exhibit 2 at 6* ""To be clear, I was excited about women's rights being stripped, but I was way more excited about getting to play with guns"". Even if this quote were a headnote and not a quote, it could not be fair. Because the plaintiff specifically wrote in his original pro se complaint in Rapaport v. Iyer et al., that he was "not particularly interested" in the case representing the former issue, and defendant Finkelman wrote in her fabricated quote that he was "excited" about it, it is directly contradictory and thus cannot be fair.

As an additional example of both untruth and unfairness, defendant Finkelman was asked by one of her readers "Does your anonymous tipster know what this jack weasel is alleged to have done", to which her reply consisted entirely of the typographical emoji of a person smiling carelessly hands raised in flippant expression "¯\\_(ツ)_/¯", *Complaint Exhibit 2 at 37*. This typographical emoji represents a smiling and carefree person putting up their hands, palms facing upwards, and indicates an indifferent or pleased attitude towards lack of knowledge. This callous communication by defendant Finkelman evidences a reckless disregard for the truth or falsehood of her publications relating to the matter.

It is obvious for these reasons that defendant Finkelman's 'reporting' cannot be "fair and true" even under Mr. Rodriguez's cited standard which describes a statement as immune if "it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Kinsey v. New York Times Co.*, 991 F.3d 171, 179 (2d Cir. 2021) at 178. By expressing such vile hatred and contempt for a person she never met including describing the plaintiff as a monster created by ghouls, comparing him to an arch-villain of science fiction, presenting fabricated quotes that are contradicted by his actual writing, a drastically different effect is produced than that of a report containing the precise truth on typical readers.

<u>Defendant Finkelman Selectively Claims Context Protects Her When it Actually Implicates Her Culpability</u>

Defendant Finkelman, who relied upon the veil of internet anonymity to malevolently inflict injuries upon the plaintiff, did not even take minimal precautions to protect herself from legal liability as a result of the belief that she would not be identified and held accountable. Considered with the appropriate context in mind[5], as defamation claims must be, her actions become even more legally

---

5   *In re Food Management Group, LLC*, 359 B.R. 543 (Bankr. S.D. N.Y. 2007) (applying New York law); *Aronson v. Wiersma*, 65 N.Y.2d 592, 493 N.Y.S.2d 1006, 483 N.E.2d 1138 (1985); *Kramer v. Skyhorse Pub., Inc.*, 45 Misc. 3d 315, 989 N.Y.S.2d 826 (Sup 2014); *Wilcox v. Newark Valley Cent. School Dist.*, 74 A.D.3d 1558, 904 NYS2D 523, 258 Ed. Law Rep. 366, 31 IER Cases 468, 2010 N.Y. Slip Op. 04916 (N.Y.A.D. 3 Dept. 2010); *Brach v. Congregation Yetev Lev D'Satmar, Inc.*, 265 A.D.2d 360, 696 N.Y.S.2d 496 (2d Dep't 1999); *Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999); *Ward v. Klein*, 10 Misc. 3d 648, 809 N.Y.S.2d 828 (Sup 2005).

indefensible. Defendant Finkelman could not have placed any of her publications (or republications) in a more damning context even if she had tried.

The analysis of her 'thread' as being neither true nor fair with respect to *Rapaport v. Iyer et al.* contained *supra* provides a detailed review of the specific harrowing context of her malevolent cyberbullying of the plaintiff.

The broader context of defendant Finkelman's commentary upon the Rapaport v. Iyer et al. case, can be viewed in light of two articles written by others about this topic. To support her motion to dismiss, defendant Finkelman unwisely appended these two articles, one by Joe Patrice of AbovetheLaw.com and the other by David Latt on his Original Jurisdiction blog hosted on Substack *Finkelman Motion to Dismiss Exhibits 5 and 6* respectively. Even a cursory reading of both of those articles, which are critical of the plaintiff and his *pro se* complaint, and which contain humorous commentary about him, are incomparable to the untrue, unfair, cruel and malevolent publications (or republications) of defendant Finkelman that do not contain even a shred of fairness or decency. For example in *Finkelman Motion to Dismiss Exhibit 5* Patrice explains the plaintiff's allegations, something that defendant Finkelman did not even attempt to do in providing a slight amount of balance:

