The Honorable Jessica G. L. Clarke
United States District Court Judge
Southern District of New York
500 Pearl Street
New York NY, 10007

Re:     Rapaport v. Finkelman, 24-cv-05942

**Letter in Opposition to Defendant Finkelman's Motion to Stay Discovery**

Your Honor:

I am respectfully writing to oppose defendant Finkelman's motion to stay discovery. It is my position that discovery at this stage is necessary for and beneficial towards the "just, speedy and inexpensive" determination of this action *FRCP* Rule 1.

Defendant Finkelman has intentionally created an exceptional need for discovery at this stage due to her control over the internet public record from which she draws heavily and often irrelevantly to hinder contextual analysis of her malicious and tortious conduct. She has selectively entered into the record for judicial notice parts of the internet public record while limiting access to, or apparently destroying, other parts of the internet public record, notably by blocking her entire X account from public view and then apparently deleting some of her posts. This blocking of access occurred on or about August 13, 2024, a few days after her waiver of service form was mailed to her, and evidence appears to have been destroyed some time after that. In light of this, discovery is required both to preserve evidence and consider materials entered from the internet public record in proper context.

Apparently, defendant Finkelman destroyed evidence she had first blocked from public view as indicated by differing error messages provided by the website X. When an attempt is made to access a bookmarked URL address of a post she made relevant to this action, the error message "Hmm...this page doesn't exist. Try searching for something else." is provided by the website. On the other hand, when an attempt is made to access a URL address of a post she made unrelated to this action, the error message "Something went wrong. Try reloading." is provided by the website. The former error message affirmatively denies the existence of the relevant post, indicating destruction, while the latter error message for irrelevant posts does not, as in the maxim *expressio unius est exclusio alterius*. See *Exhibit 1* showing an attempt to access the post that republished the defamatory material and compare *Exhibit 2* showing an attempt to access an unrelated post.

Beyond the needs for discovery created by defendant Finkelman, such discovery would also assist in the speedy resolution of this action due to the meritlessness of defendant Finkelman's motion to dismiss. Defendant Finkelman has not met her burden of showing "good cause" for a stay because she cannot "present substantial arguments for dismissal" *Morgan Art Found. Ltd.* v. *McKenzie*, 2020 WL 6135113, *2 (S.D.N.Y. 2020) (Moses, M.J.) (quoting *Hong Leong Finance Ltd. (Singapore)* v. *Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72, 82 Fed. R. Serv. 3d 1099 (S.D.N.Y. 2013)).

Defendant Finkelman first presents *NY Civil Rights Law* § 74 as a defense to her republication of defamatory material. This defense is clearly inapplicable at the threshold, because the second sentence of that section, which she did not address whatsoever in her original motion, states:

"This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof."

The sole basis for defamation in this action has always been defendant Finkelman's republication of the defamatory image originally forged by defendant Iyer[1] *Complaint* ¶ 8. This first defamatory image was not available on any publicly accessible source on the internet when defendant Finkelman republished it, after obtaining it by her own admission from an "anonymous tipster" *Complaint Exhibit 2* at 20, and was not in the record of any judicial proceeding. "[I]t is for the Court, in the first instance, to decide whether a publication is protected under section 74 as a fair report of [court] documents." *Procter & Gamble Co. v. Quality King Distributors, Inc.*, 974 F.Supp. 190 (E.D.N.Y. 1997) citing *Karp v. Hill & Knowlton, Inc.,* 631 F.Supp. 360, 363 (S.D.N.Y. 1986). Defendant Finkelman wrought immense harm by causing this defamatory image, which was not a court document (and would not become one until almost 300 days after her republication), to go viral, being viewed at least 300,000 times through that republication alone and indexed by major search engines in relation to my name.

Even if this threshold issue is to be set aside, defendant Finkelman is also not entitled to such immunity due to her series of posts' failure to meet the "fair and true report" requirement of §74. "[A] report cannot be said to be substantially accurate, however, if it would have a different effect on the mind of the recipient than the actual truth." *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107 (2d Cir. 2005). A reasonable reader relying upon defendant Finkelman's series of posts *Complaint Exhibit* 2 would not be informed of hardly any of the relevant details of the judicial proceeding she now claims to have been reporting on, and would instead be exposed to direct contradictions of the judicial record *Complaint Exhibit* 2 at 6, ruling out her series of posts from capable of being "substantially accurate". The only meaning conveyed by the series of posts is that I am someone to whom unlimited cruelty and humiliation are justified in the eyes of defendant Finkelman and her followers. In *Karedes*, the Second Circuit also stated that the writing must be considered "as a whole" and "perused as the average reader would against the whole apparent scope and intent of the writing". Throughout her series of posts Defendant Finkelman celebrated my suffering, and sought to maximize it without any regard for the truth. This is the scope and intent of the writing, and it was never meant to inform as a "report" would, and clearly establishes actual malice, which relates to defendant Finkelman's second claimed defense.

