The Honorable Jessica G. L. Clarke
United States District Court Judge
Southern District of New York
500 Pearl Street
New York NY, 10007

**Re:**     Rapaport v. Finkelman, 24-cv-05942

<u>Letter in Reply to Defendant Finkelman's New Authority</u>

Your Honor:

  I am respectfully writing in support of the proposition by defendant Finkelman that the opinion in *1AP v. New York Times* recently issued by another court in the SDNY may be beneficial to this Court in analyzing the legal applicability of NY CRL § 74 to these facts. I also respectfully write to suggest to the Court that rather than supporting defendant Finkelman's assertions of § 74 immunity, the law found by the *1AP* court would deny her assertion of immunity at every step and according to every factor of analysis, as would the 'other material added' constraint upon § 74 that was referenced in passing but not deeply analyzed in *1AP*.

  The *1AP* court began its analysis of § 74 with a first step of determining whether or not there was there was even a "report" at issue in that case that could benefit from the protections afforded to fair and true reports about official proceedings *1AP* Decision at 36. Under those facts, the formal, direct, and extensive coverage by the New York Times of the January 6 Committee easily qualified for status as a report about an official proceeding.

  According to the facts of this case, it is clear that defendant Finkelman's scattering of posts *Complaint Exhibit* 2 consisting almost entirely of personal attacks, fantasy and extraneous comments would not qualify, because they could not be seen by an ordinary person to be a report meant to inform them about a judicial proceeding *1AP* citing *Cholowsky v. Civiletti*, 887 N.Y.S.2d 592,69 A.D.3d 110 citing *Wenz v. Becker*, 948 F Supp 319. Defendant Finkelman's posts are not only devoid of the structure and form of a report, but also of the required content even when taken together. An ordinary person without background knowledge of this matter would not learn hardly anything about the judicial proceeding tangentially referenced, and instead would be exposed to almost nothing but defendant Finkelman's personal vitriol and scorn. Even basic information such as the underlying legal theories or factual allegations is missing, and when a fact occasionaly slips into her posts, it is solely as a springboard through which to degrade and injure the plaintiff free of any relevant context. "[T]he way [it] is stylized . . . belies the notion that [Finkelman] was even attempting to provide a fair and true report of a judicial proceeding." *Corp. Training Unlimited, Inc. v. Nat'l Broad. Co.*, 868 F. Supp. 501, 508-09 (E.D.N.Y. 1994).

  In *Carroll v. Trump (Carroll II)*, No. 22-CV-10016, 2023 WL 2669790, at *1–9 (S.D.N.Y. Mar. 28, 2023) the court applied *Wenz* and denied the defamation defendant § 74 "report" immunity for his personal attacks and repetitions of defamation even though those personal attacks and repetitions of defamation related to a judicial proceeding. The court found that both the content and context prevented those personal attacks and repitions of defamation from being a "report" at all, regardless of whether they were fair and true *Carroll* II at 22, and were rather the defendant's "amalgamation of ... personal views and comments on a wide variety of subjects [list including but not limited to the contents of the judicial proceeding]..." Much like the defendant of *Carroll II*, defendant Finkelman also personally attacked the plaintiff's counsel as part of her unprivileged amalgamation *Complaint Exhibit* 2 at 25.

Rather than report facts about the contents of the *Doe* action in her posts, defendant Finkelman referred to the plaintiff as a monster created by ghouls *Complaint Exhibit* 2 at 23 who communicates like a fictional villain from a Japanese computer roleplaying game series *Id.* at 21. She also expressed fantasies about "the menswear guy" testifying at a future trial *Id.* at 5. None of this relates to the contents of the judicial proceeding, and when she was asked about the actual facts of the matter by a follower she responded solely with the emoji "¯\\_(ツ)_/¯" *Id.* at 37, indicating that she had not engaged in the activity of creating a report of a judicial proceeding, and that an ordinary person should not expect that from her. Furthermore, narrative fictionalization of the contents of a judicial proceeding blocks § 74 immunity, as was determined in *Corp. Training v. National Broadcasting Co.*, 868 F. Supp. 501 (E.D.N.Y. 1994), where details of a real judicial proceeding were blended with narrative storytelling. The Court may contrast the posts of defendant Finkelman with the reports prepared by Joe Patrice of Above The Law *ECF No.* 18-5, and David Latt on his Original Jurisdiction blog *ECF No.* 18-6, both of which were critical of the plaintiff, but have the structure, form and most importantly contents to create the necessary expectation for an ordinary person of becoming informed about a judicial proceeding through a report.

