EXHIBIT F

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  05/08/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JASON GOODMAN,                              :

                                         :       **ORDER AND
REPORT AND
RECOMMENDATION**

                 Plaintiff,           :

                                         :       21-CV-10878 (AT) (JLC)

    -v.-                                    :

CHRISTOPHER ELLIS BOUZY, *et al.*,          :

                                         :

                 Defendants.          :

-------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Analisa Torres, United States District Judge:**

       Jason Goodman ("Goodman"), proceeding *pro se*, brought this action against Christopher Ellis Bouzy ("Bouzy"), Bot Sentinel, Inc. ("Bot Sentinel"), George Webb Sweigert ("Webb"), David George Sweigert ("Sweigert"), Benjamin Wittes ("Wittes"), Nina Jankowicz ("Jankowicz"), Adam Sharp ("Sharp"), Margaret Esquenet ("Esquenet"), the Academy of Television Arts and Sciences ("ATAS"), Seth Berlin ("Berlin"), and Maxwell Mishkin ("Mishkin") alleging multiple claims. Pending before the Court are a number of motions, including motions to dismiss brought by Bouzy, Bot Sentinel, Berlin, Mishkin, Sweigert, Wittes, and Jankowicz (together, "movants"). For the reasons set forth below, I recommend that all motions to dismiss be granted, Goodman's motion for leave to further amend his complaint be denied, Goodman's motion for a preliminary injunction against Sweigert be denied, Goodman's motion for sanctions as to Bouzy, Bot Sentinel, and Berlin be denied,

and Wittes's and Jankowicz's motion for sanctions be granted and that a filing injunction be issued against Goodman. I further recommend that the entire case be dismissed with prejudice. In addition, Goodman's motion for a court-ordered psychiatric evaluation of Sweigert is denied, Goodman's and Sweigert's motions and requests for judicial notice are denied, Sweigert's motions to transfer are denied, Goodman's motions to quash subpoenas are denied, and Bouzy and Bot Sentinel's motion to set aside default judgment is granted.[1]

---

[1] The Court addresses the pending motions, some of which are dispositive and some of which are not, by a combined order and report and recommendation. The motions to dismiss, motions for leave to amend, motion for preliminary injunction, and motions for sanctions are dispositive and are addressed by report and recommendation. *See, e.g., Singh v. New York State Dep't of Tax'n & Fin.*, 865 F. Supp. 2d 344, 348 (W.D.N.Y. 2011) (motion to dismiss dispositive); *Murrey v. BrandYourself.com, Inc.*, No. 21-CV-320 (AT) (JLC), 2022 WL 4395808, at *1 (S.D.N.Y. Sept. 23, 2022) (denial of motion for leave to amend resulting in dismissal of lawsuit dispositive), *adopted by* 2023 WL 1780806 (Feb. 6, 2023); *Brock v. City of New York*, No. 21-CV-11094 (AT) (SDA), 2022 WL 3445732, at *2 (S.D.N.Y. Aug. 17, 2022) (motion for preliminary injunction dispositive); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 WL 3671036, at *17 (S.D.N.Y. July 18, 2017) (Rule 11 sanctions generally treated as dispositive), *adopted by* 2017 WL 4712639 (Sept. 28, 2017). The motion to set aside default, motion for a court-ordered psychiatric evaluation, motions for judicial notice, motions to transfer, and motions to quash are not dispositive and are addressed by order. *See, e.g., Kryszak v. Norfolk S. Corp.*, No. 17-CV-530 (JLS) (MJR), 2020 WL 1445478, at *1 (W.D.N.Y. Mar. 25, 2020) (motion to vacate entry of default non-dispositive); *Lyons v. McGinnis*, No. 04-CV-6157L (MWP), 2009 WL 185733, at *1 (W.D.N.Y. Jan. 23, 2009) (motion for court-ordered psychiatric evaluation non-dispositive); *Justice v. King*, No. 08-CV-6417 (CJS) (MWP), 2011 WL 1432130, at *3 (W.D.N.Y. Mar. 24, 2011) (motion for judicial notice resolved by decision and order), *adopted by* 2011 WL 1431387 (Apr. 14, 2011); *Paulson v. Guardian Life Ins. Co. of Am.*, 614 F. Supp. 3d 1, 5 (S.D.N.Y. 2022) (motion to transfer non-dispositive); *Peterson v. Katonah Lewisboro Sch. Dist.*, No. 13-CV-51 (VB) 2014 WL 3891253, at *1 (S.D.N.Y. June 27, 2014) (motion to quash subpoena non-dispositive).

# I. BACKGROUND

## A. Factual Background

The Court assumes familiarity with the facts underlying this action, set forth in its prior Report and Recommendation, Dkt. No. 59, and thus provides only a brief review of the facts alleged in Goodman's initial complaint before summarizing the new facts alleged in his amended complaint. Goodman filed his initial complaint alleging defamation against Bouzy, Bot Sentinel, and Webb, in which he claimed that defendants published defamatory tweets and YouTube videos on the Internet falsely stating that he had been accused of rape. Dkt. No. 1 ¶¶ 11–17.

Now, in his 43-page amended complaint that includes 84 pages of exhibits, Goodman alleges that he had a Twitter exchange with Wittes, during which Goodman advanced his theory that Wittes, whom he added as a defendant, murdered a political operative, Peter Smith.[2] Amended Complaint ("Am. Comp."), Dkt. No. 100 at 19.[3] Goodman alleges, *inter alia*, that Wittes retaliated by conspiring with Bouzy and Bot Sentinel to "eliminate" Goodman's access to social media, and that Wittes paid for Bouzy and Bot Sentinel's legal defense in this proceeding. *Id.* at 20. In his amended complaint, he also added Berlin and

---

[2] Given its length, the amended complaint should be dismissed as a threshold matter for failure to comply with Rule 8(a) of the Federal Rules of Civil Procedure, which "places an obligation upon the [plaintiff] to submit 'a short and plain statement of the claim,' not a . . . long conspiracy theory novel." *Gaboury v. Town of Roxbury*, No. 98-CV-1753 (TJM), 1999 WL 244829, at *4 (N.D.N.Y. Apr. 19, 1999) (citation omitted). As is discussed further below, the claims are, in any event, not cognizable.

[3] Certain paragraphs in the amended complaint are not numbered; in these instances, the citation refers to the page number.

3

Mishkin, lawyers for Bouzy and Bot Sentinel, as defendants.

As to Jankowicz, Goodman alleges that she made fraudulent complaints to Patreon and Twitter, social media companies, resulting in Goodman's accounts being suspended. *Id.* at 33–34. Goodman alleges that Jankowicz conspired with Sweigert to get information regarding Goodman's social media accounts. *Id.* at 33.

Lastly, Goodman alleges that Sharp, ATAS, and Esquenet conspired to file a false copyright infringement claim in order to harm his business. *Id.* at 28. Goodman alleges that together, by Sweigert's initiative, all defendants formed a "Cyber Militia" whose goal is to put Goodman out of business. *Id.* at 13–14.

## B.  Procedural History

Goodman commenced this action on December 19, 2021, asserting claims against defendants Bouzy, Bot Sentinel, and Webb. Dkt No. 1. In a Report and Recommendation dated November 10, 2022, I recommended that (1) claims against Webb be dismissed for lack of personal jurisdiction; (2) Goodman be granted leave to amend his complaint to attempt to cure its jurisdictional defects; and (3) Goodman be permitted to move for a default judgment as to Bouzy and Bot Sentinel, who had not yet appeared. Dkt. No. 59. By order dated December 13, 2022, the Report was adopted, and Goodman was granted leave to file an amended complaint. Dkt. No. 82.

On January 17, 2023, Goodman filed an amended complaint in which, in addition to including Webb, Bouzy, and Bot Sentinel as defendants, he named several new defendants: Sweigert, Wittes, Jankowicz, Sharp, Esquenet, the

4

Academy of Television Arts and Sciences, Berlin, and Mishkin.  Dkt. No. 100.

Following the filing of the amended complaint, the parties, although primarily

Goodman and Sweigert, filed numerous motions and related documents.  The

motions and documents pertinent to this Report are detailed below.

### 1.  Default Judgment as to Bouzy and Bot Sentinel

On November 20, 2022, Goodman moved for a default judgment as to Bouzy

and Bot Sentinel.  Dkt. Nos. 60–62.  On November 23, 2022, Bouzy and Bot Sentinel

filed a letter arguing that a default would not be warranted.  Dkt. No. 68.  Goodman

filed a letter opposing the request to set aside the default on January 3, 2023.  Dkt.

