UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIDEON RAPAPORT,

                Plaintiff,

    - vs. -

ABIGAIL FINKELMAN,

                Defendant.

No.: 1:24-cv-05942 (JGLC)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ABIGAIL FINKELMAN'S RENEWED MOTION
FOR RULE 11 SANCTIONS AGAINST PLAINTIFF GIDEON RAPAPORT AND
PLAINTIFF'S FORMER COUNSEL
<u>RICHARD A. ALTMAN AND THE LAW OFFICE OF RICHARD A. ALTMAN</u>**

Max Rodriguez
LAW OFFICE OF MAX RODRIGUEZ PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
max@maxrodriguez.law
(646) 741-5167
*Attorney for Defendant Abigail Finkelman*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD............................................................................................................ 3

PROCEDURAL HISTORY.................................................................................................... 4

ARGUMENT ........................................................................................................................ 7

I.    THE COURT SHOULD IMPOSE RULE 11 SANCTIONS AGAINST PLAINTIFF AND
MR. ALTMAN ON ANY OR ALL OF THREE INDEPENDENT GROUNDS ......................... 7

    A.    Plaintiff's defamation claim was frivolous ........................................................ 8

    B.    Plaintiff's false light and invasion of privacy claim was frivolous ................................. 11

    C.    Plaintiff's allegation of injury in this case was false and contradicted by his own filings in
other cases ....................................................................................................................... 12

    D.    Plaintiff, with Mr. Altman's initial assistance, pursued his claims for an improper purpose
and continued to pursue them *pro se* for an improper purpose.................................. 13

II.    TO ENSURE DETERRENCE, THE COURT SHOULD AWARD FULL ATTORNEY'S
FEES AND COSTS AND SEPARATELY IMPOSE WHATEVER SANCTIONS IT DEEMS
APPROPRIATE.................................................................................................................... 16

III.    MONETARY SANCTIONS IN THIS CASE SHOULD BE JOINT AND SEVERAL .. 18

CONCLUSION..................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*An v. Despins,*
No. 22-cv-10062, 2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023)........................................ 13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
579 F.3d 143 (2d Cir. 2009)................................................................................................ 4

*Baiul v. NBC Sports,*
No. 15-cv-9920-KBF, 2016 WL 1587250 (S.D.N.Y. Apr. 19, 2016) .......................... 11, 12

*Cano v. BLF Realty Holding Corp.,*
243 A.D.2d 390 (1st Dep't 1997)........................................................................................ 3

*Chemiakin v. Yefimov,*
932 F.2d 124 (2d Cir. 1991).............................................................................................. 10

*Cholowsky v. Civiletti,*
887 N.Y.S.2d 592 (2d Dep't 2009) ..................................................................................... 9

*Fishof v. Abady,*
720 N.Y.S.2d 505 (1st Dep't 2001)..................................................................................... 9

*Four Keys Leasing & Maint. Corp. v. Simithis,*
849 F.2d 770 (2d Cir. 1988)................................................................................................ 4

*Galin v. Hamada,*
283 F. Supp. 3d 189 (S.D.N.Y. 2017)............................................................................ 2, 18

*Galin v. Hamada,*
753 Fed. Appx. 3 (2d Cir. 2018).................................................................................... 2, 16

*Galonsky v. Williams,*
No. 96-cv-6207, 1997 WL 759445 (S.D.N.Y. Dec. 10, 1997) ........................................ 1, 8

*Golan v. Daily News, L.P.,*
77 Misc. 3d 258 (N.Y. Sup. Ct. 2022) ......................................................................... 3, 8, 11

*Goldman v. Abraham Heschel Sch.,*
227 A.D.3d 544 (1st Dep't 2024) ................................................................................. 3, 11

*Gong v. Sarnoff,*
No. 23-cv-343-LJL, 2023 WL 5372473 (S.D.N.Y. Aug. 22, 2023)........................ 8, 13, 17

*Gray v. Millea*,
    892 F. Supp. 432 (N.D.N.Y. 1995) ................................................................ 10

*Gutierrez v. Fox*,
    141 F.3d 425 (2d Cir. 1998) ......................................................................... 4

*In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*,
    712 F. Supp. 2d 255 (S.D.N.Y. 2010) .......................................................... 18

*Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*,
    875 F.2d 388 (2d Cir. 1989) ......................................................................... 4

*Int'l Techs. Mktg., Inc. v. Cognyte Techs. Israel Ltd.*,
    No. 1:15-cv-2457-GHW, 2022 WL 11280876 (S.D.N.Y. Oct. 19, 2022) ............ 4

*Johnson v. A.W. Chesterton Co.*,
    18 F.3d 1362 (7th Cir. 1994) ....................................................................... 10

*Kearney v. Todd L. Smith, P.A.*,
    624 F. Supp. 1008 (S.D.N.Y. 1985) ....................................................... 11, 17

*Kinsey v. New York Times Co.*,
    991 F.3d 171 (2d Cir. 2021) ..................................................................... 9, 11

*Misek-Falkoff v. McDonald*,
    63 Fed. Appx. 551 (2d Cir. 2003) ............................................................ 9, 17

