UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
GIDEON RAPAPORT,

                Plaintiff,

   -against-                              Case No. 24-CV-5942 (JGLC)

ABIGAIL FINKELMAN,

                Defendant.
-----------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO RULE 11 MOTION

RICHARD A. ALTMAN and
LAW OFFICE OF RICHARD A. ALTMAN
Appearing *In propria persona*
150 East 56th Street, Suite 12B
New York, New York 10022
Tel. and Fax 212.633.0123
altmanlaw@earthlink.net

Richard A. Altman and Law Office of Richard A. Altman, appearing solely their own behalf, submits this memorandum of law in opposition to defendant's Rule 11 motion.

## POINT I

## THE MOTION IS FATALLY DEFECTIVE, BOTH PROCEDURALLY AND SUBSTANTIVELY

**1. The timing sequence of this motion is improper and violates the requirements of Rule 11.**

A party bringing a Rule 11 motion must strictly comply with its procedural requirements, and the Court is equally obliged to observe those requirements, as a matter of due process. "[D]istrict courts generally have wide discretion in deciding when sanctions are appropriate. Nevertheless, the manner in which sanctions are imposed must comport with due process requirements" (*Sanko S.S. Co. v Galin*, 835 F2d 51, 53 [2d Cir 1987]).

The 1983 Advisory Committee Report contemplated that Rule 11 motions would be deemed untimely if filed too late to permit correction or withdrawal: "Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." The procedural sequence in this case—staying the first Rule 11 motion, dismissing the complaint, declaring the Rule 11 motion moot, and then granting leave to re-file the same motion—is arguably problematic and improper. Mr. Altman respectfully submits that the sequence violates Rule 11's timing requirements, circumvents mandatory procedural protections, and conflicts with established precedent requiring courts to resolve Rule 11 motions before or contemporaneously with final judgment rather than declaring them moot.

While federal courts unquestionably possess inherent authority to manage their dockets and stay proceedings for judicial efficiency, this authority has limits when it conflicts with mandatory

procedural requirements. Courts routinely stay discovery motions and other case management issues pending resolution of dispositive motions, but Rule 11 motions present unique timing constraints that differentiate them from typical motion practice. It is respectfully submitted that those timing constraints were not observed here.

**2. Rule 11 cannot be enforced against counsel who cannot withdraw the offending paper.**

Rule 11 is aimed at deterrence; it does not impose strict liability on discharged counsel who are unable to effectuate withdrawal, simply because they lack agency over the pleading. The record confirms: (1) Plaintiff terminated Mr. Altman on September 9, 2024; (2) the Court granted withdrawal and retained jurisdiction over Mr. Altman for Rule 11 purposes on September 17, 2024; (3) Defendant served Rule 11(c)(2) notice thereafter; and (4) the client, then *pro se*, did not withdraw the complaint. These facts foreclose any theory that Mr. Altman violated Rule 11 by failing to withdraw a pleading he had no power to withdraw.

There are cases where lawyers have sought to withdraw as counsel only after receiving notice of Rule 11 motions, and those cases have held that it is too late. But there is a sharp distinction between seeking permission to withdraw after receipt of the Rule 11 papers–which can be characterized as an attempt to avoid the consequences of one's actions and have it both ways–and being *required* to withdraw, where the attorney has no other ethical and permissible option.

> The New York Disciplinary Rules make the distinction clear (emphases added):
> "RULE 1.16:
> DECLINING OR TERMINATING REPRESENTATION
> ...
> (b)...a lawyer *shall* withdraw from the representation of a client when..(3) the lawyer is discharged;
> ...
> (c)...a lawyer *may* withdraw from representing a client when...(5) the client deliberately disregards an agreement or obligation to the lawyer as to expenses or fees."

In the latter case, the attorney's authority and ability to withdraw an arguably violative paper terminates immediately. Even if he would prefer to take advantage of the safe-harbor provision of Rule 11 and withdraw the paper, it is impossible for him to do so, because he no longer has any authority to do anything about the case.

Also, affording the defendant a second bite at the apple violates Mr. Altman's due process rights. There can be no Rule 11 motion without the safe harbor provision, which obviously cannot be complied with after the pleading is dismissed. Defendant's own authorities in his motion papers confirm that the sanctions theory rests on post-withdrawal conduct by the *pro se* plaintiff. Defendant's memorandum emphasizes three grounds for sanctions: alleged frivolousness; alleged falsity/inconsistency of pleaded injury; and improper purpose. It also separately invokes the "failure to withdraw upon request" line of cases. But its timeline attributes the non-withdrawal solely to events after September 17, 2024, when the Court had already discharged Mr. Altman.

Where, as here, the safe-harbor notice post-dates the termination and withdrawal, failure to withdraw a paper should not and cannot be used against former counsel who had no capacity to file a notice of dismissal, stipulation, or amended pleading.