> "According to the complaint, the defendants concocted a false sexual harassment allegation against this guy that ultimately required the Federalist Society's James Kent Summer Academy — the organization's camp to groom the next generation of goons — to call HR to figure out if the accusations were true. They apparently weren't. A false claim of criminal activity blasted to a wide audience resulting in at least one demonstrated instance of a third party wondering if the claim was true is a perfectly colorable defamation claim.

In *Finkelman Motion to Dismiss Exhibit 6* Latt wrote to explain the plaintiff's allegations and suffering to provide context as well:

> "Rapaport v. Doe, a defamation lawsuit brought by Gideon Rapaport [sic], an NYU Law graduate and former Kirkland & Ellis summer associate, against anonymous posters on Reddit and Top Law Schools. Rapoport's [sic] complaint alleges that the defendants falsely accused him of being a sexual harasser, which my former colleague Joe Patrice described at Above the Law as "a perfectly colorable defamation claim."

Instead of attempting to address and defend the implications of context upon her legal position fully and in good faith, defendant Finkelman selectively addresses issues of context where she believes context may protect her, but entirely ignores or incorrectly excludes context in analysis of the many matters in which it demonstrates her culpability. Defendant Finkelman placed the defamatory image in the context of the other defamations fabricated and originally published by Iyer and Garrett, but did not state, emphasize or cover a single detail or fact that would tend to demonstrate the falsity of the defamations against the plaintiff, as others writing such as Patrice and Latt did.

Defendant Finkelman ludicrously asserts in her motion to dismiss that her statements taken "individually or together with her other statements" be read as expressing any factual message, when the defamation alleged is a the defamatory image shown in *Complaint Exhibit 2 at 20*. Defendant Finkelman's cites *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (noting courts must "give the disputed language a fair reading in the context of the publication as a whole" (emphasis in original) (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 380 (1995))), a case that provides all of the law required to judge her malicious attacks for what they are, especially as they purported to be supported by photographic evidence obtained from "an anonymous tipster".

The context of the actions of the original defendants of *Rapaport v. Iyer et al.*, the two authors who reported upon the case, and many different people who engaged with the issue including with defendant Finkelman, demonstrate that defendant Finkelman and her publications (and republications) are extreme outliers in contrast to the correct and non-tortious course of human conduct that require the intervention of the law.

Furthermore, the public record[6] demonstrates that defendant Finkelman has rendered her entire X account hidden, concealing hundreds of thousands of prior posts made by her over several years after being identified. If defendant Finkelman is so immune, free of actual malice, otherwise correct in her

---

6    https://x.com/clapifyoulikeme

conduct, and justified in seeking sanctions against the plaintiff or even bringing this case, there would be no reason for her to do this.

## Defendant Finkelman Republished A Defamation Capable of Factual and Judicial Determination Rather Than an Opinion

The defamatory image in question republished by defendant Finkelman, is a digitally manipulated photograph of the security desk Kirkland & Ellis LLP's New York office, located at 601 Lexington Ave. This defamatory image was digitally altered to erase the contents of a page physically present at that desk, and replace them with the image of the plaintiff's face, and the text:

DO NOT ADMIT
GIDEON RAPAPORT
KIRKLAND & ELLIS

This defamatory image carries with it the false factual assertions that such a notice was physically posted on the premises of Kirkland & Ellis LLP, and that the plaintiff was barred from admission from those premises for a reason sufficient to warrant such a notice at the security desk. Such a factual question can be readily determined by a court, because such a notice was never issued or posted[7], the plaintiff was never barred from those premises, and the surrounding defamations initially fabricated by Ajay Srinivasan Iyer and Zachary George Garrett that the plaintiff was fired for sexual harassment, are all false and alleged to be false in Rapaport v. Iyer et al. The other defamations also come in to consideration because context of all the relevant material must be considered, as is thoroughly established in New York law[8].