Defendant Finkelman claims that actual malice is not shown, yet as part of her supposedly "fair and true report", defendant Finkelman also declared that I am a monster, created by ghouls, and compared me to the irredeemably evil villain "Sephiroth" from the *Final Fantasy* series of Japanese video games *Complaint Exhibit* 2 at 21 and 23. Defendant Finkelman also repeatedly brought the thread which included the defamatory image to the top of her feed, and further advertised this series of posts including the defamatory material on multiple internet websites including Reddit.com and Fishbowlapp.com. Defendant Finkelman either knew that the defamation was false as I had presented in my complaint and chose to republish anyway, or she simply did not care at all because there is not a single indication of any investigation on her part or any interest in the truth of the matter. Defendant Finkelman asked her followers for the defamatory image so that she could republish it, but she never asked for the truth. When a follower asked her for whether the "anonymous tipster" had given her information about the underlying defamations, she responded with the smirking and carefree text emoji

---

1  Of *Rapaport v. Iyer et al. 23-cv-06709.* This first forgery was taken down by him after approximately one day, after being being identified as a forgery by the Student Division of the Federalist Society, due to his intention of preventing comparison with his second, technically improved, forgery directly circulated to the Federalist Society among others without being widely published on the internet.

"¯\\_(ツ)_/¯", indicating that she did not know or care to know *Complaint Exhibit* 2 at 37. It is difficult to imagine a clearer demonstration actual malice through "spite or a knowing or reckless disregard of a statement's falsity" *Belsito Commc'ns, Inc. v. Dell, Inc.*, No. 2013 WL 4860585 (S.D.N.Y.) citing *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 866 N.E.2d 439 (2007).

     As to defendant Finkelman's third defense, she bizarrely claims that her republication of the defamatory image is somehow an expression of opinion. This should simply be rejected as frivolous on its face. The digitally manipulated image republished by defendant Finkelman, purporting to show a security desk of an employer containing a "Do Not Admit" poster, cannot be an opinion because it is capable of being proven real or fake.

     With regard to defendant Finkelman's fourth defense, of choice of law as to the false light invasion of privacy count, she has consistently fallen short by merely repeating a few conclusory arguments and ignoring precedent. In New York, plaintiffs are permitted to assert such claims under the laws of the state of New Jersey, when they are injured there while under the protections of the laws of that state. In *Catalanello v. Kramer,* 18 F. Supp. 3d 504 (S.D.N.Y. 2014) New Jersey law was found to apply to the conduct of the New York defendant for the purposes of a false light invasion of privacy claim. *Catalanello* was favorably cited for its choice of law analysis by the Second Circuit in *Kinsey v. New York Times* 991 F.3d 171, 177 (2d Cir. 2021). Defendant Finkelman has herself cited the *Kinsey* case, even as she accuses the plaintiff of frivolously bringing that claim under New Jersey law while ignoring its clear endorsement of *Catalanello* in footnote 21.

     Defendant Finkelman and her counsel also maintain a stunning ignorance as to the power and practice of Courts to try different claims according to different laws in the same action per the doctrine of dépeçage, and instead pretend that this action must be entirely judged either according to the laws of New Jersey or of New York. "[T]here is no reason why all issues arising out of a tort claim must be resolved by the same jurisdiction" *Babcock v. Jackson*, 12 N.Y.2d 473, 191 N.E.2d 279 (1963).

     Looking now at the other "good cause" factors, it is clear that I suffer prejudice due to delayed discovery because defendant Finkelman appears to have already destroyed evidence, and the passage of time will only make recovery of that information or discovery by alternate means more difficult. The last remaining factor, which is the burden of discovery placed upon defendant Finkelman, can be expected to be minimal, thus also weighing against a stay of discovery.

     Until now I was never provided with the opportunity to express what discovery I intend to seek from defendant Finkelman because her counsel refused to confer with me as to specific details and formulate a discovery plan. The discovery I seek from defendant Finkelman is extremely narrow, and should be only a miniscule burden upon her. I seek a deposition of her testimony, which I expect will be possible in a single day, the standard requests for admissions and interrogatories, and electronically stored information or other materials relating to her X and other online accounts she used to receive and distribute the defamatory materials. Defendant Finkelman should be able to complete her deposition and production in a total of two days.

     Considering the absence of any meritorious defenses, the existence of prejudice toward me resulting from defendant Finkelman's apparent destruction of evidence and selective skewing of internet public record submissions, and there being only a miniscule burden on her from prospective discovery, defendant Finkelman's motion to stay discovery should be denied.

Thank you for considering my request in this matter.

    Respectfully submitted,

        /s/ Gideon Rapaport *pro se*
        GideonRapaportLaw@outlook.com
        (862) 213-0895
        #627 1078 Summit Avenue
        Jersey City, New Jersey, 07307