Next, the *1AP* court analyzed whether the reports by the New York Times were fair and true. The *1AP* court found that the New York Times reports were fair and true with respect to the official proceedings of the January 6 Committee, which comprised both legislative investigations and hearings. As to being 'fair', the *1AP* court merely noted that the publication report the plaintiff's side of the controversy *Cholowsky*, 69 A.D.3d 110, 887 N.Y.S.2d at 596. As to being 'true' per the *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) test of being "substantially accurate", the *1AP* court noted that 1AP did not challenge the reporting itself but rather the underlying allegations that were part of the official proceeding *1AP* Decision at 38.

Here, defendant Finkelman has directly contradicted the facts of the judicial proceeding for the familiar purposes of humiliating and degrading the plaintiff at every opportunity. Defendant Finkelman claimed that the plaintiff had pleaded that he "was excited about women's rights being stripped, but [] was way more excited about getting to play with guns" *Complaint Exhibit* 2 at 6, when in fact he had pleaded the precise opposite, namely that the defamatory posts about him made by the Does were (also) untrue because he "was not particularly interested" in the *Dobbs* decision or issue *Rapaport v. Iyer et al.* Docket No. 1 ¶ 19. "When, as herein, defendants misquote or selectively quote from a hearing or report, there is no immunity." *Rubel v. Daily News, LP*, No. 100023-2010, 2010 WL 3536793 (N.Y. Sup. Ct. Aug. 26, 2010). Besides direct contradiction, defendant Finkelman's posts also cannot meet the *Karedes* test applied by the *1AP* court because the sum total of her posts would produce a drastically different effect on a reader than would a reading of the record of the judicial proceeding "When a report of a pleading is the subject of a request for immunity under section 74, a comparison of the pleading and the subsequent report of that pleading is the starting point for the analysis." *Karp v. Hill &Knowlton, Inc.*, 631 F. Supp. 360, 363 (S.D.N.Y. 1986). These drastically different effects upon the reader would arise from the omission of almost all relevant facts, direct contradiciton of the record and the inclusion of personal attacks and other extraneous materials discussed *supra*. "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth" *Karedes*. Furthermore, this is also a question for a jury to decide "[A] reasonable jury could find that such statement had a different effect on the reader than the documents filed as part of the litigation". *Pisani v. Staten Island Univ. Hosp.*, 440 F. Supp. 2d 168, 177–78 (E.D.N.Y. 2006).

The *1AP* court was not directly faced with the 'other added material' exception of § 74, because 1AP did not allege that any part of any report by the New York Times was not a part of the January 6 Committee's extensive investigation or hearings *1AP* Decision at 38, though the 1AP court did reference it in passing. This exception stems from the second and final sentence of the statute and reads: "This section does not apply to a libel contained in any other matter added by any

person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof." Because the defamatory image was not in the record of the Doe action or any other proceeding, it is a "libel contained in any other matter added by any person concerned in the publication" and defendant Finkelman cannot have § 74 immunity in republishing that defamation, even if her posts were a report that was true and fair.

Early in the *IAP* opinion's analysis of § 74, the court also discussed that § 74 immunity may apply when "secondary sources" are used in preparing a report *Cholowsky*, 69 A.D.3d 110, 887 N.Y.S.2d at 596 (where the secondary sources were a prior fair and true report of a judicial proceeding), and where "background materials" per *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 173 (S.D.N.Y. 2021) are added *IAP* Decision 36. Defendant Finkelman incorrectly represents that these holdings eliminate the 'other added material' exception arising from the second sentence of § 74. Rather, the "secondary sources" and "background materials" holdings prevent plaintiffs, as some have previously tried, from removing libel immunity from the entirety of a report including the portion based on an official proceeding merely because it disclosed consultation with a secondary source *Cholowsky*, 69 A.D.3d 110, 887 N.Y.S.2d at 596 or included non-libelous background material *Ford v. Levinson*, 90 A.D.2d 464, 454 N.Y.S.2d 846 (1982).

In every instance where a true and fair report of an official proceeding also referenced secondary sources or contained background materials, the court conducted an independent inquiry of whether such additions, which are covered by the 'other added material' provision of § 74, were capable of being a "separate and independently defamatory accusation" *Ford v. Levinson*, as defendant Finkelman's republication of the defamatory image clearly is. Thus, while it is true that § 74 immunity for material presented that was part of an official proceeding is not subject to a purity test requiring only consideration of the official proceedings as the sole source to be relied upon, or that all non-libelous background information must be excluded, "libel contained in any other matter added" is nevertheless not immune per § 74.

Thank you for considering my position in this matter.

Respectfully submitted,

/s/ Gideon Rapaport *pro se*
GideonRapaportLaw@outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07307