No. 91.  Following an order dated December 20, 2022, Dkt. No. 83, on January 3,

2023, Bouzy and Bot Sentinel provided further explanation regarding their late

appearance in this case, Dkt. No. 90, and the next day Goodman filed a second

letter objecting to their submission.  Dkt No. 92.

### 2.  Goodman's Motion for Sanctions as to Bouzy, Bot Sentinel, and Berlin

On December 27, 2022, Goodman moved for sanctions against Bouzy, Bot

Sentinel, and Berlin.  Notice of Motion Seeking Sanctions Pursuant to Rule 11

("Goodman Sanc."), Dkt. No. 86.  Bouzy, Bot Sentinel, and Berlin filed an opposition

on January 6, 2023.  Memorandum of Law in Opposition to Plaintiff's Motion for

Sanctions ("Bouzy Sanc. Opp."), Dkt. No. 94.  Goodman filed a reply in support of

his motion on January 8.  Response to Memorandum in Opposition to Rule 11

Sanctions ("Goodman Sanc. Rep."), Dkt. No. 96.

### 3. Motions to Dismiss by Bouzy, Bot Sentinel, Berlin, Mishkin, and Sweigert

On January 27, 2023, Bouzy, Bot Sentinel, Berlin, and Mishkin moved to dismiss the amended complaint. Motion to Dismiss, Dkt. No. 106, Memorandum of Law in Support of Motion to Dismiss ("Bouzy Mot."), Dkt. No. 107, Declaration of Seth D. Berlin dated January 27, 2023 ("Berlin Decl."), Dkt. No. 108. On January 30, 2023, Sweigert moved to dismiss the amended complaint. Motion to Dismiss ("Sweigert Mot."), Dkt. No. 112. On February 28, Goodman filed an opposition to both motions. Response in Opposition to Motions to Dismiss ("Goodman Opp."), Dkt. No. 140. On March 14, Bouzy, Bot Sentinel, Berlin, and Mishkin filed a reply in support of their motion. Combined Reply/Response Memorandum ("Bouzy Rep."), Dkt. No. 159. On March 1, Sweigert filed a reply in support of his motion, Dkt. No. 143, which he amended on March 3. Amended Reply to Plaintiff's Response in Opposition to Motions to Dismiss ("Sweigert Rep."), Dkt. No. 146.

### 4. Preliminary Injunction Against Sweigert and Court-Ordered Psychiatric Evaluation

On February 3, 2023, Goodman moved for a court-ordered psychiatric evaluation of Sweigert. Dkt. No. 118. Sweigert filed a letter addressing this motion on February 5. Dkt. No. 121.

On January 30, 2023, Goodman moved for a preliminary injunction against Sweigert. Notice of Motion Seeking a Preliminary Injunction or Restraining Order Dkt. No. 111, Affidavit of Jason Goodman dated January 28, 2023, Dkt. No. 113; Memorandum in Support of Application for Preliminary Injunction or Restraining

6

Order ("Goodman PI"), Dkt, No. 114.  On February 4, Sweigert filed a letter in opposition.  Dkt. No. 119.

### 5.  Motions for Leave to Further Amend the Complaint

On February 17, without leave of the Court, Goodman filed a second amended complaint.  Dkt. No. 132.  Following an order dated February 21, Dkt. No. 134, that same day, Goodman moved for leave to file a second amended complaint. Notice of Motion Seeking Leave to File a Second Amended Complaint, Dkt. No. 137. On February 28, Goodman moved again for further leave to file a third amended complaint.  Dkt. No. 142.  On March 5, Sweigert filed an opposition to Goodman's motions to amend.  Dkt. No. 152.  On March 7, Wittes and Jankowicz filed an opposition to Goodman's motion.  Memorandum of Law in Opposition to Plaintiff's Motions for Leave to File a Second and/or Third Amended Complaint, Dkt. No. 155. On March 14, Bouzy and Bot Sentinel filed their opposition.  Dkt. No. 155.

### 6.  Motion to Dismiss by Wittes and Jankowicz

On March 6, 2023, Wittes and Jankowicz moved to dismiss.  Motion to Dismiss Amended Complaint, Dkt. No. 153; Memorandum of Law in Support of Motion to Dismiss ("Wittes Mot."), Dkt. No. 154.  Goodman did not file any opposition to their motion.

### 7.  Sweigert's Motion to Transfer

By letters filed on March 10 and March 22, Sweigert twice moved to transfer this action to the Eastern District of Michigan, in the event all defendants aside from himself and Webb are dismissed from the case.  Dkt. Nos. 158, 161. Goodman

did not file an opposition to these motions.

### 8. Motions to Quash Subpoenas

On March 28 and April 18, Goodman moved to quash two subpoenas requested by Sweigert. Dkt. Nos. 168, 186. Sweigert opposed Goodman's motions to quash on March 30 and April 18. Dkt. Nos. 170, 188.

### 9. Wittes's and Jankowicz's Motion for Sanctions as to Goodman

On April 3, Wittes and Jankowicz moved for sanctions as to Goodman. Motion for Sanctions Against Plaintiff Jason Goodman, Dkt. No. 171; Memorandum of Law in Support of Motion for Sanctions ("Wittes Sanc."), Dkt. No. 172. Goodman filed an opposition on April 14. Dkt. No. 184. Wittes and Jankowicz filed a reply in support of their motion on April 28. Dkt. No. 197.

### 10. Motions and Requests for Judicial Notice and Sweigert's Motion to Strike

Goodman and Sweigert have filed multiple motions and requests for judicial notice. Dkt. Nos. 141, 163, 167, 176, 179, 181, 191. On April 30, Sweigert moved to strike Goodman's request for judicial notice (Dkt. No. 176) dated April 4, 2023. Dkt. No. 198.

On March 30, an amended order of reference was issued, referring all pending motions, both dispositive and non-dispositive, to me for a report and recommendation and any appropriate orders. Dkt. No. 169.

## II.  DISCUSSION

A.  **Standard of Review**

1.  **Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)).

To survive dismissal, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).  Although Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

9

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### 2. Evidentiary Standards on a Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), "district courts must limit their consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; or (4) documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Ebomwonyi*, 473 F. Supp. 3d at 344–45 (quoting *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014)) (cleaned up).

For a document "[t]o be incorporated by reference, the complaint must make a clear, definite and substantial reference to [it]." *McLennon*, 171 F. Supp. 3d at 88 (quoting *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010)) (citation omitted). "Limited quotation does not constitute incorporation by reference." *Id.* at 88–89 (quoting *Looney v. Black*, 702 F.3d 701, 716 n.2 (2d Cir. 2012)). "Even where a document is not incorporated by reference, it may be considered if it is integral to the complaint." *Id.* at 89. "A document is integral to the complaint where the plaintiff (1) has actual notice of the document and its information and (2) has relied upon the documents in framing the complaint." *Id.* (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)) (cleaned up). "However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or

10

accuracy of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (cleaned up).

Rule 201 of the Federal Rules of Evidence establish that judicial notice may be taken of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. "To that end, dictionaries and encyclopedia may be consulted." *B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727, 728 (Fed. Cir. 1988).

### 3.   Standards in *Pro Se* Cases

"*Pro se* plaintiff filings are liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Franklin v. X Gear 101, LLC*, No. 17-CV-6452 (GBD) (GWG), 2018 WL 3528731, at *4 (S.D.N.Y. July 23, 2018) (citation and internal quotations omitted), *adopted by* 2018 WL 4103492 (Aug. 28, 2018); *see also Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (review of *pro se* complaint for sufficiency requires "special solicitude, interpreting the complaint to raise strongest claims that it suggests") (cleaned up). "However, even the pleadings of *pro se* plaintiffs 'must contain factual allegations sufficient to raise a right to relief above the speculative level.'" *Franklin*, 2018 WL 3528731, at *4 (quoting *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009)); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . threadbare recitals of the elements of a

11

cause of action, supported by mere conclusory statements, do not suffice" nor may a court "invent factual allegations" a plaintiff "has not pled." (internal quotations and citations omitted)).  Further, the degree of solicitude afforded to a *pro se* plaintiff "may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (citation omitted).