*Pentagen Techs. Int'l Ltd. v. United States*,
    172 F. Supp. 2d 464 (S.D.N.Y. 2001) .......................................................... 17

*Theis v. Smith*,
    676 F. Supp. 874 (N.D. Ill. 1988) ............................................................... 11

*UMG Recordings, Inc. v. Frawley*,
    No. 1:08-cv-0765, 2012 WL 13028237 (N.D.N.Y. Mar. 23, 2012) ................... 3

*Zerman v. Sullivan & Cromwell*,
    677 F. Supp. 1316 (S.D.N.Y. 1988) ......................................................... 9, 10

## **FEDERAL RULES**

Fed. R. App. P. 38 ............................................................................................ 2

Fed. R. Civ. P. 11 .................................................................................... *passim*

Defendant Abigail Finkelman respectfully submits this Memorandum of Law in support of her renewed motion for sanctions against Plaintiff *pro se* Gideon Rapaport, as well as his former counsel, Richard A. Altman, and his firm the Law Office of Richard A. Altman, pursuant to Rule 11 of the Federal Rules of Civil Procedure.

## INTRODUCTION

"There is a clear line between zealous advocacy and abuse of the legal system that an attorney" or a *pro se* party "may not cross." *Galonsky v. Williams*, No. 96-cv-6207, 1997 WL 759445, at *1 (S.D.N.Y. Dec. 10, 1997). This case, in every respect, represents an abuse of the legal system that crosses that line. Plaintiff Gideon Rapaport, first represented by Richard A. Altman, and now *pro se*, filed a suit and pursued claims against Ms. Finkelman that are now confirmed to be patently frivolous. As this Court has now held, not only are they barred by statutory immunity under state law, but they also failed to satisfy any of the basic elements necessary to even arguably state a claim. On this basis, this Court granted Ms. Finkelman's motion to dismiss for failure to state a claim in its entirety and with prejudice. *See* ECF no. 52.

While this alone would be sufficient to warrant sanctions, it does not stop there. Plaintiff's complaint, filed by Mr. Altman and now pursued *pro se*, was pursued for improper purposes, namely to harass, intimidate, and inconvenience Ms. Finkelman in retaliation for her public comments mocking Plaintiff's prior lawsuit, *Rapaport v. Iyer et al.*, No. 1:23-cv-06709 (S.D.N.Y.) ("*Rapaport I*"). Not only does this Circuit permit the inference of improper purposes when claims are frivolous, but improper purposes can be readily inferred from the pleadings themselves. Plaintiff's complaint includes a constellation of irrelevant allegations that reveal his and Mr. Altman's dislike of Ms. Finkelman, their displeasure with her comments, and their belief she would not be positioned to fight back when they filed this suit.

These inferences were then further confirmed when Ms. Finkelman obtained counsel and began actively engaging in her defense. During the first phone call between the undersigned counsel for Ms. Finkelman and Mr. Altman on Plaintiff's behalf, Mr. Altman suggested, in sum and substance, that perhaps this dispute could be resolved if Ms. Finkelman deleted <u>all</u> of her comments about *Rapaport I*. This included comments that Plaintiff's own complaint admitted were not defamatory and not actionable.

This cynical abuse of the legal system, by Mr. Altman and by Plaintiff (as both a represented and now *pro se* party) cannot be tolerated. Dismissal, although warranted, is not a sufficient remedy. Ms. Finkelman was dragged into court and forced to retain a lawyer to defend herself against now-dismissed and frivolous claims, having done nothing except speak her mind on a matter of public concern. The Court's time and resources have also been wasted adjudicating claims with no merit.

Without appropriate deterrence, Plaintiff and Mr. Altman will walk away from this case still believing this Court is their plaything to be used at their whims to achieve any aims necessary, even when those aims are to chill free speech and intimidate critics. And unfortunately, this is not the first time Mr. Altman has faced sanctions in this District for pursuing frivolous claims on behalf of his clients,[1] nor is it the first time he has pursued frivolous defamation claims with some of the same defects present here that resulted in anti-SLAPP

---

[1] *Galin v. Hamada*, 283 F. Supp. 3d 189, 204 (S.D.N.Y. 2017) (granting motion for sanctions "requiring Galin and his counsel [Richard A. Altman], jointly and severally, to reimburse Hamada for his reasonable attorney's fees and other expenses" after time that claims were clearly frivolous), *aff'd*, 753 Fed. Appx. 3, 8–9 (2d Cir. 2018) (imposing sanctions under Fed. R. App. P. 38 because Altman's appellate arguments were "so devoid of legal and factual support that sanctions are warranted").

awards,[2] nor is it the first time his clients have faced sanctions, or at least their specter, for

improper litigation tactics.[3]

This Court should grant the motion for sanctions jointly and severally against Plaintiff,

Mr. Altman, and the Law Office of Richard A. Altman, award Ms. Finkelman full attorney's

fees, costs, and expenses associated with the defense of this action, and impose any other

monetary and nonmonetary sanctions the Court deems appropriate.