**3. A Rule 11 motion cannot be brought to challenge a pleading after it has been dismissed.**

"[Rule 11] hardly contemplates litigating the merits of an action after it has been dismissed on jurisdictional grounds, merely to determine whether the rule has been violated. Accordingly, the defendants' Rule 11 motion should be denied." (*Ophir v Goldstein*, 1990 US Dist LEXIS 18144, at *13 [SDNY Oct. 10, 1990, No. 86 Civ. 2963 (WK)). The strict timing requirements governing Rule 11 motions were addressed in *Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC*, 339 F.3d 1146 (9th Cir.2003)("Rule 11 sanctions are not appropriate, given the safe harbor

provision, unless an offending party has an opportunity to withdraw the complaint without suffering sanctions."

Although Rule 11 contains no explicit time limit for serving the motion, its "safe harbor" provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission. See *Barber v. Miller*, 146 F.3d 707, 710-11 (9th Cir. 1998)(Rule 11 sanction disallowed where motion filed after complaint dismissed); *Ridder v. City of Springfield*, 109 F.3d 288, 295-97 (6th Cir. 1997)("A party must now serve a Rule 11 motion on the allegedly offending party at least twenty-one days prior to conclusion of the case or judicial rejection of the offending contention....Quite clearly then, a party cannot wait until after summary judgment to move for sanctions under Rule 11."); *DeShiro v. Branch*, 183 F.R.D. 281, 287-88 (M.D. Fla. 1998) (same); *Daliessio v. DePuy, Inc.*, 178 F.R.D. 451, 452 (E.D. Pa. 1998)("The purpose of the 1993 Amendments to Rule 11 was to discourage satellite sanctions litigation by requiring notice to the adverse party of the infirmity of a pleading, and, thus, allow the offending party an opportunity for corrective action prior to the invocation of sanctions.")

The safe harbor provision of Rule 11(c)(2) is fundamental. The timing constraints built into Rule 11 are designed to prevent strategic manipulation of the sanctions process, which is precisely what has happened here. The Advisory Committee Notes on Rule 11 state that "a party cannot delay serving its Rule 11 motion until conclusion of the case," as allowing such conduct would "frustrate the purpose of the safe harbor provision" (*Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC*, 339 F.3d 1146, 1151 (9th Cir.2003).

In other words, if the Court adheres to its erroneous conclusion that it retains jurisdiction over Mr. Altman, then it perforce obliges him to re-litigate the validity of the complaint, to demonstrate why it is not sanctionable. Thus, even though the defendant *pro se* has already argued why the complaint should not have been dismissed, and was not sanctionable, and even though the complaint has been dismissed, Mr. Altman is obliged to argue the merits of the complaint anew on his own, in order to avoid a Rule 11 sanction against him. This cannot be correct. The Court's original order retaining jurisdiction over former counsel does not create an ongoing duty or authority to withdraw the client's pleading; were it interpreted that way, it would force discharged counsel to violate his ethical obligations to a former client.

The time line illustrates this clearly, and demonstrates counsel's bad faith. The complaint was filed on August 5, 2024. The first communication from defendant's counsel was on August 26, when he asked to extend the time to answer until October 28, and a stipulation to that effect was filed.

Mr. Altman's client discharged him suddenly on September 9 by a terse email without prior explanation or complaint about his representation (it said, in full, "I am writing to inform you that effective immediately you are no longer authorized to represent me in any matter"). Defendant's counsel was aware of that event the same day, because plaintiff had also filed it in a companion case. The Court released Mr. Altman on his application on September 17. However, the day before, defendant's counsel sent a letter to the Court (ECF No. 11), stating that he had no objection to my being relieved, but that the Court should "continue to exercise jurisdiction over Mr. Altman for the limited purpose of a future motion for sanctions for violations of Rule 11(b)(1) and 11(b)(2)." On September 17, the Court entered an order retaining such jurisdiction (ECF No. 13).

The subsequent failure to withdraw a paper by a self-represented litigant on October 18, 2024 cannot be imputed to discharged counsel. On October 18, 2024, the twenty-one-day safe harbor period under Rule 11 expired. On October 21, 2024, defendant filed a motion to dismiss the complaint with prejudice for failure to state a claim. Defendant's memorandum confirms it seeks sanctions both for allegedly frivolous filing and for failure to withdraw. It expressly identifies the safe-harbor notice and the non-withdrawal as a separate basis.

Then the Court stayed the response to the Rule 11 motions (ECF Nos. 20 and 24) pending the outcome of the motion to dismiss. The parties then filed and opposed the motion to dismiss, the plaintiff appearing *pro se*. The Court decided the motion to dismiss on August 29, 2025. It dismissed the complaint in its entirety ECF No. 52), but made no finding that the complaint was sanctionable one way or the other. Yet, it denied the sanctions motions as moot, but then granted defendant the right to renew the sanctions motion by September 15, 2025, which she did. But allowing defendant to renew it violated the procedures of Rule 11.