---

7   As has already been stated to the plaintiff and third parties who investigated this matter by Steven Goldblatt, the Human Resources Director of Kirkland & Ellis LLP

8   *Silsdorf v. Levine*, 59 N.Y.2d 8, 462 N.Y.S.2d 822, 449 N.E.2d 716 (1983); *Brach v. Congregation Yetev Lev D'Satmar, Inc.*, 265 A.D.2d 360, 696 N.Y.S.2d 496 (2d Dep't 1999); *Mahoney v. Adirondack Pub. Co.*, 123 A.D.2d 10, 509 N.Y.S.2d 193, 36 Ed. Law Rep. 409 (3d Dep't 1986), order rev'd on other grounds, 71 N.Y.2d 31, 523 N.Y.S.2d 480, 517 N.E.2d 1365, 44 Ed. Law Rep. 557 (1987).

**The Plaintiff is a Private Person Who Cannot Be Converted Into a Public Figure By a Defamation Against Him**

It is thoroughly established that a defamation cannot convert a private figure into a public figure *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). Although defendant Finkelman cites *Gertz*, she specifically contradicts its reasoning for protecting Gertz as a private person, which is that he had limited capacity to defend himself, as does the plaintiff, who has no media or social media platform. Obviously this should not get interfere with fair and true reports of judicial proceedings (which defendant Finkelman's writings are not, and her defamation consists of "added" materials for reasons demonstrated *supra*) or discussions of opinion (which the defamatory "do not admit" digitally manipulated image does not convey opinion but rather factual allegations capable of being disproved.

**Defendant Finkelman's Actual Malice Is Evident In All of Her Myriad Actions**

<u>Defendant Finkelman Maximized the Spread Her Republished Defamatory Materials and Promoted Them on Multiple Sites</u>

Defendant Finkelman's actions, of reposting the defamatory image on Fishbowlapp.com[9] and providing a link on a popular Reddit thread discussing Rapaport v. Iyer et al., both part of the public record *Opposition Exhibit A*, further demonstrate her actual malice.

Furthermore, her actions discussed *supra* demonstrate actual malice with regard to the plaintiff, at least through reckless disregard for the truth about whether the plaintiff was innocent of the terrible things he was defamatorily accused of. She could not have expressed this reckless disregard in any more clear a manner, when she was asked by one of her readers "Does your anonymous tipster know what this jack weasel is alleged to have done", to which her reply consisted entirely of the typographical emoji of a person smiling carelessly hands raised in flippant expression "¯\\_(ツ)_/¯", *Complaint Exhibit 2 at 37*. This typographical emoji represents a smiling and carefree person putting

---

9    https://www.fishbowlapp.com/post/a-former-summer-is-suing-ke (Associate 9 with the "eye" emoji that is typical of her as evident in her 'thread'  and public record Reddit posts)

up their hands, palms facing upwards, and indicates an indifferent or pleased attitude towards lack of knowledge. This callous communication by defendant Finkelman evidences a reckless disregard for the truth or falsehood of her publications relating to the matter, and should be taken as dispositive, whether understood together or apart from the many malicious actions described throughout the Complaint, the Exhibits or her Opposition.

**New Jersey Law Applies to Defendant Finkelman's False Light and Invasion of Privacy**

Defendant Finkelman offers single case about defamation rather than false light invasion of privacy, which deliberated between New York and District of Columbia law, to argue that false light invasion of privacy claims under New Jersey cannot be brought by the plaintiff, who suffered the tort at the hands of defendant Finkelman in New Jersey. Defendant Finkelman ignores the clearest case endorsing the correctness of applying New Jersey law to false light claims in this District, which is itself favorably cited in that context by the sole case he offers in support of his own choice of law argument Kinsey v. New York Times Co. at footnote 21, referencing *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014).

In *Catalanello v. Kramer*, 18 F. Supp. 3d 504 (S.D.N.Y. 2014) the court found that the domicile of the Plaintiff in New Jersey, and the harm being suffered there was dispositive, regardless of none of the tortious actions took place there, other than the appearance of the tortious material.