## B.    Analysis

This case is a continuation of an ongoing battle between Internet conspiracy theorists Goodman and Sweigert.  As Judge Caproni characterized their conflict in a prior lawsuit in this District between them, it is "a frivolous dispute between two litigants whose voluminous court filings rehash their incomprehensible and illogical online conspiracy theories." *Sweigert v. Goodman*, No. 18-CV-8653 (VEC), 2019 WL 11662227, at *1 (S.D.N.Y. Aug. 20, 2019).  In this iteration of the dispute, Goodman has brought in many other defendants, some of whom he has sued in other lawsuits and some of whom he has not sued before.  As discussed further below, I recommend this case be dismissed in its entirety.

### 1.    Default Against Bouzy and Bot Sentinel

In the prior Report, I recommended that Goodman move for a default judgment against Bouzy and Bot Sentinel, who had been properly served but had not appeared in the action.  *See Goodman v. Bouzy*, No. 21-CV-10878 (AT) (JLC), 2022 WL 16847284, at *5 (S.D.N.Y. Nov. 10, 2022), *adopted by* 2022 WL 17624872 (Dec. 13, 2022).  Goodman then obtained a Clerk's Certificate of Default, Dkt. No.

12

72, after which Bouzy and Bot Sentinel appeared and moved to set aside the default, explaining that they believed they had not been properly served, and once they became aware of the Court's recommendation, obtained counsel and appeared. Dkt. No. 90, at 3. As there is nothing in the record to suggest that any default by Bouzy and Bot Sentinel was willful, the certificate of default is vacated, Bouzy's and Bot Sentinel's motion is granted (and Goodman's motion for a default judgment should be denied, Dkt. No. 60). *See, e.g., Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 613 (S.D.N.Y. 2012) (default not willful where once defendant became aware of application for default judgment, "it engaged current counsel to represent its interests").[4]

### 2.    Motions to Dismiss

Bouzy, Bot Sentinel, Berlin, Mishkin, Jankowicz, Wittes, and Sweigert have all moved to dismiss Goodman's claims against them. These motions should be granted. In addition, the claims against the remaining defendants, Webb, ATAS, Sharp, and Esquenet, who have not yet responded to the amended complaint, should be dismissed, *sua sponte*, as discussed below.[5]

---

[4] For avoidance of doubt, no default judgment was ever entered against these defendants.

[5] Sweigert contends that the doctrine of *res judicata* "precludes the relitigation of Goodman's claims against Adam Sharp" and cites to another case in this District in which Goodman sued Sharp and Esquenet, among others. *See* Sweigert Rep. at 6. Because all of Goodman's claims lack merit, the Court does not address the *res judicata* argument.

### a. The RICO Claim, to the Extent It Has Been Pled, Should Be Dismissed as to All Defendants

Although the amended complaint does not explicitly include a cause of action for RICO, Goodman makes multiple references to alleged RICO violations and in fact, calls the pleading, "Amended Complaint for Fraud, Defamation, Abuse of Process, Civil Conspiracy, and Racketeering." *See also* Am. Comp. ¶ 36 ("this action arises under the Federal Racketeer Influences and Corrupt Organizations Act ("RICO")). Goodman also makes multiple references to the RICO statute, 18 U.S.C. § 1962. *Id.* ¶ 4, *id.* at 13. However, any cause of action under RICO, to the extent one has been pled, fails.

There are two threshold pleading requirements to state a RICO claim:

> [f]irst, [a plaintiff] must allege that the defendants, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly invest in, or maintain an interest in, or participate in an enterprise, the activities of which affect interstate or foreign commerce. Second, [a plaintiff] must allege that he was injured in his business or property by reason of a violation of Section 1962.

*Mendlow v. Seven Locks Facility*, 86 F. Supp. 2d 55, 57 (D. Conn. 2000). A plaintiff can demonstrate "a pattern of racketeering" by alleging "(1) the existence of two or more racketeering predicate acts, (2) that the predicate acts are related, [and] (3) that the predicate acts amount to or pose a threat of continued criminal activity." *Id.* at 58 (citing *H.J., Inc. v. Northwestern Bell Telephone*, 492 U.S. 229, 239 (1989)). Further, an enterprise is "any individual, partnership, corporation, association or

other legal entity, and any union or group of individuals associated in fact although

not a legal entity." 18 U.S.C. § 1961(4).

Goodman sprinkles allegations of racketeering throughout the amended

complaint.  For example, he alleges that all defendants:

- "worked together toward a common purpose by filing mass complaints . . . making false claims, and fraudulent misrepresentations intended to forcibly terminate Goodman's video broadcasting business, and to extort money from him through vexatious litigation including multiple simultaneous lawsuits based on frivolous and fraudulent claims." ¶ 2;
- "engaged in a pattern of racketeering activity including the formation of an association-in-fact enterprise (the "Enterprise") for the purpose of harassing [Goodman], destroying his business and public reputation, and preventing him from broadcasting findings of his investigations by wrongfully terminating his access to social media."  ¶ 3; and,
- "caused proximate financial damage to Goodman beginning in 2020, continuously up to and including today," with their "pattern of related racketeering." ¶ 5.

These claims are unsubstantiated and conclusory, and thus insufficient to state a

RICO claim.

First, Goodman has not alleged a pattern of racketeering.  In order to

establish such a pattern, a plaintiff must allege "at least two acts of racketeering

activity within a ten-year period." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018)

(citing 18 U.S.C. § 1691(5)) (internal quotations omitted).  Goodman's claims largely

relate to fraud: defendants made fraudulent complaints, *see, e.g.,* Am. Comp. at 17,

and defendants filed lawsuits based on fraudulent claims, *see, e.g., id.* ¶ 2.  He

alleges that defendants carried out these acts to both "terminate" his broadcasting

business and cause "financial damage." *Id.* ¶¶ 2, 5.  However, the events that

Goodman alleges do not support his claims of fraud.  For example, Goodman alleges

15

that Jankowicz "filed a complaint with Twitter alleging Goodman had posted private information," *id.* at 34, and that "there is simply no way" defendants could have learned certain information about Goodman without colluding with Sweigert. *Id.* at 31. These allegations do not suffice to constitute predicate acts sounding in fraud. Merely alleging the Sweigert provided information to Jankowicz, or any other defendant, and that Jankowicz then filed a complaint with Patreon and/or Twitter, without specifying what Sweigert and Jankowicz spoke about, or to what end, is insufficient to make out fraud claim. *See, e.g., Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 413 (S.D.N.Y. 2013) (plaintiffs' failure to provide quotes, dates, or any type of specificity is insufficient to make out a claim of fraud under RICO).

Further, as to Wittes, Goodman alleges that he conspired to destroy his business, "fund[ed] the Enterprise's legal defense," and "engaged" Bouzy and Bot Sentinel to "terminate [Goodman's] access to social media." Am. Comp. ¶ 45. These conclusory allegations that Wittes "took actions at unspecified times and places," are also insufficient to sustain a RICO claim. *Mendlow*, 86 F. Supp. 2d at 58. Finally, Goodman alleges that Sharp, ATAS, and Esquenet "participated in a scheme" by filing a fraudulent or frivolous lawsuit against his company. Am. Comp. ¶ 57. Where "a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act." *Kim*, 884 F.3d at 105.

16

Moreover, despite using the term "enterprise" throughout the amended complaint, Goodman has not sufficiently pleaded the existence of an "enterprise." Goodman alleges that all defendants "participated in the Enterprise," Am. Comp. ¶¶ 41–51, and that they formed a "Cyber Militia" that creates "deceptive anonymous online accounts and a multitude of clandestine, encrypted communication schemes" and "[e]nables coordinated activity." *Id.* at 13–14. Again, Goodman's statements lack the required specificity: he has failed to allege facts that describe an "organization whose various associates function as a continuing unit" and his amended complaint "simply str[ings] together all of the defendants in this action and label[s] the resulting group an association-in-fact enterprise." *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 539–40 (S.D.N.Y. 2001) (citing *Bernstein v. Misk,* 948 F.Supp. 228, 235 (S.D.N.Y. 1997) (plaintiff failed to describe an "organization whose various associates function as a continuing unit"). Goodman has further failed to provide any details regarding "hierarchy, organization, or unity among the various alleged conspirators." *Id. at* 539. Accordingly, Goodman has failed to allege facts to demonstrate an enterprise.