## LEGAL STANDARD

Rule 11 requires an attorney or *pro se* party filing or pursuing a pleading before this

Court to certify that "to the best of the person's knowledge, information, and belief, formed after

an inquiry reasonable under the circumstances," among other things, "it is not being presented

for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the

cost of litigation," "the claims, defenses, and other legal contentions are warranted by existing

law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for

establishing new law," and/or "the factual contentions have evidentiary support…." Fed. R. Civ.

P. 11b), (b)(1), (b)(2), (b)(3). Rule 11 sanctions "require[] only a showing of objective

---

[2] *Goldman v. Abraham Heschel Sch.*, 227 A.D.3d 544 (1st Dep't 2024) (affirming dismissal of defamation claims by plaintiff represented by Richard A. Altman because statements were opinion and substantially true, awarding attorney's fees and costs to defendants); *Golan v. Daily News, L.P.*, 77 Misc. 3d 258, 264 (N.Y. Sup. Ct. 2022) (dismissing defamation claim asserted by plaintiff represented by Richard A. Altman based on Civil Service Law § 74 immunity, truth, lack of susceptibility to defamatory meaning, and awarding attorney's fees and costs to defendants), *aff'd*, 214 A.D.3d 558 (N.Y. App. Div. 1st Dep't 2023).

[3] *UMG Recordings, Inc. v. Frawley*, No. 1:08-cv-0765, 2012 WL 13028237, at *3 (N.D.N.Y. Mar. 23, 2012) (warning that "an inquiry into sanctions is not out of the realm of possibility" after defendant, represented by Richard A. Altman, "discarded her computer … only six months before [] assertedly first learn[ing] of this litigation"); *Cano v. BLF Realty Holding Corp.*, 243 A.D.2d 390, 390 (1st Dep't 1997) (affirming grant of discovery sanctions precluding plaintiffs, represented by Richard A. Altman, from introducing evidence in support of their claims because of "willful and contumacious" dilatory conduct and failure to comply with discovery requests).

unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009).

Attorneys or *pro se* parties have an "affirmative duty … to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) (cleaned up). And when "it should have been patently obvious to [anyone] who had familiarized himself with the law" that the action was frivolous, the continued pursuit of the action is objectively unreasonable and sanctionable. *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988). Further, it is also sanctionable "where an attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that [the claim is] groundless." *Int'l Techs. Mktg., Inc. v. Cognyte Techs. Israel Ltd.*, No. 1:15-cv-2457-GHW, 2022 WL 11280876, at *6 (S.D.N.Y. Oct. 19, 2022) (quoting *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 597 (S.D.N.Y. 2013)).[4]

If the Court determines that Rule 11 has been violated, it "may impose an appropriate sanction," including payment of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation," as well as nonmonetary sanctions. Fed. R. Civ. P. 11(c)(1), (c)(4). This Court has "discretion to award that portion of a defendant's attorney's fee thought reasonable to serve the sanctioning purpose of the Rule," and the "scope of that discretion is broad." *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 392 (2d Cir. 1989).

## PROCEDURAL HISTORY

Plaintiff filed this action and his Complaint on August 5, 2024. ECF no. 1 ("Complaint"). On August 28, 2024, Ms. Finkelman filed a proposed stipulation and order agreeing to accept

---

[4] As reflected by the authorities cited in this paragraph, the filing and assertion of frivolous claims is one distinct basis for sanctions, and failure to withdraw is another basis for sanctions. The movant does not require both because either is sufficient.

service and setting her deadline to answer or move to dismiss as October 28, 2024. ECF no. 6. The Court issued the proposed order the next day. ECF no. 7.

On September 9, 2024, Plaintiff's now-former counsel Mr. Altman notified the Court in a letter motion to withdraw that Plaintiff had terminated his representation. ECF no. 8. On September 16, 2024, Ms. Finkelman filed a letter noting she did not oppose the motion to withdraw subject to a limited request that the Court retain jurisdiction over Mr. Altman for purposes of a future motion for sanctions under Rule 11. ECF no. 11. On September 17, 2024, the Court granted the motion to withdraw and granted Ms. Finkelman's request to retain jurisdiction over Mr. Altman, ordering that a motion for sanctions be filed on or before October 28, 2024. ECF no. 13. Since then, Mr. Rapaport has proceeded *pro se* in this case.

On September 27, 2024, the undersigned counsel provided notice of the motion for sanctions under Rule 11(c)(2), enclosing the motion itself and a letter describing all substantive bases for the motion. On September 30, 2024, Mr. Altman called the undersigned counsel and acknowledged receipt of the sanctions motion.

On October 4, 2024, Mr. Altman filed a "Letter Motion for Conference" seeking either a conference or modification of the Court's prior order in order to release himself from the Court's jurisdiction. ECF no. 14. The same day, Ms. Finkelman opposed Mr. Altman's motion. ECF no. 15. On October 9, 2024, the Court denied Mr. Altman's motion. ECF no. 16.[5]

---

[5] Although it is outside the specific scope of requested relief in this motion, it is important to emphasize that this letter motion also included "legal contentions [not] warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law…." Fed. R. Civ. P. 11(b)(2). As the Court noted in its order, "the substance of" Mr. Altman's attempt to escape the accountability sought by this motion was "without merit." ECF no. 16.