The choice of whether to withdraw the complaint during the safe harbor period was solely the plaintiff's. Not to withdraw it therefore reflects the choice and agency of a *pro se* party, not his discharged counsel. Mr. Altman no longer had authority to do it, but neither could he say anything negative about it, since to criticize it would have violated his fiduciary obligations to a former client, which persists to the present day.

Conversely, Mr. Altman no longer has the authority to say anything to defend the dismissed complaint, although there are numerous reasons to defend it on the merits, and had he not been discharged, he would have done so. For example, the qualified privilege of § 74 of the N.Y.Civil Rights Law can be forfeited if a plaintiff acts in bad faith: "The purpose of section 74 of the Civil

-6-

Rights Law...is the protection of reports of judicial proceedings which are made in the public interest. In light of this purpose, it is impossible to conceive of the Legislature's intending to protect the defendant's perversion of judicial proceedings." (*Williams v Williams*, 23 NY2d 592, 599 [1969]). Nor does it cover something which is added to the court record which was not in the original, as the defendant's photograph here was not. The privilege "does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof," as § 74 says.

The fact that the Court rejected this argument in its decision (at 10-11) does not make it sanctionable. New York defamation law is filled with contradictions, because of the inherent conflict between the right of free speech and one's right to protect one's reputation. That conflict is somewhat addressed by New York's anti-SLAPP statutes, but it will never be resolved. And it will certainly not be resolved by Rule 11 sanctions against a fired attorney.

**4. There is substantial evidence of defendant's counsel's bad faith.**

Defendant's counsel's deliberately waiting to bring his motion until after plaintiff's counsel had been discharged is a further indication of his bad faith in this matter, since doing so was an obvious attempt to create a conflict between plaintiff and his former counsel.

Mr. Altman's first notice of the Rule 11 motion was when defendant's counsel emailed the papers to him on September 27. This is 18 days after he knew that Mr. Altman had been discharged, and 18 days after he knew that Mr. Altman was incapable of complying with the safe harbor provision. Yet he had the complaint since early August, and if he believed that it was truly violative

of Rule 11, why did he not threaten the motion then, instead of waiting until after the safe harbor provision was unavailable to Mr. Altman? This certainly appears to be bad faith.

And further evidence of bad faith is defendant's counsel's presentation of some of his objections to the Court in his filed letter of December 16. That letter itself violates the safe harbor provision, because that provision bars presenting *anything* whatsoever to the Court about the grounds for the motion before the 21 days has run. His blatant violation of that rule placed his accusations in the public record before Rule 11 permitted him to do so.

There is also evidence of bad faith in the terms of settlement demands which defendant's counsel presented at the time; they would be described to the Court *in camera* if requested.

**4. There are policy reasons to deny this motion.**

Rule 11's core purpose is deterrence, not compensation. Defendant demands his full fees and additional monetary or nonmonetary sanctions. But deterrence is not advanced by penalizing an attorney for a *pro se* client's not to withdraw a complaint during the safe harbor period. Once the Court approved Mr. Altman's withdrawal and the client proceeded *pro se*, only the client had the power to comply with the safe harbor. Imposing sanctions for an act the attorney was legally, ethically and practically incapable of performing would not deter any curable conduct and would risk converting Rule 11 into a strict-liability regime untethered from attorney agency. Rule 11 is not a fee-shifting statute.

The motion also erroneously conflates alleged pre-filing deficiencies with post-termination refusal to withdraw the complaint. At a minimum, the failure to withdraw must be rejected as to former counsel for the reasons above. The Court's order of August 29, 2025 granting dismissal of the complaint (and without leave to replead) mooted the prior sanctions motions and set a renewed

motion deadline. But absolutely nothing in that order–or anywhere else–found or suggested attorney misconduct, and the issue of fees/sanctions was unfairly–and arguably improperly–reserved to motion practice that defendant is now pursuing. Ms. Finkelman and her counsel should have simply accepted the Court's dismissal of her complaint. And in any event, she has now moved to recover fees under New York's anti-SLAPP law, which if successful, will provide full relief to her and her counsel.

## CONCLUSION

For the foregoing reasons, the renewed motion for Rule 11 sanctions should be denied as to Richard A. Altman and the Law Office of Richard A. Altman.

Dated: November 20, 2025

RICHARD A. ALTMAN and
LAW OFFICE OF RICHARD A. ALTMAN
Appearing *In propria persona*
150 East 56th Street, Suite 12B
New York, New York 10022
Tel. and Fax 212.633.0123
altmanlaw@earthlink.net