The *Catalanello* court evaluated many precedents and found that "Discouraging defamation is a conduct regulating rule," and thus "the situs of the tort[] should control." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir.1999), 166 F.3d at 545; see *Machleder v. Diaz*, 801 F.2d 46, 51–52 (2d Cir.1986) (affirming application of New Jersey law to defamation and false-light invasion of privacy claims on the ground that New Jersey "has the most significant relationship with the occurrence and with the parties"). "'[T]he locus of the tort is where the plaintiff suffered injury.'"[10] Thus, in a defamation

---

[10] *Adelson v. Harris*, 973 F.Supp.2d 467, 476 (S.D.N.Y.2013) (quoting *Condit v. Dunne*, 317 F.Supp.2d 344, 353

action, "'often the Court can resolve the choice of law analysis... simply by observing the state of plaintiff's domicile and presuming that the publication injured him in that state.'"[11]

Defendant Finkelman fails to appreciate the meaningful difference between defamation and false light invasion of privacy, and forecloses any deeming of them to be duplicative in this matter. Because the latter protects an individual in their local community not only from distortions that may be technically false as a defamation is, but also the unwanted attention that such a "public matter" may bring upon them. Because the claim addresses a different harm both as a matter of type and geography, it cannot be duplicative under these facts.

Dépeçage is a relevant doctrine in the consideration of different claims each under their relevant sources of law as a horizontal matter such as with multiple state laws or national laws, as is practiced vertically by including both state and federal causes of action in a single case. While the rest of the causes should be tried under New York law, due to the inherent elements of the tort of defamation, false light invasion of privacy should be tried under the laws of New Jersey because it only protects the Plaintiff in his local community, which is New Jersey, and is only provided by the laws of New Jersey.

Even if a similar protection was offered by New York, the Plaintiff could not avail himself of it there. His local community was not in New York, and so New Jersey's false light and invasion of privacy tort protects a purely local interest from which out of state harm was directed to.

New York embraces dépeçage as a choice-of-law doctrine[12]. The doctrine of dépeçage recognizes that in a single action different states may have different degrees of interest with respect to different operative facts and elements of a claim *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 75 (E.D. N.Y. 2000). The rules of one system are applied to regulate certain issues arising from a

---

11 *Id.* (quoting *Condit*, 317 F.Supp.2d at 353); see also Lee, 166 F.3d at 545 (in a defamation case, "'the state of the plaintiff's domicile will usually have the most significant relationship to the case,' and its law will therefore govern") (quoting *Reeves v. Am. Broad. Co.*, 719 F.2d 602, 605 (2d Cir.1983)) (All other bracketed comments are original to the court).

12 *Federal Housing Finance Agency v. Ally Financial Inc.*, Fed. Sec. L. Rep. (CCH) P 97235, 2012 WL 6616061 (S.D.N.Y. 2012). Dépeçage is a term that one court noted means "dismemberment" in French *Schwartz v. Twin City Fire Ins. Co.*, 492 F. Supp. 2d 308 (S.D. N.Y. 2007), judgment aff'd, 539 F.3d 135 (2d Cir. 2008)

transaction while the law of another system is applied to a different issue[13]. Under this choice-of-law technique, a court may separate a part of the case into different portions and apply one body of law to one portion while applying a different body of law to other portions.

Because false light invasion of privacy governs the inherently local, and community impacts of the undue amounts of attention that false portrayal brings upon a private person, New Jersey is the best and only source of law and geographic area for damages arising from false light invasion of privacy. The plaintiff does not claim that all of the causes of action brought should be tried under the laws of New Jersey, as would be most favorable to him, but merely the only one that must and should be according to every relevant standard.

As to the merits of the false light invasion of privacy claim, defendant Finkelman's claims of truth relating to her malicious coverage and republication of the defamatory image are absurd, and left to the finder of fact, and her reckless disregard for the truth at a minimum is manifest in her enthusiastic publication and republications of defamations against the plaintiff, her hateful rhetoric and her promotion of her vile and unwarranted attacks.