Furthermore, Goodman has not sufficiently alleged that any actions the enterprise took were the proximate cause of an injury. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). While Goodman does use the term "proximate cause," any connection between the alleged actions and injuries are conclusory at

17

best.  For example, Goodman alleges that "[d]efendants' pattern of related racketeering activities caused proximate financial damage."  Am. Comp. ¶ 5.  In another instance he alleges that his "primary business Twitter account" was deactivated due to "the malicious efforts" of the Cyber Militia "in retaliation for filing this lawsuit."  *Id.* at 33–34.  Once it was reactivated, Goodman alleges that he received "four new paid subscribers the same day, further demonstrating the proximate damage caused by deliberate deactivation."  *Id.* at 34.  Taking these allegations as true, that defendants submitted false complaints resulting in the removal of Goodman's Youtube videos or the deactivation of Goodman's Twitter account, Goodman's statements about "financial injury" are too vague and speculative "to constitute an injury to business or property," as is required.  *Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14, 16 (2d Cir. 2006) (citation omitted).  Goodman has alleged no details regarding what he lost as a result of these actions, beyond stating "financial damage."  In sum, Goodman's RICO claim, to the extent he has pled one, fails.

> **b.    Goodman's Fraud Claims Should Be Dismissed as to All Defendants**

Although Goodman's first stated cause of action in the amended complaint is fraud, he alleges that defendants violated a host of federal criminal statutes: 18 U.S.C. §§ 1343, 1503, and 1513.  Am. Comp. at 35.  Not one of these statutes provides for a private right of action.  *See, e.g., Compton v. Pavone*, No. 21-931, 2022 WL 1039966, at *1 (2d Cir. Apr. 7, 2022) (summary order) (§ 1513 does not have private right of action)*; Farmer v. Karpf, Karpf & Cerutti P.C.*, No. 19-CV-5947

(KPF), 2020 WL 1911194, at *4 (S.D.N.Y. Apr. 20, 2020) (citing cases) (no private right of action under § 1343); *Sivokonev v. Cuomo*, 447 F. Supp. 3d 58, 61 (W.D.N.Y. 2020) (no private right of action under § 1503) (citation omitted). Therefore, Goodman's claim for fraud fails.

To the extent Goodman is asserting a common law fraud claim, his claim still lacks merit. "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citation omitted). In addition, pursuant to Rule 9(b), a plaintiff who alleges fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Therefore, the "complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Aquino by Convergent Distrib. of Texas, LLC v. Alexander Capital, LP*, No. 21-CV-1355 (JSR), 2021 WL 3185533, at *25–26 (S.D.N.Y. July 27, 2021) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). In addition, a plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent." *Id.* (citation omitted).

Importantly, Goodman has not adequately alleged reliance as to any of the defendants. For example, Goodman alleges that as a result of "fraudulent

19

representations and malicious actions" made by defendants, he "suffered special damages" when he was "compelled to travel to Detroit" to attend a hearing relating to litigation in the Eastern District of Michigan. Am. Comp. ¶ 55. However, taking the allegations as true, Goodman was not a party to the action in the Eastern District of Michigan, he was a non-party who filed an *amicus curiae* brief without first seeking leave of the court (which that court eventually struck). *See Sweigert v. Cable News Network, Inc.*, No. 20-CV-12933 (GAD), 2022 WL 842322, at *1 (E.D. Mich. Mar. 21, 2022). These allegations fail to demonstrate that Goodman relied on any action of defendants.

The remainder of Goodman's fraud allegations fail to imply that any injury he might have suffered was due to his reliance on the allegedly fraudulent misrepresentations. For example, Goodman alleges that Sharp "transmitted a false statement to YouTube over the internet in the form of a fraudulent copyright infringement complaint that [Sharp] knew to be false at the time," and goes on to state that Sharp had the "express purpose of damaging Goodman and denying access to property." Am. Comp. ¶ 56. Nowhere does Goodman explain that he relied on Sharp's statements to his own detriment. Similarly, as to Jankowicz, Goodman alleges that she "transmitted a fraudulent privacy complaint to Patreon.com over the internet with malicious intent to destroy Goodman's business property." *Id.* ¶ 60. But again, nowhere does Goodman explain how he relied on Jankowicz's allegedly fraudulent statements.

Even if he had alleged reliance on defendants' alleged actions, Goodman has failed to adequately plead with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedure. Although he identifies the speakers in some instances, *see* Am. Comp. ¶¶ 56–61, Goodman never specifies the statements that he alleges to be fraudulent. In particular, Goodman repeatedly alleges that defendants "transmitted fraudulent statements," but nowhere does he specify what these fraudulent statements were or when or where they were made. Thus, "it is clear that the vague allegations relating to the misrepresentations and omissions clearly fall short of meeting Rule 9(b)'s particularity requirements" as the allegations "fail to specify . . . the content of the statements, and when the statements were made." *Woods v. Maytag Co.*, No. 10-CV-559 (ADS) (WDW), 2010 WL 4314313, at *6 (E.D.N.Y. Nov. 2, 2010).

### c. Defamation

Goodman alleges that Bouzy "knowingly published false and defamatory statements about [him] to third parties on Twitter and elsewhere on the internet when [he] made claims likely to cause third parties to believe Goodman stood accused of raping . . . an individual who has never made such claims and who Goodman has never met." Am. Comp. ¶ 63. Goodman goes on to allege that Bouzy "knew such statements to be false and inherently damaging per se libel." *Id.* ¶ 64. Bouzy and Bot Sentinel argue that Goodman has not plausibly alleged that Bouzy's statements were false. The Court agrees.

21

"To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Gargiulo v. Forster & Garbus, Esqs.*, 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citation omitted).[6] "'Substantial truth' is the standard by which New York law . . . determines an allegedly defamatory statement to be true or false." *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 242 (2d Cir. 2017) (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991)).

In addition, to make out a defamation claim under New York law, "[a] public-figure plaintiff must . . . prove that an allegedly libelous statement was made with actual malice, that is, made with knowledge that it was false or with reckless disregard of whether it was false or not." *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 818 (S.D.N.Y. 2021) (cleaned up). There are two types of public figures: general-purpose public figures who "assume[] [a] role[ ] of especial prominence in the affairs of society," *id.* at 819 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974), and limited-purpose public figures, who "voluntarily inject[ themselves] or [are] drawn into a particular public controversy and thereby

---

[6] New York law applies because the Court sits in diversity. *See, e.g., Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). "A federal court sitting in diversity applies the choice of law rules of the forum state." *Lee*, 166 F.3d at 545. "Under New York choice-of-law rules in defamation cases the state of the plaintiff's domicile will usually have the most significant relationship to the case". *Id.* (cleaned up). Goodman's domicile is New York, Am. Comp. ¶ 13, and thus New York law applies.

become[ ] public figure[s] for a limited range of issues." *Id.* (citing *Gertz*, 418 U.S. at 351–52). "A public controversy is simply any topic upon which sizeable segments of society have different, strongly held views. . . . Even those controversies that engage a specialized audience can still be considered public in nature." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 272 (S.D.N.Y. 2013) (cleaned up). As discussed further below, Goodman has neither alleged falsity nor actual malice.

### (1) Goodman Has Failed to Allege Falsity

The amended complaint does not specify exactly what false statements Bouzy made; however, it does include a link to a recording of a phone call between Bouzy and Goodman. Am. Comp. at 20.[7]   Throughout the call, Goodman himself implies that people made rape allegations against him—Goodman tells Bouzy, "go try to find somebody who claims I raped them. You will not find that. You will find a litany of social engineering liars who have been pursuing me for years with *false claims along the lines of what you're suggesting*." Berlin Decl., Ex. 3, Dkt. No. 108-3 at 9 (emphasis added).[8]   In response, Bouzy asks Goodman, "how would you feel if I was researching you and I found something where someone alleged that you, you know, raped them," to which Goodman answered: "I would feel like it's just

---

[7] Because Goodman included a hyperlink to the phone call recording in his amended complaint, the recording is sufficiently incorporated by reference to be considered on a motion to dismiss. *See, e.g., McLennon*, 171 F. Supp. 3d at 88. Further, the phone call recording is also integral to the complaint, as Goodman himself recorded the call, giving him actual notice, and he relied on the call in explaining his relationship with Bouzy. *See Chambers*, 282 F.3d at 153.

[8] The text of the phone call was transcribed and attached to Berlin's Declaration. *See* Berlin Decl., Ex. 3, Dkt. No. 108-3.

Saturday 'cuz [*sic*] that s*** happens all day.  Losers on the internet are making up nonsense about me."  *Id.* at 12–13.  Later in the conversation Goodman adds, "no one has made a serious allegation that I have raped anyone. . . . People have put out lies about me of all kinds."  *Id.* at 13–14.