On October 18, 2024, the twenty-one-day safe harbor period under Rule 11 expired. The Complaint — the subject of Ms. Finkelman's Rule 11 motion — was not withdrawn. On October 21, 2024, Ms. Finkelman filed a motion to dismiss the complaint with prejudice for failure to state a claim, along with an accompanying memorandum of law, declaration, and supporting exhibits. ECF no. 17–19.

On October 21, 2024, Ms. Finkelman also filed a first motion for sanctions. ECF no. 20–22. On October 22, 2024, the Court docketed a motion sent by Plaintiff to the Court on October 17, 2024, for sanctions against the undersigned, purportedly based on some combination of the above-mentioned Rule 11 letter and the substantive legal issues raised in the letter (which were then raised in Ms. Finkelman's motion to dismiss). ECF no. 24. On October 25, 2024, the Court stayed briefing on both motions pending the Court's decision on the motion to dismiss. ECF no. 30. On February 12, 2025, after the Court's order on February 10, ECF no. 45, Ms. Finkelman filed a letter motion to stay discovery, ECF no. 46, which the Court granted on February 27, ECF no. 49.

On August 29, 2025, the Court issued an opinion and order: (1) granting Ms. Finkelman's motion to dismiss in its entirety and with prejudice; (2) denying as moot the pending motions for sanctions; and (3) directing Ms. Finkelman to file a renewed motion for sanctions should she wish by September 15, 2025. ECF no. 52 ("MTD Decision"). This deadline was then amended by the Court *sua sponte* to October 3, 2025. ECF no. 54.

On September 4, 2025, the undersigned sent emails to Plaintiff (with a further copy sent to Plaintiff by Federal Express) and Mr. Altman enclosing a draft of the renewed motion for sanctions and associated brief. *See* Declaration of Max Rodriguez in Support of Defendant

Abigail Finkelman's Renewed Motion for Sanctions ("Rodriguez Dec."), Ex. 1–5. Neither

Plaintiff nor Mr. Altman responded. Rodriguez Dec., ¶ 7.

## ARGUMENT

**I.     THE COURT SHOULD IMPOSE RULE 11 SANCTIONS AGAINST PLAINTIFF AND MR. ALTMAN ON ANY OR ALL OF THREE INDEPENDENT GROUNDS**

This Court should exercise its discretion to impose sanctions on Plaintiff, his former

counsel Mr. Altman, and Mr. Altman's firm on any or all of three independent grounds. First,

Plaintiff's claims in this case are completely frivolous.[6] As the Court held, the Complaint

asserted claims that are barred by New York law, MTD Decision at 5–11, and failed to plausibly

allege the required elements, MTD Decision at 11–14. These claims were asserted by Plaintiff

when he was represented by Mr. Altman, who had a duty under Rule 11 and professional ethics

to evaluate the validity of the claims Plaintiff wished to pursue, and to decline to pursue any

frivolous claims.

Second, Plaintiff's Complaint alleges an injury that is demonstrably false. Plaintiff

alleged the same injury using almost verbatim language in *Rapaport I* in a manner that makes his

alleged injury in this case not just implausible, but demonstrably false because he (through Mr.

Altman) alleged in *Rapaport I* that the same injury had independently occurred for reasons

unrelated to Ms. Finkelman a year earlier than Ms. Finkelman's posts.

Third, Plaintiff's Complaint was pursued for an improper purpose, namely to harass,

intimidate, and inconvenience Ms. Finkelman with the burden and expense of litigation in

retaliation for making legally and Constitutionally-protected public comments that clearly

bothered Plaintiff and Mr. Altman. Precedents in this Circuit make clear that this Court may infer

---

[6] This point is broken out into two subsections for each of Plaintiff's claims. *See supra* § I(A), I(B).

an improper purpose from the frivolousness of the claims. But beyond that, the improper purposes at play here are apparent on the face of the pleadings and from Mr. Altman's conduct during his brief representation of Plaintiff.

### A.    Plaintiff's defamation claim was frivolous

As the Court held in the MTD Decision, Plaintiff's defamation claim is barred as a matter of law and fails to state a claim for numerous reasons. MTD Decision at 6–14. A claim is frivolous if "under an 'objective standard of reasonableness' … it is 'clear … that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'" *Gong v. Sarnoff*, No. 23-cv-343-LJL, 2023 WL 5372473, at *10 (S.D.N.Y. Aug. 22, 2023) (quoting *Galonsky v. Williams*, 1997 WL 759445, at *3 (S.D.N.Y. Dec. 10, 1997)). A frivolous claim violates Rule 11(b)(2)'s requirement that "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law…." Fed. R. Civ. P. 11(b)(2).