### Conclusion

Accordingly, defendant Finkelman's motion to dismiss for failure to state a claim should be denied.

---

[13]*2002 Lawrence R. Buchalter Alaska 2002 Lawrence R. Buchalter Alaska Trust v. Philadelphia Financial Life Assur. Co.*, 96 F. Supp. 2d 182 (S.D.N.Y. 2015); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198

/s/ Gideon Rapaport *pro se*
GideonRapaportLaw@outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07307

# Opposition to Defendant Finkelman's Motion to Dismiss

# Exhibit A

Skip to main content

r/LawSchool ✕   Search in r/LawSchool

Log In   ⋯

---

**r/LawSchool** · 1 yr. ago
nate077                                                                 ⋯

## Summer at K&E sues pro-se

drive.google.com                                              Open

⬆ 223 ⬇   💬 132   🏆   ↗ Share

Single comment thread ────────────────────   See full discussion

**clapifyoulikeme** · 1y ago ·

You're welcome.

⬆ 23 ⬇   💬 Reply   ⋯

---

r/LawSchool

You'll be fine.

142 upvotes · 12 comments

---

r/Whatcouldgowrong

WCGW if I try to challeng a deer in a boxing match?



1.3K upvotes · 74 comments

---

r/LawSchool

Anyone else surprised how much they like this?!

104 upvotes · 44 comments

---

r/LawSchool

What are some of the coolest freebies you've gotten from recruiting events?

74 upvotes · 55 comments

---

r/LawSchool

I hate Cardozo

133 upvotes · 38 comments

Skip to main content



Log In

40 upvotes · 58 comments

 r/LawSchool

**Fall 2024 - Anonymously share your law firm start dates, stipend, moving expenses (or lack thereof)**

168 upvotes · 3 comments

 r/LawSchool

**Just got 1L grades -URM 2.6 GPA, worth applying to big law summer jobs?**

23 upvotes · 20 comments

 r/LawSchool

**Firms with hard GPA cutoffs**

13 upvotes · 6 comments

 r/LawSchool

**I'm dropping out**

467 upvotes · 40 comments

 r/VoyagerExchange

**Kirkland is responsible for the data breach!**



6 upvotes · 20 comments

 r/LawSchool

**Questions on Top US Law firms**

7 upvotes · 27 comments

 r/VoyagerExchange

**BE AWARE OF THIS SCAM. KIRKLAND LAW FIRM IS RESPONSIBLE FOR THIS DATA BREACH**



41 upvotes · 53 comments

 r/uklaw

**Kirkland & Ellis Video Interview**

8 upvotes · 7 comments



Skip to main content



Log In

368 upvotes · 79 comments

 r/biotech

Barely Contained Rage: An Open Letter to Johnson & Johnson



50 upvotes · 23 comments

 r/Enough_Sanders_Spam

TYT's Chunk Uygur calls trans ex-employee unhinged



21 upvotes · 8 comments

 r/boston

NZ Grifter on the Lam in Boston Legal Circles; just FYI



31 upvotes · 8 comments

 r/LawSchool

Law firm graphs today, starting with Kirkland & Ellis

9 upvotes · 32 comments

 r/LawSchool

What did "that" summer do to not get an offer back?

87 upvotes · 50 comments

 r/LawSchool

Hey 1Ls, you can do this shit!

154 upvotes · 26 comments

 r/LawSchool

Help Me Choose Where In Big Law

5 comments

 r/LawSchool

Which Firms Provide Free Food to Associates?

  

 Log In

Do associates working for Kirkland & Ellis work longer hours than other firms? Or does it matter based on region/firm? I heard that K&E is brutal when it comes to work-life balance.

6 upvotes  ·  21 comments

 r/LawSchool

Law School Canncelled Quimbee.

153 upvotes  ·  69 comments

TOP POSTS

 Reddit

reReddit: Top posts of August 7, 2023

 Reddit

reReddit: Top posts of August 2023

 Reddit

reReddit: Top posts of 2023