Thus, even taking Goodman's claims as true, he has not alleged the required falsity.  As Bouzy and Bot Sentinel distinguish, Bouzy did not allege that Goodman raped someone; Bouzy stated only that he was *aware of allegations* that Goodman had raped someone.  A review of the phone conversation demonstrates that the fact that there exist rumors that Goodman raped someone is "substantially true."  *See, e.g., Masson*, 501 U.S. at 516 ("The common law of libel takes but one approach to the question of falsity, regardless of the form of the communication.  It overlooks minor inaccuracies and concentrates upon substantial truth." (citations omitted)); *see also Tannerite Sports, LLC*, 864 F.3d at 247 ("when falsity is an element of a state defamation claim, federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false").

### (2) Goodman Has Failed to Allege Actual Malice

Bouzy and Bot Sentinel further allege that, as a "public figure," Goodman must plead actual malice and has failed to do so.  Bouzy Mot. at 21.  While he does not address whether he is a public figure, Goodman appears to concede that the actual malice standard applies to his claim of defamation in the amended complaint as he alleges as to Bouzy that he "made these statements with actual malice."  Am. Comp. ¶ 70.

Further, he does not oppose Bouzy and Bot Sentinel's assertion that he is a public figure. In fact, he himself alleges that he is a "investigative journalist, documentary filmmaker, talk show host, and found of the widely trusted news, information, and entertainment brand Crowdsource the Truth." Am. Comp. ¶ 13. Goodman also does not dispute that he instigated the phone call with Bouzy after his interaction with Wittes regarding the death of a political figure, Peter Smith, Am. Comp. at 20; Goodman MTD Opp. at 2, which meets the standard of "public controversy." Further, Goodman does not deny that he was both an active participant and leader in the conversation surrounding Wittes and the death of Peter Smith. *See*, Am. Comp. at 19 (Goodman describing his efforts pursuing Wittes to speak regarding Goodman's suspicions about Smith's death, and his eventual Twitter interview with Wittes). *See, e.g., Fine v. ESPN, Inc.*, No. 12-CV-0836 (DEP), 2016 WL 6605107, at *7 (N.D.N.Y. Mar. 25, 2016) ("the record includes ample evidence of plaintiff's efforts to garner public attention in order to influence others and the success of those efforts."). Therefore, the record supports the conclusion that Goodman is a limited-purpose public figure who must plead actual malice in his claim for defamation.

Goodman proffers the conclusory allegation that "Defendants made these statements with actual malice," Am. Comp. ¶ 66, but nowhere alleges any facts to support this contention. Merely intoning "actual malice" repeatedly is insufficient to state a claim for defamation as a limited-purpose public figure. *See, e.g., Biro*, 963 F. Supp. 2d at 280 (S.D.N.Y. 2013) ("Courts in this district have also dismissed

pleadings of actual malice where the allegations were conclusory and lacked plausibility.").

Accordingly, because Goodman has failed to demonstrate that the allegedly defamatory statement was false and has failed to plead actual malice, his claim for defamation fails.

### d.    Abuse of Process

Goodman brings claims of abuse of process against Sweigert and Sharp. Am. Comp. ¶¶ 75–77. As to Sweigert, Goodman alleges that he "abused regularly issued civil process with the intent to harm Goodman . . . when he brought multiple civil actions and attempted to intervene in existing civil actions against Goodman across a wide range of U.S. District Courts." *Id.* ¶ 75. As to Sharp, Goodman alleges that he "abused regularly issued civil process with intent to harm Goodman when he endeavored to create a fraudulent excuse in his wrongful attempt to justify vexatious litigation against a company owned by Goodman." *Id.* ¶ 76.

To establish abuse of process under New York law, a plaintiff must demonstrate that the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).

Goodman's abuse of process claims are conclusory at best. Even taking his allegations as to Sweigert to be true, that Sweigert brought multiple civil actions in various district courts, is insufficient. "The gist of the action for abuse of process

26

lies in the improper use of process after it is issued. . . . It follows that there must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie." *Williams v. Williams*, 246 N.E.2d 333, 335 (N.Y. 1969) (cleaned up).  Further, "[m]otion practice in civil lawsuits does not qualify as legal process sufficient to state an abuse of process claim." *Zappin v. Comfort*, No. 18-CV-1693 (ALC) (OTW), 2022 WL 6241248, at *13 (S.D.N.Y. Aug. 29, 2022) (citing *Manhattan Enterprise Group LLC v. Higgins*, 816 F. App'x 512, 515 (2d Cir. 2020), *adopted by* 2022 WL 4592551 (Sept. 30, 2022).  Similarly, the mere fact that Sharp filed a lawsuit is insufficient to sustain an abuse of process claim.

Additionally, Goodman alleges that defendants abused process when Sweigert harassed counsel retained to represent Goodman's corporation.  Am. Comp. ¶ 77.  However, Goodman has not provided any details as to how, where, or when Sweigert harassed his former counsel.  Therefore, Goodman's abuse of process claim fails.

### e.    Civil Conspiracy

Goodman makes a claim for civil conspiracy against all defendants that appears to be largely duplicative of his RICO claim.  *Id.* ¶¶ 78–92.  To establish a civil conspiracy claim, a plaintiff must first demonstrate "the primary tort" and then the following four elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.*"

27

*Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 794 (S.D.N.Y. 2008) (cleaned

up).  Goodman's claim for civil conspiracy fails chiefly because he did not

demonstrate any primary tort—his claims for fraud and abuse of process are not

cognizable.  *See, e.g., McCall v. Chesapeake Energy Corp.*, 509 F. App'x 62, 65 (2d

Cir. 2013) (because "the claims that could have provided a basis for the civil

conspiracy claim were dismissed, [the civil conspiracy claim] must also fail as a

matter of law").

In sum, Goodman has failed to allege any cognizable claims.  Accordingly, his

amended complaint should be dismissed.[9]

### 2.    Goodman's Motion for Leave to Further Amend Should Be Denied

Without leave of the Court, Goodman filed a second amended complaint.

Dkt. No. 132.  Following a Court order, Goodman then filed a notice of motion for

---

[9] To be clear, the Court's recommendation for dismissal applies to Berlin and
Mishkin as well.  Although none of Goodman's causes of action names Berlin or
Mishkin, in his discussion of personal jurisdiction, Goodman alleges that Berlin
"conspired with Defendants to intimidate Goodman with harassing extrajudicial
letters after he was alerted by a Tweet sent by [Swiegert] and prior to appearing as
counsel for Defendants Bouzy and Bot Sentinel in violation of 18 U.S.C. § 1503."
Am. Comp. ¶ 50. To the extent Goodman is making a claim that Berlin and Mishkin
violated 18 U.S.C. § 1503, a federal criminal statute that does not provide a private
civil right of action, it fails.  Further, as discussed below, the only conduct that
Goodman alleges against Berlin and Mishkin is that they sent him a "pre-motion
letter" in an attempt to "threaten" or "intimidate" him, Am. Comp. ¶ 50, which is
fully within the type of activities contemplated by the rules.  *See, e.g.,* Judge Torres'
Individual Practices in Civil Cases Rule III B.  Finally, to the extent Goodman is
alleging that Berlin and Mishkin participated in a conspiracy or "Enterprise" with
the other defendants, he has not provided any specificity to those allegations and
they thus fail as well.

leave to further amend.[10]

A court must "freely" grant leave to amend a complaint when "justice so requires." Fed. R. Civ. P. 15(a)(2). "Where a cause of action is dismissed due to deficient pleading, leave to amend should generally be granted." *Watkins v. City of New York Kings Cty.*, No. 14-CV-1512 (RRM) (LB), 2014 WL 4075769, at \*4 (E.D.N.Y. Aug. 15, 2014) (collecting cases). Moreover, the Second Circuit has emphasized that "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). However, denial of leave to amend may result upon a finding of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

A court may dismiss the claims of a *pro se* litigant without leave to amend when "the substance of the claim pleaded is frivolous on its face," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988), and is "based on an indisputably meritless legal theory," *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (citation omitted), or

---

[10] Because Goodman filed a proposed third amended complaint immediately following his proposed second amended complaint, the Court views the second amended complaint as no longer the proposed operative pleading.

29

where "the problem with [the plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000).