As the Court held, Plaintiff's defamation claim was barred by New York Civil Rights Law § 74, MTD Decision at 8–11, failed to plead an actionable defamatory statement, MTD Decision at 11–13, and failed to show Ms. Finkelman's statement was not true, MTD Decision at 13–14. Although the standard of unreasonableness is an objective one, Mr. Altman's pursuit of the claims in this case was all the more galling because he previously represented a plaintiff who lost a defamation case in New York state court on precisely this issue only three years ago, resulting in an award of attorney's fees against his client because the claims were found not to have a substantial basis in law. *See Golan*, 77 Misc. 3d at 264–66. The Court's analysis in the MTD Decision confirms that the state of the law was clear, unambiguous, and foreclosed the viability of Plaintiff's claims before they were filed.

On the question of the application of Civil Rights Law § 74, the Court cited to *Kinsey v. New York Times Co.*, 991 F.3d 171 (2d Cir. 2021). *See* MTD Decision at 9, 11. The decision in *Kinsey*, in no uncertain terms, applied section 74 because the writing in question in that case "note[d] that it [was] reporting on a specific court proceeding" and that "the context and structure … as a whole … [was] organized" around discussing filings in the court proceeding. *Kinsey*, 991 F.3d at 179–80. As the Court explained, the same logic applied here. MTD Decision at 10–11. This was supported by the Court's reliance on intermediate appellate decisions from the New York Supreme Court Appellate Divisions, MTD Decision at 9–11[7], which are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Misek-Falkoff v. McDonald*, 63 Fed. Appx. 551, 552–53 (2d Cir. 2003) (summary order) (cleaned up) (quoting *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399 (2d Cir. 2001)).

Precedent in this District counsels that sanctions under Rule 11 are appropriate when defamation or similar claims run directly into section 74 immunity with no credible argument around it. In the *Zerman* case, Judge Haight addressed precisely this situation. *Zerman v. Sullivan & Cromwell*, 677 F. Supp. 1316 (S.D.N.Y. 1988). The court held, among other things, that the plaintiff had failed to state any claims against the defendants who moved for sanctions, and was not entitled to leave to amend because the allegedly defamatory statements were immunized by section 74, true, non-actionable, and so on. *See id.* at 1319–24. The court granted sanctions for these defendants (lawyers and a law firm). The court explained that the plaintiff

---

[7] The Court cited to *Cholowsky v. Civiletti*, 887 N.Y.S.2d 592 (2d Dep't 2009), and *Fishof v. Abady*, 720 N.Y.S.2d 505 (1st Dep't 2001), on the critical question of so-called "background material," i.e., when a matter at issue in a defamation claim is not directly drawn from a court proceeding, but is necessarily relevant to it.

"could not have held a reasonable belief that liability could be based on the lawyers' statements reported in the article. Those statements are either clearly protected reports of judicial proceedings or clearly protected expressions of opinion." *Id.* at 1324. Because the plaintiff "advance[d] no argument, good faith or otherwise, that would support the modification or reversal of those protections" the court granted the lawyer and law firm defendants' motions for sanctions. *Id.* Ms. Finkelman's statements in this case are similarly "clearly protected" by section 74, and it was objectively unreasonable to assert claims related to those statements.

This Court also assessed whether, in the alternative to section 74, the defamation claim was actionable and confirmed — twice over — that it was not. MTD Decision at 11–14. As the MTD Decision explained, "Finkelman did not write or suggest anything that would cause an ordinary reader to have a different opinion than one they would have if they merely read the *Rapaport I* complaint," which made the statement non-actionable. *Id.* at 13. Further, even if actionable, the Court concluded that the statement at issue was true because "Defendant described the photograph as 'fake'" and that was the "'truth'—as Plaintiff essentially concedes…." *Id.* at 14.

Relevant here, a district judge in the Northern District of New York granted a motion for sanctions against a defamation plaintiff who "failed to point to any even arguably defamatory statement by any defendant." *Gray v. Millea*, 892 F. Supp. 432, 437 (N.D.N.Y. 1995). Federal courts in a variety of similar circumstances facing "patently frivolous" defamation pleadings have affirmed or imposed sanctions. *Chemiakin v. Yefimov*, 932 F.2d 124, 126 (2d Cir. 1991); *see also, e.g.*, *Johnson v. A.W. Chesterton Co.*, 18 F.3d 1362, 1366 (7th Cir. 1994) (affirming sanctions for barred and frivolous defamation claim, explaining "[i]t was precisely this reckless willingness to impose the burden of unwarranted litigation upon others which Rule 11 was

10

designed to prevent"); *Theis v. Smith*, 676 F. Supp. 874, 877 (N.D. Ill. 1988) ("Rule 11 sanctions

are appropriate. Every one of the claims adjudicated here was foreclosed by prior case law….");

*Kearney v. Todd L. Smith, P.A.*, 624 F. Supp. 1008, 1013–16 (S.D.N.Y. 1985) (finding libel and

slander claims were barred and frivolous and imposing sanctions for "fees and other costs

[defendants] incurred in being forced to litigate this meritless action"). Again, Mr. Altman, who

filed the pleadings in this case on behalf of Plaintiff, is no stranger to lacking defamation claims

that result in awards of attorney's fees for the defendant. *See, e.g.*, *Goldman*, 227 A.D.3d at 544;

*Golan*, 77 Misc. 3d at 272–73.