As a threshold issue, Goodman failed to include a memorandum of law along with either of his proposed amended complaints in violation of Local Rule 7.1(a). A party's failure to submit a memorandum of law with its motion, even a *pro se* party like Goodman (who is a seasoned litigant), "standing alone, is sufficient cause for . . . denying a motion. [In such a circumstance,] [i]t is not necessary [for a court] to reach the merits [of the motion]." *East 65 Street Realty Corp. v. Rinzler*, No. 98-CV-6555 (RCC), 2000 WL 303279, at *2 (S.D.N.Y. March 22, 2000) (collecting cases). "Local Rules are not 'empty formalities.'" *Zimmerman v. Racette*, No. 17-CV-375 (LEK) (CFH), 2022 WL 4328489, at *6 (N.D.N.Y. Sept. 19, 2022) (quoting *Kilmer v. Flocar, Inc.*, 212 F.R.D. 66, 69 (N.D.N.Y. 2002)). Accordingly, Goodman's motions for leave to further amend his complaint should be denied on this basis alone.

His motions should be denied on the merits as well. Goodman has already amended his complaint once, and so he has had the opportunity to cure the deficiencies in his claims. Bouzy, Bot Sentinel, Berlin, Mishkin, Sweigert, Wittes, and Jankowicz oppose Goodman's motions to amend, arguing that he largely rehashes the same factual allegations in his proposed second and third amended complaints, but still fails to plead with the required specificity and his allegations, even if true, fail to state any claims. *See* Bouzy Rep. at 4–8, Wittes Opp. at 4–6, Sweigert Opp. at 19–25. The Court agrees.

30

Goodman's motions for leave to amend are futile.  Nothing in the proposed third amended complaint leaves any basis for a finding that Goodman's allegations, taken as true, would be cognizable.  For example, in connection with his RICO allegations, Goodman states that the "Cyber Militia" made "false, unfounded, and defamatory statements," Dkt. No. 142-1 ¶ 54, but once again, Goodman does not specify what these statements were.  Although he adds more text to his defamation claim, Goodman still does not allege with specificity that Bouzy acted with actual malice.  *Id.* ¶ 91.  In his abuse of process allegations, Goodman contends that Sweigert "abused regularly issued civil process," by, for example, "harass[ing] Snyder, the attorney retained to Goodman's corporation," but he does not specify how Sweigert harassed his counsel.  *Id.* ¶ 97.  In addition, as with the amended complaint, many of the causes of action that Goodman asserts are brought pursuant to criminal statutes that do not provide for a private right of action.

In sum, due to his procedural failures and the futility of his proposed third amended complaint, Goodman's motions for leave to amend should be denied.  Although leave to amend should be freely granted to a *pro se* litigant, here it is clear that no valid claim can be stated.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("A *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (cleaned up)).  As Goodman has already had his opportunity to amend, his motions should be denied with prejudice.  *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991) (citation

31

omitted) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice).

### 3.    Goodman's Motion for Sanctions Should Be Denied

Goodman moved for sanctions against Bouzy, Bot Sentinel, and their counsel, Berlin, pursuant to Rule 11 of the Federal Rules of Civil Procedure, claiming that Berlin's delay in filing a notice of appearance, and the pre-motion letter which he sent to Goodman, were in violation of the Federal Rules and Judge Torres' individual rules of practice.  Goodman Sanc. at 1.[11]  The Court disagrees.

First, Judge Torres' individual rules of practice specifically call for the parties to exchange letters prior to a defendant moving to dismiss.  *See* Judge Torres' Individual Practices in Civil Cases Rule III B.  Second, there is no rule that requires counsel to file a notice of appearance before contacting a counterparty.  Third, nothing in the substance of the letter, which Goodman attached to his motion, appears to have the intent of harassing him.  *Id.*, Ex. A.  Accordingly, Goodman's motion should be denied.[12]

---

[11] The caption Goodman includes in his motion names Bouzy, Bot Sentinel, and Webb as the defendants in his motion for sanctions.  Goodman Sanc. at 1.  However, the memorandum of law names Bouzy, Bot Sentinel, and Berlin.  *Id.*

[12] In his reply, Goodman requests for the first time that the Court, in the alternative, construe his motion as one for contempt.  "[A]s a general rule, a court does not consider arguments raised for the first time in a reply brief."  *Holguin v. Lee*, No. 13-CV-1492 (LGS) (JLC), 2014 WL 5508331, at *4, n.4 (S.D.N.Y. Oct. 31, 2014), *adopted by*, 2016 WL 1030129 (Mar. 10, 2016).  Such a rule is meant to "deter[ ] the practice of raising new arguments on reply that the opposing party is unable to respond to."  *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 324

In opposition to Goodman's motion, Bouzy, Bot Sentinel, and Berlin seek attorneys' fees. Bouzy Sanc. Opp. at 8. "If warranted, the Court may award the party prevailing on the motion [for sanctions] the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed.R.Civ.P. 11(c)(1)(A). Bouzy, Bot Sentinel, and Berlin argue that Goodman's motion was clearly frivolous and as such attorneys' fees are warranted. Bouzy Sanc. Opp. at 9. "An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (cleaned up). "Rule 11 imposes an affirmative duty on a litigant to conduct a reasonable inquiry into the law and facts before filing a pleading, and the standard to be applied is one of objective reasonableness." *Sachs v. Matano*, No. CV15-CV-6049 (JFB) (AKT), 2016 WL 4179792, at *6 (E.D.N.Y. July 15, 2016) (citation omitted), *adopted by* 2016 WL 4186708 (Aug. 4, 2016).

Here, while Goodman's Rule 11 claims against Bouzy, Bot Sentinel, and Berlin fail, it is not clear that Goodman understood there to be "no chance of success" or that he did not "conduct a reasonable inquiry into the law." For example, he alleges that "[b]ecause the letter was sent well after the time to respond had expired, and because of the deceptive nature of Defendants' past

---

F. Supp. 3d 387, 395 (S.D.N.Y. 2018). The Court therefore does not consider this argument.

behavior," he "believed the letter was a trap designed to deceive him into engaging with unretained, tentative counsel outside of normal court procedure."  Goodman Sanc. Rep. at 5.  While it is a close call, given that Goodman is an experienced *pro se* litigant, attorneys' fees are not warranted.

### 4.    Wittes' and Jankowicz's Motion for Sanctions Should Be Granted and a Filing Injunction Imposed

Wittes and Jankowicz moved for sanctions against Goodman pursuant to Rule 11 of the Federal Rules of Civil Procedure.  As sanctions, they seek an order enjoining Goodman from filing additional documents on the docket relating to them in this District; enjoining him from filing any federal district court action against them relating to the subject matter in this case; enjoining him from filing any new *pro se* action against them in any federal district court without first obtaining leave of that court; and finally, ordering him to pay the fees and costs incurred in defending this action and the litigation associated with this sanctions motion. Wittes Sanc. at 1.

"[T]he Second Circuit has held that '[t]he issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings.'" *Ware v. United States,* No. 04-CR-1224 (ER), 2023 WL 2757206, at *5 (S.D.N.Y. Apr. 3, 2023) (citing *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000)).  "A court's power to restrict the litigation of abusive and vexatious litigants is an "ancient one" that is now codified at 28 U.S.C. § 1651(a), the All Writs Act." *Id.*  (citing *Polur v. Raffe*, 912 F.2d 52, 57 (2d Cir. 1990) (quoting *In re Hartford Textile Corp.*, 681 F.2d 895,

897 (2d Cir. 1982) (per curiam) (internal quotation marks omitted))).  Five factors

are considered when determining if a litigant's behavior warrants a filing

injunction:

> (1) The litigant's history of litigation and in particular whether
> it entailed vexatious, harassing, or duplicative lawsuits;
>
> (2) The litigant's motive in pursuing the litigation, *e.g.*, does the
> litigant have an objective good faith expectation of prevailing?
>
> (3) Whether the litigant is represented by counsel;
>
> (4) Whether the litigant has caused needless expense to other
> parties or has posed an unnecessary burden on the courts and
> their personnel; and
>
> (5) Whether other sanctions would be adequate to protect the
> courts and other parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).

Here, as to Jankowicz and Wittes, the five factors all weigh in favor of a filing

injunction.  First, this is not the first lawsuit in which Goodman has been involved

or filed himself.  *See, e.g., Sweigert v. Goodman*, No. 22-CV-2788 (LGS) (BCM), Dkt.