As the Court's reasoning in the MTD Decision showed, this was not a close call.

Plaintiff's defamation claim was precluded by existing Second Circuit and New York state

precedent, and even leaving that aside was not even plausibly actionable.

**B.    Plaintiff's false light and invasion of privacy claim was frivolous**

As the Court also held, Plaintiff failed to state a claim for "False Light and Invasion of

Privacy" because New York law applied, and New York does not recognize this claim. MTD

Decision at 5–6.[8] The MTD Decision again cited *Kinsey*, noting that each of the factors courts

consider under New York's choice-of-law analysis required application of New York law. MTD

Decision at 6 (citing *Kinsey*, 991 F.3d at 177).

The MTD Decision also pointed out that this Court had already rejected Plaintiff's

attempt to invoke New Jersey law in a prior decision in *Rapaport I*. MTD Decision at 5–6. He

continued pursuing it anyway. The attempt to assert New Jersey law was frivolous and

sanctionable. *See Baiul v. NBC Sports*, No. 15-cv-9920-KBF, 2016 WL 1587250, at *12, 15–16

---

[8] Even if the Court had not dismissed the "False Light and Invasion of Privacy" claim on this basis, the Court's analysis of the defamation claim would have applied, and the claim would have been dismissed on that basis.

(S.D.N.Y. Apr. 19, 2016) (granting motion for sanctions and noting choice of law argument was frivolous), *aff'd sub nom. Baiul v. NBC Sports, a division of NBCUniversal Media LLC*, 708 Fed. Appx. 710 (2d Cir. 2017).[9] Plaintiff's "False Light and Invasion of Privacy" claim was as frivolous and sanctionable as his defamation claim and it was objectively unreasonable to assert it.

### C.    Plaintiff's allegation of injury in this case was false and contradicted by his own filings in other cases

Separately, the Complaint included facially false allegations that purported to attribute supposed injuries Plaintiff suffered to Ms. Finkelman. In particular, Plaintiff alleged that "[a]s a direct result of defendant's posting, plaintiff has not yet sought admission to the New York bar, despite having passed the bar examination, due to his fear of the adverse effect of defendant's actions upon the Committee on Character and Fitness." Complaint ¶ 7. However, Plaintiff — represented at the time by Mr. Altman in both cases — made this same near-verbatim allegation in his amended complaint in *Rapaport I. See Rapaport I*, ECF no. 38, ¶ 14. The amended complaint in *Rapaport I* was filed about two and a half months before Plaintiff filed the complaint in this case, and arose from supposed injuries that Plaintiff alleged occurred in July and August 2022, i.e., the messages, supposedly fake photograph, and other acts that form the basis of his claims in *Rapaport I. See id.* ¶¶ 32–77.

---

[9] It is also worth noting that the court in *Baiul* imposed sanctions on plaintiff's former attorney, <u>post-withdrawal</u>, <u>after</u> he argued he had attempted and failed to obtain plaintiff's consent to dismiss the complaint with prejudice after receiving Rule 11 notice. *Baiul*, 2016 WL 1587250, at *16 ("Mr. Markovich's eleventh hour realization that his vexatious conduct throughout this litigation could have personal consequences does not excuse or counterbalance his preceding bad faith conduct described above.").

If Plaintiff was already supposedly injured by not seeking admission to the New York bar because of what he alleges in *Rapaport I* happened in July and August 2022, he cannot credibly allege that anything Ms. Finkelman said or did in August 2023 independently caused the same injury over a year later. This copy-and-paste litigation tactic runs afoul of Rule 11(b)(3)'s requirement that "factual contentions have evidentiary support…" Fed. R. Civ. P. 11(b)(3).

**D.     Plaintiff, with Mr. Altman's initial assistance, pursued his claims for an improper purpose and continued to pursue them *pro se* for an improper purpose**

Considering the now-confirmed lack of merit to the claims Plaintiff asserted against Ms. Finkelman, it is unavoidable to conclude that he, with Mr. Altman's assistance, filed this case and pursued it *pro se* for an improper purpose in violation of Rule 11(b)(1). "A court may infer an improper purpose if, in light of Plaintiffs' conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit." *An v. Despins*, No. 22-cv-10062, 2023 WL 4931832, at *6 (S.D.N.Y. Aug. 2, 2023). Where the plaintiff's claims "are legally frivolous and factually flawed," there is "no difficulty finding that Plaintiff [] initiated [the] action for an improper purpose." *Gong*, 2023 WL 5372473, at *13. The *Gong* decision warrants further focus. In that case, the court reached the clear logical inference that the plaintiff had not filed his complaint "to redress any injury … or to obtain judicial relief, but to harass [] Defendants" for doing something completely within their rights to do "and to deter others from doing the same." *Id.* at *14.

For a variety of reasons laid out below, it is clear from the face of the Complaint, as well as from Mr. Altman's conduct during his brief tenure as Plaintiff's attorney in this case, that Plaintiff with Mr. Altman's assistance filed and continued to pursue this case *pro se* to harass Ms. Finkelman for mocking his *Rapaport I* lawsuit as the Court confirmed she is allowed to do.