No. 72 (S.D.N.Y. July 19, 2022) (Sweigert's defamation suit against Goodman

voluntarily dismissed); *Goodman v. Sharp*, No. 21-CV-10627 (VEC), Dkt. No. 66

(S.D.N.Y. July 12, 2022) (Goodman sued Sharp, ATAS, Esquenet; Sweigert denied

intervention); *Sweigert v. Cable News Network*, Inc., No. 20-CV-12933 (GAD), 2022

WL 842322, at *1 (E.D. Mich. Mar. 21, 2022) (defamation suit against CNN in

which the court struck Goodman's *amicus curiae* brief because he was nonparty and

Sweigert denied leave to file an *amicus* brief); *Sweigert v. Goodman*, No. 18-CV-

8653 (VEC), 2022 WL 168080 at *11 (S.D.N.Y. Jan. 19, 2022) (Sweigert's defamation suit against Goodman dismissed with prejudice).

Second, Goodman does not have a good faith expectation of prevailing, as the Court recommends above that his case as to Janckowicz and Wittes should be dismissed with prejudice. Third, although Goodman is not represented by counsel, he is not the average *pro se* litigant. As noted, Goodman has involved himself in numerous lawsuits in different jurisdictions. *See, e.g. Schuster v. Charter Commc'ns, Inc.*, No. 18-CV-1826 (RJS), 2021 WL 1317370, at *10 (S.D.N.Y. Apr. 8, 2021) (*pro se* status does not bar imposition of filing injunction).

Fourth, beyond involving himself in multiple litigations, Goodman has made excessive filings here. Since January 2023 alone, Goodman has made more than 20 filings on the court's docket. This is not for a lack of legal knowledge—just two years ago, in this District, another court admonished Goodman:

> the Court instructed the parties to "refrain from filing excessively, from repeatedly amending their filings, and from filing responses to Court orders and the opposing party in a piecemeal fashion." The Court forewarned the parties that "[f]ailure to adhere to this directive will result in sanctions. . . . Goodman, although not as prolific as Sweigert in this regard, also clogs the docket with amended filings. *Such behavior has to stop.*

*Sweigert v. Goodman*, No. 18-CV-8653 (VEC), 2022 WL 168080, at *10 (S.D.N.Y. Jan. 19, 2022) (emphasis added) (citations omitted). In addition, on at least two occasions in this action, Goodman filed confidential information regarding Jankowicz on the docket without taking the appropriate sealing and/or redacting measures. *See* Dkt. Nos. 145 and 157. Goodman has been warned before and he

36

has failed to heed the warnings.  Therefore, no lesser sanctions would suffice to
protect the parties.  *See e.g., Vassel v. Firststorm Properties 2 LLC*, 750 F. App'x 50,
53 (2d Cir. 2018) ("the protection of parties abused in federal litigation falls within
the province of the federal court" and district court should "modify the injunction to
provide that [plaintiff] is prevented only from commencing [the specified]
actions . . . without first obtaining leave of the district court"); *Schuster*, 2021 WL
1317370, at *10 ("proposed injunction properly captures the main focus . . . –
complaints that [plaintiff's] past practice suggests will continue unabated without a
filing injunction in place").  Notably, in one previous Goodman-Sweigert litigation,
another court in this District observed:

> given Mr. Goodman's propensity to become involved in
> litigation on both sides of the versus sign, the Court finds
> that an appropriate sanction is to require Mr. Goodman,
> for the next two years, to notify all other Courts in which
> he litigates and all other parties against whom or with
> whom he litigates that a Court has determined that he
> willfully violated a Protective Order during litigation

No. 20-CV-7269, Dkt. No. 156.  Still, Goodman has persisted in filing cases.
Therefore, an order should be entered enjoining Goodman from: (1) filing additional
documents on the docket relating to Wittes and Jankowicz in this District; (2) filing
any federal district court action them relating to the subject matter in this case; and
(3) filing any new *pro se* action against them in any federal district court without
first obtaining leave of that court.

Lastly, Wittes and Jankowicz request attorneys' fees if their motion is
successful.  Wittes Sanc. at 11.  Rule 11 sanctions apply to *pro se* litigants and "*pro
se* filings do not serve as an impenetrable shield, for one acting *pro se* has no license

to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Durant v. Traditional Invs.*, Ltd., 135 F.R.D. 42, 49 (S.D.N.Y. 1991) (cleaned up). Here, however, attorneys' fees should not be awarded. Unlike other cases in this Circuit where courts awarded attorneys' fees, this appears to be the first lawsuit Goodman has brought against Wittes and Jankowicz. *But cf. Manwani v. Brunelle*, 99 F.3d 400,*2 (2d Cir. 1995) (*pro se* plaintiff sanctioned for litigating same claims he previously litigated); *Baasch v. Reyer*, 846 F.Supp. 9, 10 (E.D.N.Y. 1994) (*pro se* plaintiff who refiled case after court ruled it was frivolous sanctioned). "[E]njoining [Goodman] from pursuing future claims . . . against these defendants without leave of this Court should be sufficient to deter [him] from bringing groundless lawsuits in the future." *Toro v. Depository Tr. Co.*, No. 97-CV-5383 (SAS), 1997 WL 752729, at *5 (S.D.N.Y. Dec. 4, 1997).

### 5.  Goodman's Motion for a Preliminary Injunction Should Be Denied

Goodman moved for a preliminary injunction or otherwise a temporary restraining order against Sweigert pursuant to Rule 65(b)(1)(A) of the Federal Rules of Civil Procedure. Goodman seeks an injunction enjoining Sweigert from "communicating with any member of the public, aside from this Court or any attorney he may retain to represent him, concerning matters relating to this case," Goodman, and Goodman's family members "and associates." Goodman PI at 1.

To obtain a preliminary injunction, a moving party must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for

38

litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).[13]  "Irreparable harm is 'the *sine qua non* for [such] relief.'" *trueEX, LLC v. MarkitSERV Ltd.*, 266 F. Supp. 3d 705, 726 (S.D.N.Y. 2017) (quoting *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1295 (2d Cir. 1995)).  "As such, the moving party must first demonstrate that irreparable harm would be 'likely' in the absence of a preliminary injunction 'before the other requirements for the issuance of [a preliminary] injunction will be considered.'"  *JBR, Inc.,* 618 F. App'x at 33 (quoting *Rodriguez ex rel. Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir. 1998)).

Goodman has not established irreparable harm.  His justification for the relief is only that he is seeking the injunction to "to end the emotional and physical distress caused to innocent third parties including . . . most particularly Goodman's mother."  Goodman PI at 6.  Goodman alleges that his mother is in poor health and that Sweigert's public comments, primarily on the Internet, are causing her harm. *Id.* at 2.  "[C]laims of emotional and physical harm may in some circumstances justify preliminary injunctive relief," *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 511 (2d Cir. 2005) (citation omitted).  Nonetheless, where the harm

---

[13] The standards for a temporary restraining order are the same as those for a preliminary injunction.  *See Tangtiwatanapaibul v. Tom & Toon Inc.,* No. 17-CV-816 (LGS), 2018 WL 4405606, at *3 (S.D.N.Y. Sept. 17, 2018) ("It is well established that in this Circuit the standard for an entry of a [temporary restraining order] is the same as for a preliminary injunction.") (quoting *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n,* No. 17-CV-6761 (KPF), 2017 WL 4685113, at *1 (S.D.N.Y. Oct. 17, 2017)).

specified is speculative, injunctive relief is not justified. *See, e.g., Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir. 2002) (preliminary relief cannot be founded on "remote or speculative" harms, must be "actual and imminent").[14]  Because "irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction," *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66-67 (2d Cir. 2007) (per curiam) (citation omitted), the Court does not reach the other factors.[15]  Indeed, if Goodman wants to stop interacting with Sweigert, persisting from including him in further litigation would aid in this endeavor.  His motion for a preliminary injunction should be denied.

### 6.   Goodman's Motion for a Court-Ordered Psychiatric Evaluation is Denied

Goodman moved for a court-ordered psychological evaluation of Sweigert pursuant to Rule 35 of the Federal Rules of Civil Procedure.  Goodman alleges that Sweigert's "persistent harassment and cyberstalking . . . call into question his

---

[14]  Further, Goodman lacks standing to seek relief on his mother's or any other third party's behalf.  *See Moore,* 409 F.3d at 511.