13

First, in describing Ms. Finkelman in the Complaint, Plaintiff mentioned that she is "a member of the New York State Bar" and "an employee of the Legal Aid Society." Complaint ¶ 2. These facts had no bearing on the claims, raising the question why a plaintiff would reference this information. To refer to Ms. Finkelman's status as a licensed attorney admitted to practice law raised the clear suggestion Plaintiff intended to damage or endanger her status as an attorney in good standing by filing this case. Further, her employment as an attorney at the Legal Aid Society similarly had no relevance to Plaintiff's claims. Instead, it spoke to either bizarre personal contempt for her important work representing children in foster care, or a calculated and cynical choice to sue a person employed by a public interest legal organization, who would be in a weaker financial position to defend herself from his frivolous claims than alternative targets.

Second, several allegations in the Complaint transparently reveal Plaintiff and Mr. Altman's personal disagreement with and dislike of Ms. Finkelman. For example, for no relevant legal purpose, the Complaint discussed the "arguably offensive" quality of Ms. Finkelman's account name, Complaint ¶ 11, elaborated in detail about posts critical of them that are not relevant, *id.* ¶¶ 12–14, 24–26, quoted Ms. Finkelman's posts that include her opinions about Mr. Altman's appearance as Plaintiff's attorney in *Rapaport I*, *id.* ¶ 24, and quoted her posts about the filing of the *Rapaport I* amended complaint, noting that she "apparently closely monitors the public docket," *id.*; *see also id.* ¶ 26. Plaintiff made similar rants in his filings during the course of this case, further illustrating his motivating contempt for Ms. Finkelman. *See, e.g.*, ECF no. 33 at 10–11 (complaining Ms. Finkelman "did not positively comment upon a single fact or even allegation by the plaintiff," "express[ed] such vile hatred and contempt," and made what he called "malicious, obsessive, and intensely personal commentary"); ECF no. 47 at 2 (admitting his displeasure that Ms. Finkelman "compared [him] to the irredeemably evil villain 'Sephiroth'

from the *Final Fantasy* series of Japanese video games" and "repeatedly brought the thread … to the top of her feed").

These irrelevant "allegations" and statements transparently reveal Plaintiff's displeasure with Ms. Finkelman's interest in and commentary about *Rapaport I* (and seemingly Mr. Altman's displeasure at his mention). In the absence of any valid or even arguably valid claim against her, filing and pursuing a lawsuit with these allegations and statements is telling.

Third, in filing this frivolous action against Ms. Finkelman, and in tying her directly to the account at issue — which was anonymous — Plaintiff essentially doxxed[10] Ms. Finkelman. The Complaint directly and publicly associated her with an online account she had intentionally chosen to keep anonymous. Because Plaintiff's claims had no conceivable merit, the decision to proceed in this manner speaks to the desire to harm, humiliate, and intimidate Ms. Finkelman by revealing her identity against her will.

Fourth, during his brief tenure as Plaintiff's attorney in this case, Mr. Altman's conduct further reveals that Plaintiff filed this lawsuit (and Mr. Altman helped him pursue it) for an improper purpose. During an August 27, 2024, phone call between the undersigned counsel and Mr. Altman, which was initiated to discuss waiver of service and a schedule by which to respond to the Complaint, Mr. Altman told the undersigned, in sum and substance, that it would go a long way to resolve this case if Ms. Finkelman would delete all of her posts about *Rapaport I*. Rodriguez Dec., Ex. 8 ¶ 7. The undersigned informed him in response that, in sum and substance, his early assessment was that the case was meritless, and Plaintiff should consider dismissing it. *Id.*

---

[10] Doxxing refers to the nonconsensual publication of personally identifiable information. *See* Wikipedia, Doxxing, *available at* https://en.wikipedia.org/wiki/Doxing.

Mr. Altman's comment speaks volumes. Among other purposes described above, Plaintiff's strategy in filing this lawsuit appears to have been to intimidate Ms. Finkelman by forcing her to defend herself in a lawsuit for which he believed she could not afford to hire an attorney (noting the previous "Legal Aid" allegation), and that he would leverage that to demand that she delete her entire thread, including comments that the Complaint noted "were within her First Amendment rights, despite their critical nature." Complaint ¶ 13.

Taking together the frivolousness of Plaintiff's claims and the litany of transparent suggestions of improper, cynical, and unethical motives for pursuing those claims, Plaintiff filed this lawsuit for improper purposes in violation of Rule 11(b)(1), and Mr. Altman while representing him helped him do it.

## II.    TO ENSURE DETERRENCE, THE COURT SHOULD AWARD FULL ATTORNEY'S FEES AND COSTS AND SEPARATELY IMPOSE WHATEVER SANCTIONS IT DEEMS APPROPRIATE

In light of the violations of Rule 11(b)(1), (b)(2), and (b)(3) laid out above, the Court should impose sanctions sufficient to deter Plaintiff from further harassment of Ms. Finkelman and deter Mr. Altman from pursuing any more frivolous claims on behalf of clients. Past sanctions in this District and by the Second Circuit have unfortunately not gotten that message across to Mr. Altman. *See Galin*, 283 F. Supp. at 204; *Galin*, 753 Fed. Appx. at 8–9.