[15] Even if he had established irreparable harm, Goodman has not demonstrated a likelihood of success on the merits.  To begin with, it is not entirely clear that Goodman's motion for preliminary injunction is related to his underlying claims in the amended complaint.  "To prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Candelaria v. Baker,* No. 00-CV-912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (cleaned up).  Goodman seeks preliminary injunctive relief alleging that Sweigert's cyber harassment, whereby Sweigert is publishing information Goodman considers to be personal on the internet, is causing his family and other third parties emotional and physical harm.  To the extent Goodman is seeking relief for these claims, the claims are unrelated and he cannot demonstrate likelihood of success on the merits.

mental fitness to represent himself and participate in a trial in this legal action."
Dkt. No. 118 at 1. Under the Rule, "[t]he court where [an] action is pending may
order a party whose mental or physical condition . . . is in controversy to submit to a
physical or mental examination." Fed. R. Civ. P. 35(a)(1). That is not the case here.
The claims at issue here, as to Sweigert, are fraud, defamation, abuse of process,
civil conspiracy, and RICO. None of these claims put in controversy Sweigert's
mental condition. *See, e.g., Bourne v. City of Middletown*, No. 11-CV-309 (DJS),
2012 WL 6600297, at *1 (D. Conn. Dec. 18, 2012) (motion for psychological
examination denied). Accordingly, Goodman's motion is denied.

### 7. All Motions for Judicial Notice are Denied

Goodman and Sweigert have filed multiple requests (some in the form of
motions, others in the form of letters) that the Court take judicial notice of separate
litigation to which Goodman and Sweigert are parties, various Internet postings
largely created by Goodman, and Goodman's complaints as to the parties in this
case. Dkt. Nos. 141, 163, 167, 176, 179, 181, 191. The documents of which the
Court has been asked to take judicial notice appear to be either irrelevant to the
case at hand or unnecessary, as at the motion to dismiss stage, all well-pleaded
factual allegations in Goodman's amended complaint are deemed true. *See, e.g.,
United States v. Tishman Constr. Corp.,* No. 12-CV-3862 (DLI) (RER), 2017 WL
9481015, at *3 (E.D.N.Y. Feb. 2, 2017) (no judicial notice taken where information is
unnecessary), *adopted by* 2017 WL 1093190 (E.D.N.Y. Mar. 23, 2017); *Galley
Schuler v. Rainforest All., Inc.*, No. 14-CV-226 (CR), 2016 WL 10516026, at *1 (D.

Vt. Feb. 10, 2016) (same); *see also, e.g., Anthes v. New York Univ.*, No. 17-CV-2511

(ALC), 2018 WL 1737540, at *4 (S.D.N.Y. Mar. 12, 2018) (collecting cases) (courts

need only take judicial notice of relevant facts).  As such these requests/motions are

denied.  Additionally, Sweigert's motion to strike Goodman's request for judicial

notice is denied as moot.

### 8.    Sweigert's Motions to Transfer are Denied as Moot

Sweigert has twice moved to transfer this action to the Eastern District of

Michigan, "if, and when, defendants other than [Sweigert] and his brother," are

dismissed.  Dkt. No. 158 ¶ 1, Dkt. Nos. 161 ¶ 1.  These motions are denied as moot

because the Court recommends dismissing Sweigert from the case.

### 9.    Goodman's Motions to Quash are Denied

Goodman has filed multiple motions to quash subpoenas requested by

Sweigert.  Dkt. Nos. 168, 170, 186, 188.  Goodman himself has requested the

issuance of multiple subpoenas.  As a threshold matter, the requests for these

subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure, are

improper.  "Rule 45 subpoenas have been held generally to constitute discovery,

and, therefore, are subject to the same time constraints that apply to all of the other

methods of formal discovery."  *Pasternak v. Dow Kim*, No. 10-CV-5045 (LTS) (JLC),

2013 WL 1729564, at *1 (S.D.N.Y. Apr. 22, 2013) (cleaned up).  Discovery in this

case has not commenced (and, if this Report is adopted, there will be none).

Further, "[a] party may not seek discovery from any source before the parties have

conferred."  Fed. R. Civ. P. 26.  Accordingly, all subpoenas requested to date are

improper and should be withdrawn forthwith.  Goodman's motions to quash are denied as moot.

### 10.    Remaining Defendants

If this Report is adopted in full, the only remaining defendants will be Webb, ATAS, Sharp, and Esquenet.[16]  Because the claims against these defendants are substantially similar to those for which the Court recommends dismissal—that ATAS, Sharp, and Esquenet participated in the "Enterprise"— I recommend that the claims against them be dismissed by the Court *sua sponte* (*i.e.,* without requiring motions to dismiss from these defendants).  *See, e.g., Heicklen v. U.S. Dep't of Homeland Sec.*, No. 10-CV-2239 (RJH) (JLC), 2011 WL 3841543, at *17 (S.D.N.Y. Aug. 30, 2011), *adopted by* 2011 WL 4442669 (Sept. 23, 2011).[17]  "The power to dismiss *sua sponte* must be reserved for cases in which a *pro se* complaint is so frivolous that, construing the complaint under the liberal rules applicable to *pro se* complaints, it is unmistakably clear that the court lacks jurisdiction or that the claims are lacking in merit."  *Mendlow*, 86 F. Supp. 2d at 57 (citing *Snider v. Dr. Melindez,* 199 F.3d 108 (2d Cir. 1999); *Conway v. Garvey*, No. 03-CV-7958 (DC), 2003 WL 22510384, at *4 (S.D.N.Y. Nov. 5, 2003) (*sua sponte* dismissal even when

---

[16] As to Webb, Goodman states only: "Webb's motion to dismiss was granted on December 13, 2022 (ECF No. 82) he is no longer a party to this case and should have no interest in communications between Goodman and Defendants." Goodman Sanc. Rep. at 4.  However, Webb was named in the amended complaint, and thus remains a defendant in the action.  Given that, by his own admission, Goodman is not pleading claims against him, Webb should be dismissed from the case as well.

[17] Notably, this is not the first action Goodman has brought against ATAS, Sharp, and Esquenet.  In 2022, Judge Caproni dismissed Goodman's claims against them for lack of subject matter jurisdiction without leave to amend.  *Goodman v. Sharp*, No. 21-CV-10627 (VEC), 2022 WL 2702609, at *6 (S.D.N.Y. July 12, 2022).

43

plaintiff paid filing fee, "as plaintiff presents no arguably meritorious issue."). Here, all of Goodman's claims lack merit and no further judicial resources should be expended in evaluating them in additional motion practice. Accordingly, the case should be dismissed in its entirety.

### III.   CONCLUSION

For the reasons stated herein, the pending motions to dismiss should all be granted, and Goodman should be denied leave to further amend his complaint. In addition, Goodman's motion for sanctions should be denied and Wittes's and Jankowicz's motion for sanctions in the form of a filing injunction should be granted and a filing injunction as detailed in this Report should be imposed. Goodman's motion for a preliminary injunction against Sweigert and for a default judgment against Bouzy and Bot Sentinel should be denied.

The following motions, which are all non-dispositive, are denied: Goodman's motion for a court-ordered psychiatric evaluation; Goodman's and Sweigert's motions for judicial notice; Sweigert's motions to transfer; and Goodman's motions to quash. Bouzy and Bot Sentinel's motion to vacate the default entered against them is granted.

The Clerk is respectfully directed to close docket numbers 118, 141, 168, 186, 191 and 198 and mark them all as "denied."

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays)

from service of this Report and Recommendation to file any objections as to the
motions to dismiss by Bouzy, Bot Sentinel, Berlin, Miskhin, Sweigert, Wittes, and
Jankowicz, Goodman's motions for leave to further amend his complaint,
Goodman's motion for sanctions, Wittes's and Jankowicz's motion for sanctions, and
Goodman's motion for a preliminary injunction.  *See* Fed. R. Civ. P. 6(a), (b), (d).  A
party may respond to any objections within fourteen (14) days after being served.
Such objections, and any responses to objections, which will be subject to *de novo*
review, shall be filed with the Clerk of Court, with courtesy copies delivered to the
chambers of the Honorable Analisa Torres and the undersigned, United States
Courthouse, 500 Pearl Street, New York, New York 10007.  Any requests for an
extension of time for filing objections must be directed to Judge Torres.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS
WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE
APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v.
Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,
Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

**IT IS SO ORDERED** as to Goodman's motion for a court-ordered psychiatric evaluation; Goodman's and Sweigert's motions for judicial notice; Sweigert's motions to transfer; Goodman's motions to quash; and Bouzy and Bot Sentinel's motion to vacate default.  As to these motions, the parties have fourteen (14) days (including weekends and holidays) to file any objections, which will be reviewed for clear error pursuant to Rule 72(a) of the Federal Rules of Civil Procedure.

Dated:  New York, New York
        May 8, 2023

_____
JAMES L. COTT
United States Magistrate Judge