As mentioned above, the Court has wide discretion to impose an "appropriate" sanction sufficient to "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(1), (4). The sanction "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

16

Ms. Finkelman respectfully submits that the appropriate sanctions in this case should include an award of all attorney's fees, costs, and other expenses that she has incurred in defending against this patently frivolous, harassing, and speech-chilling action. This is an appropriate remedy in granting a motion for sanctions when the complaint has "absolutely no chance of success under existing precedents." *Pentagen Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 473–74 (S.D.N.Y. 2001) (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 570 (2d Cir. 1996), *aff'd*, 63 Fed. Appx. 548 (2d Cir. 2003); *see also Kearney*, 624 F. Supp. at 1013–16 (finding libel and slander claims were barred and frivolous, and imposing sanctions for "fees and other costs [defendants] incurred in being forced to litigate this meritless action"). And as the 1993 Advisory Committee Notes to Rule 11 explain, especially when an 11(b)(1) violation has occurred, "deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation." Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendments.

If the Court grants the motion for sanctions and awards attorney's fees, costs, and other expenses related to the defense of this action, the undersigned will provide an application for fees, expenses, and costs laying out the total amount when the Court requests it. *See Gong*, 2023 WL 5372473, at *15 ("Moving Defendants are directed to file an application for fees and costs within fourteen days of the date of this Order.").

Finally, the Court should, in its discretion and in addition to attorney's fees, expenses, and costs, impose fines payable to the Court on Plaintiff and Mr. Altman, and order any nonmonetary sanctions the Court deems appropriate, including but not limited to referrals to the New York state and federal bars to consider further disciplinary action against Mr. Altman.

Although Ms. Finkelman's injury is substantial, frivolous litigation also places a burden "on the Court and its personnel" that must be deterred. *Gong*, 2023 WL 5372473, at *16.

## III.    MONETARY SANCTIONS IN THIS CASE SHOULD BE JOINT AND SEVERAL

Ms. Finkelman respectfully requests that in granting the motion for sanctions, the Court impose sanctions jointly and severally on Plaintiff, Mr. Altman, and the Law Office of Richard A. Altman. *See* Fed. R. Civ. P. 11(c)(1) (directing that "a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee" absent "exceptional circumstances"); *In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 271 (S.D.N.Y. 2010) ("Where multiple parties or attorneys are responsible for Rule 11 violations, those parties may be held jointly and severally liable in the court's discretion."). Mr. Altman is familiar with this remedy, having previously been the subject of a joint and several award of attorney's fees, expenses, and costs based on a Rule 11 violation in this District, which was affirmed by the Second Circuit. *Galin*, 283 F. Supp. 3d at 204.

And although, typically, courts are counseled against sanctioning a represented party for Rule 11(b)(2) violations, this case presents a unique circumstance where both the Plaintiff and his former counsel are responsible for the assertion and continued pursuit of frivolous claims in violation of Rule 11(b)(2). Plaintiff initiated this frivolous case against Ms. Finkelman with Mr. Altman as his attorney. Both Plaintiff and Mr. Altman received unambiguous notice through the undersigned's September 16, 2024 letter to this Court, ECF no. 11, and the September 27, 2024 Rule 11(c)(2) letter, that all of Plaintiff's claims were frivolous, based on false allegations, and were being pursued for a transparently improper purpose. Plaintiff, now *pro se*, nevertheless continued to pursue these cynical and harassing claims without Mr. Altman, and failed to withdraw them upon notice of the original motion for sanctions. In this case, Plaintiff and Mr.

Altman share responsibility for the filing and pursuit of frivolous claims and should both be held responsible for any violations of Rule 11 the Court finds, including 11(b)(2).

Beyond that, while representing Plaintiff, Mr. Altman had a duty — regardless of any notice — to undertake reasonable diligence in ensuring that he did not assert frivolous claims on Plaintiff's behalf. As explained above and in the MTD Decision, there was no reasonable or credible argument in support of these claims, and basic legal research (and indeed, his own past cases) would have revealed these fatal defects. To cure the harm caused by the initiation of this lawsuit, and to deter future misconduct, Ms. Finkelman respectfully submits that sanctions including her full attorney's fees, costs, and expenses are the appropriate monetary remedy, along with any other sanction the Court wishes to order, and she should be permitted to recover that amount jointly and severally.

## CONCLUSION

For the reasons explained above, this Court should grant Ms. Finkelman's motion for sanctions, order an award of full attorney's fees, costs, and expenses associated with her defense of this frivolous action, and order any other monetary and nonmonetary sanctions the Court deems appropriate.

Respectfully submitted,

DATED:        October 3, 2025              /s/ *Max Rodriguez*_____
                                          Max Rodriguez
                                          LAW OFFICE OF MAX RODRIGUEZ PLLC
                                          575 5th Avenue, 14th Floor
                                          New York, NY 10017
                                          max@maxrodriguez.law
                                          (646) 741-5167
                                          *Attorney for Defendant Abigail Finkelman*

19