**OPPOSITION TO DEFENDANT FINKELMAN'S MOTION FOR ATTORNEY'S FEES PER**

**NEW YORK CIVIL RIGHTS LAW § 70-A**

Gideon Rapaport, *pro se*
627 – 1078 Summit Avenue
Jersey City, NJ 07307
gideonrapaportlaw@outlook.com
(862)-213-0875

## TABLE OF CONTENTS

**Preliminary Statement**………………………………………………………….…....3

**Argument**……………………………………………………………………..…4

New York's Anti-SLAPP Law and Analogues Have Almost Universally Been Found to be Inapplicable in Federal Court……………………………………………………………………...4

Section 70-a Claims Must Be Asserted By a Standalone Counterclaim If At All Rather Than During or After a Motion to Dismiss As Defendant Finkelman Did……………………………………………….6

Section 70-a Even When Permitted By The Extreme Minority View Holding It Applicable In Federal Court By Motion Requires A Specific Amount or At Least a Fair Estimate of Attorney's Fees………...7

According to its Own Terms Section 70-a Does Not Justify The Motion Even If Applicable……...…...8

    There Exists Substantial Argument As To Defamation…………………………………………..8

    There Exists Substantial Argument As To The Application of False Light Invasion of Privacy Under New Jersey Law…………………….…………………………………………………...13

The Plaintiff's Action Is Protected By Federal Litigation Privilege/Immunity Against Which New York State May Not Improperly Manufacture Causes Of Action…………………………………………15

Section 70-a Violates the First Amendment As Incorporated By The Fourteenth Amendment by Burdening and Chilling the Right to Petition the Government, Including Access to Courts…………17

Section 70-a is Unconstitutional When Applied to Claims Arising from Prior Federal Actions Under the Supremacy Clause and Rules Enabling Act……………………………………………………………20

Section 70-a Violates the Erie Doctrine by Inevitably Creating Disparate Substantive Rules For A Supposedly Identical Cause of Action……………………………………………………………………22

Section 70-a Engages in Reverse Commandeering of Federal Courts………………………………...27

The Societal Value of Defamation Actions Underscores the Unconstitutionality of Section 70-a….…28

**Conclusion**……………………………………………………………….…..**29**

**Preliminary Statement**

The motion for attorney's fees should be denied for a host of reasons, including its inapplicability in federal court due to its procedural impropriety as a post-dismissal FRCP Rule 54 motion, the *Erie* doctrine (applying the Rules Enabling Act, Rules of Decision Act, the Supremacy Clause and the structure of the US Constitution), its violation of the immunity of litigation privilege and violation of the First Amendment as well as under the terms of NY CRL 70-a due to the absence of a prior adjudication per CPLR 3211(g) or 3212(h) and the inability to demonstrate that the plaintiff's arguments "could not be supported by a substantial argument for the extension, modification or reversal of existing law".

The relief sought by defendant Finkelman through this motion has been universally denied in every federal district court except for a single instance, and has never been endorsed by any federal appellate court. Besides from a highly persuasive ratio of district court opinions of approximately thirty to one against, the only binding appellate precedent from the Second Circuit *Harris v. American Accounting Association* 2023 WL 2803770 (2023) provides a test that clearly demonstrates that such relief is not warranted under these facts, even if sought in a procedurally proper manner such as a separate action, and is particularly applicable in a case involving a *pro se* litigant as was the case there.

Furthermore, according to the logic of defendant Finkelman's concurrent motion for sanctions, this motion is not only be subject to denial, but is also "patently frivolous" and thus would even be sanctionable. In that concurrent motion, defendant Finkelman argues that this New Jersey plaintiff's attempt to assert a local privacy interest recognized by New Jersey law through a claim for false light invasion of privacy was "patently frivolous" even though it was supported by a district court opinion that reached precisely such a choice-of-law conclusion *Catalanello v. Kramer,* 18 F. Supp. 3d 504 (S.D.N.Y. 2014) and was favorably cited by the Second Circuit as a good example of choice-of-law analysis done right *Kinsey v. New York Times Co.*, 991 F.3d 171 at n. 3(2d Cir. 2021). Defendant

3

Finkelman's instant claim for attorney's fees by post-dismissal motion is only supported by the

*Bobulinski v. Tarlov, 758 F.Supp.3d 166 (S.D.N.Y., 2024)* case, which was settled before reaching a

decision by the Second Circuit, and thus provided no binding precedent on appeal. The plaintiff

incorporates by reference his opposition to defendant's renewed motion for sanctions, his opposition to

the defendant's denied emergency motion for a filing ban and surreply Dkt. No. 62, 65 and 68 his

opposition to the defendant's vacated prior motion for sanctions Dkt. No. 28 and the motion to dismiss

Dkt. No. 33. The plaintiff also incorporates letter Dkt. No. 78.

**Argument**

<u>New York's Anti-SLAPP Law and Analogues Have Almost Universally Been Found to be Inapplicable</u>

<u>in Federal Court</u>

Section 70-a has been consistently almost universally (but for one exception) rejected as being

inapplicable in federal court. For example, in *Prince v. Intercept*, 634 F.Supp.3d 114, 141-142

(S.D.N.Y., 2022) this District found, collecting many cases that such relief was inapplicable in federal

court:

> Plaintiff opposes Defendants' position, arguing that § 70-a does not apply in federal court.
> (See Pl. Br. at 34-35.) The Court agrees. Courts in this district have held that "§ 70-a is
> inapplicable in federal court" because its " 'substantial basis' standard articulated in New
> York's anti-SLAPP law [ ] conflicts with the standards under Federal Rules of Civil
> Procedure 12 and 56." Nat'l Acad. Of Television Arts & Scis., Inc. v. Multimedia Sys.
> Design, Inc., 551 F. Supp. 3d 408, 431-32 (S.D.N.Y. 2021); see also Carroll v. Trump, NO.
> 20-cv-7311, 590 F.Supp.3d 575, 2022 WL 748128, at *7 (S.D.N.Y. Mar. 11, 2022); see also
> Friedman v. Bloomberg, L.P., No. 3:15-cv-443, 2022 WL 1004578, at *1 (D. Conn. Apr. 4,
> 2022) (denying defendants' motion to amend as futile because the "substantial basis"
> standard in New York's anti-SLAPP statute conflicts with Rule 12 and 56); but see Harris v.
> Am. Accounting Ass'n, No. 5:20-cv-01057, 2021 WL 5505515, at *13-14 (N.D.N.Y. 2021)
> (awarding attorneys' fees under § 70-a). The Court agrees with its colleagues that § 70-a's
> standard conflicts with the standards under Federal Rules 12 and 56. Accordingly,
> Defendants' request for costs and attorneys' fees is denied.

As another court in this District continued in *CDC Newburgh Inc. v. STM Bags, LLC*, 692

F.Supp.3d 205, 332-333 (S.D.N.Y., 2023):

Numerous other courts in this Circuit have concluded that New York's anti-SLAPP law does not apply in federal court. This Court agrees for the reasons outlined at length in these decisions—that New York's anti-SLAPP law conflicts with the procedures and pleading standards established in Federal Rules of Civil Procedure 12 and 56. See *Carroll v. Trump*, 590 F. Supp. 3d 575, 584 (S.D.N.Y. 2022) (noting, "the requirement of consideration of affidavits [in New York's anti-SLAPP law] conflicts with Federal Rule 12, which permits consideration only of the pleadings and documents incorporated therein by reference unless affidavits are submitted to and not excluded by the court" and that the requirement of New York's anti-SLAPP law that "summary judgment of dismissal in a covered action 'shall be granted unless the party responding to the motion demonstrates that the action ... has a substantial basis in fact and law or is supported by a substantial argument for an extension, modification or reversal of existing law' … makes summary judgment more readily available in covered actions than would Federal Rule 56, which permits summary judgment of dismissal only if 'there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law.' "); see also *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021) ("§ 70-a of New York's anti-SLAPP law is inapplicable in federal court. Accordingly, the counterclaim premised on New York's anti-SLAPP law must be dismissed."); ("[D]efendants' amendment would be futile because New York's anti-SLAPP statute conflicts with the Federal Rules of Civil Procedure"); *Friedman v. Bloomberg, L.P.*, No. 3:15-CV-443 (AWT), 2022 WL 1004578, at 1 (D. Conn. Apr. 4, 2022); *Abbas v. Foreign Pol'y Grp.*, LLC, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015) (holding that the D.C. anti-SLAPP Act was inapplicable in federal court because it required a plaintiff to meet a higher burden at the pre-trial stage by showing a "likelihood of success on the merits") … The Court thereby rejects Defendant's request to file an anti-SLAPP claim, as New York's anti-SLAPP law does not apply in federal court.

In *GM Photo, LLC v. Focus Camera, Inc.*, 2025 WL 1226629 (S.D.N.Y. 2025) building upon the reasoning of *CDC Newburgh*, that court further found with respect to the defendant's rejected argument that 70-a creates a new substantive claim:

Numerous courts have dismissed Section 70-a counterclaims based on this reasoning. See *CDC Newburgh ...* Defendants argue that *Reid* does not apply because it related to a procedural motion to strike a claim—similar to a 12(b)(6) motion to dismiss—rather than a "substantive" new claim. (Countercl. Opp'n 8.) However, Reid also held that the defendant could "[ ]not recover attorneys' fees" under a separate provision of the California law that awarded attorney's fees to a defendant who prevailed "on a special motion to strike", even if the defendant "later prevail[ed]" on the defamation claim. 966 F.3d at 88–89 (internal quotation marks and emphasis omitted). Section 70-a, too, permits recovery of "costs and attorney's fees," and, consistent with *Reid*, is inapplicable in federal court because it conflicts with the Federal Rules of Civil Procedure. Consider the consequence of Defendants' contrary position given my conclusion that Plaintiff states a defamation claim. See supra § IV. A. To dismiss Defendants' Section 70-a counterclaim, Plaintiff would need to sustain the additional, higher burden of showing that defamation claim had a "substantial basis in fact and law." Thus, although styled as a substantive cause of action, in practice

Section 70-a's inquiry into the strength of a defamation claim operates as a higher pleading standard, therefore conflicting with the Federal Rules of Civil Procedure. See *Reid*, 966 F.3d at 87 ("The statute ... establishes the circumstances under which a court must dismiss a plaintiff's claim before trial, a question that is already answered (differently) by Federal Rules 12 and 56." (internal quotation marks omitted)).

More recently in *Cortsidis v. K'hal Bnei Torah of Mount Ivy*, 2024 WL 37122, at *15 (S.D.N.Y. 2024) that court found that the attorneys' fees provision of the New York anti-SLAPP statute does not apply in federal court "because its standard conflicts with Federal Rules of Civil Procedure 12 and 56" and further collected many cases to that effect.

<u>Section 70-a Claims Must Be Asserted By a Standalone Counterclaim If At All Rather Than During or After a Motion to Dismiss As Defendant Finkelman Did</u>

Courts in this district have repeatedly held that a standalone counterclaim is required to assert anti-SLAPP claims under 70-a, as contrasted from a FRCP Rule 12(b)(6) memorandum or post-12(b)(6) dismissal motion.

As this District held in *Lindell v. Mail Media Inc.*, 2021, 575 F.Supp.3d 479 (S.D.N.Y 2021:

The SLAPP statute, however, requires the defendant to bring "an action, claim, cross claim or counterclaim" to recover attorneys' fees. N.Y. Civ. Rights Law §§ 70-a; see also Palin v. New York Times Co., 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020) (noting in dicta that the statute creates an "affirmative cause of action" for attorneys' fees). Defendants request attorneys' fees in their memorandum supporting their motion to dismiss [] but they never asserted a standalone counterclaim for attorneys' fees. Because the Court dismisses the Amended Complaint before Defendants "filed an answer asserting any sort of claim, it would seem that, per the terms of the New York law, the Defendant[s] must file a separate lawsuit in order to recover any attorneys' fees." [*Center for Medical Progress v.*] *Planned Parenthood*, 551 F.Supp.3d at 333 (holding "[a]s the complaint is being dismissed before PPFA has filed an answer asserting any sort of claim, it would seem that, per the terms of the New York law, the Defendant must file a separate lawsuit in order to recover any attorneys' fees.

This same reasoning was later applied in *Executive Park Partners LLC v. Benicci Inc.*, 2023 WL 3739093 at *7 (S.D.N.Y., 2023) and *Chinese Americans Civil Rights Coalition, Inc. v. Trump*, 2022 WL 1443387 at *6 (S.D.N.Y., 2022) where that court held: "On its face, this provision requires that an

applicant for attorney's fees 'maintain an action, claim, cross claim or counterclaim,' and not simply assert a request as part of a motion to dismiss. Because the defendant has not brought a separate action for fees or filed a 'claim, cross claim or counterclaim' in this action, the request for attorney's fees is **denied**." (emphasis original)

*Tarlov* is the single and only exception ultimately allowing for such a claim by motion post-12(b)(6) dismissal to an overwhelming amount of other precedent, and may be distinguished from this case.

<u>Section 70-a Even When Permitted By The Extreme Minority View Holding It Applicable In Federal Court By Motion Requires A Specific Amount or At Least a Fair Estimate of Attorney's Fees</u>

As the only other opinion accepting the *Tarlov* post-dismissal motions for fees as a possibility, in *Button v. New York Times*, 2025 WL 2643674 at *19-21 that court nevertheless denied the motion due to a failure to provide an amount or a fair estimate of it. As that court explained:

> Rule 54(d) states that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." See Fed. R. Civ. P. 54(d)(2)(A). It requires further that "[u]nless a statute or a court order provides otherwise" that the motion "state the amount sought or provide a fair estimate of it." See Fed. R. Civ. P. 54(d)(2)(B). The Times Defendants do not state any amount sought or any estimate. Accordingly, the Times Defendants' motion is denied. See *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 629 (S.D.N.Y. 2016), aff'd, 683 F. App'x 33 (2d Cir. 2017) (denying a motion for attorneys' fees because it did not "state the amount sought or provide a fair estimate of it."); *Bartels v. Inc. Vill. of Lloyd Harbor*, No. 10 CV 5076 PKC, 2015 WL 4459403, at *2 (E.D.N.Y. July 21, 2015) (denying a motion for attorneys' fees because the motion failed to state the amount sought or provide an estimate explaining that "[b]y failing to provide any figure or estimate as to the fees sought, Defendants essentially ask the Court to approve a blank check for Plaintiff to write.").

Here, defendant Finkelman has made the same fatal error, and "[b]y failing to provide any figure or estimate as to the fees sought, Defendants essentially ask the Court to approve a blank check for Plaintiff to write" thus justifying denial.

<u>According to its Own Terms Section 70-a Does Not Justify The Motion Even If Applicable</u>

There are no facts that could be alleged or arguments brought that could demonstrate that the plaintiff's action was "commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law". According to the standard set forth by the Second Circuit in *Harris v. American Accounting Association* 2023 WL 2803770 (2023), which did not decide in that action whether or not 70-a would apply to a federal dismissal, the absence of a substantial argument in favor of the plaintiff's contention cannot be demonstrated. The Second Circuit stated: "[The state] law is unclear in several respects. We are therefore not persuaded that Harris's reverse passing off claim, when viewed with the indulgence afforded to pro se litigants, was wholly 'without a substantial basis in fact and law' and incapable of being 'supported by a substantial argument for extension, modification or reversal of existing law,' as the statute requires." (citing *Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 29 (1st Dep't 2022)).

Even if 70-a were applicable in federal court, the plaintiff has "substantial argument for the extension, modification or reversal of existing law" as to all counts and reasons for dismissal.

<u>There Exists Substantial Argument As To Defamation</u>

As to defamation, the plaintiff's claim was dismissed due to a finding that the forged image in question was not defamatory, and that its inclusion was protected by the fair report of official proceedings privilege has substantial arguments as to both issues.

First, the plaintiff has substantial argument to support a state of law that would find such a forged image to be defamatory. The digitally manipulated photograph depicted a fictitious "Do Not

Admit" notice posted in the New York lobby of Kirkland & Ellis LLP, the plaintiff's former employer's building. The forged image prominently featured the plaintiff's photograph, full name, and the employer's name, purporting to be an official security notice barring Plaintiff from the premises. In fact, no such notice was ever created or displayed. A substantial argument exists that the forged image constitutes, or should properly constitute defamation, including defamation *per se*, under New York law.

A publication is defamatory under New York law "if it *tends* to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977) (emphasis added). Whether a statement is reasonably susceptible of defamatory meaning is a threshold legal question. Such a consideration must be made by a Court in from the perspective of the average reasonable reader in full context, which here would include the related defamatory allegations that the plaintiff was fired for sexual harassment, as published and spread by the defendants of the *Doe* action, and discussed in that action itself as engaged with by defendant Finkelman. *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985); *Silsdorf v. Levine*, 59 N.Y.2d 8, 12–13 (1983); *Golub v. Enquirer/Star Group, Inc.*, 89 N.Y.2d 1074, 1076 (1997).

The forged image conveyed the unmistakable false factual assertion that the plaintiff's former employer had officially declared him *persona non grata* and banned him from its premises. "Do Not Admit" or trespass notices are not issued lightly, they are reserved for individuals who have engaged in serious misconduct, typically criminal behavior (e.g., theft, assault, threats) or conduct posing a genuine security risk. By publishing an image that appeared to be an authentic security poster, defendant Finkelman necessarily implied that Plaintiff had committed ban-worthy acts and that his former employer had formally determined him to be dangerous, dishonest, or unfit. That implication is defamatory on its face. Defendant Finkelman enthusiastically credited her receipt of the previously

9

taken down forged image to an "anonymous tipster" further bolstering its supposed credibility.

The claim is especially meritorious as defamation *per se*. New York recognizes defamation *per se* (presumed damages) when a statement that tends to injure another in his trade, business, or profession or that imputes the commission of a serious crime. *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992); *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 179 (2d Cir. 2000). The forged image did both.

As an attorney, bar candidate or professional in general, a fabricated notice implying plaintiff was banned for cause directly attacks his professional reputation and fitness which is precisely the type of statement courts have held actionable *per se*, *November v. Time Inc.*, 13 N.Y.2d 175, 178 (1963) (statement injuring plaintiff in profession is *per se*); *Afftrex, Ltd. v. General Elec. Co.*, 161 A.D.2d 855, 856 (3d Dep't 1990) (implying dishonesty or unfitness in business context is *per se*).

The visual suggestion that Plaintiff is a trespasser or security threat imputes criminality or moral turpitude, another classic *per se* category. See *Epifani v. Johnson*, 65 A.D.3d 224, 233 (2d Dep't 2009).

New York also recognizes defamation by implication, where a defendant "intends or endorses" a defamatory inference drawn from juxtaposed true and false facts or from fabricated material. *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37–38 (1st Dep't 2014); *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015). Fabricating an ostensibly official document and publishing it without any attached disclaimer that it is fictitious is the functional equivalent of a deliberate alteration that materially changes meaning, also conduct the Supreme Court has held actionable in the analogous context of fabricated quotations *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (deliberate alteration giving false impression is actionable falsity). A reasonable viewer could readily conclude that the employer actually issued the notice, and defendant endorsed that false and damaging inference by crediting it to an "anonymous tipster" without any caveat or qualification after receiving and republishing it.

Second, is substantial argument relating to the inapplicability the fair and true report privilege of Section 74 to immunize defendant Finkelman's republication of the forged image which was held to apply by the Court.

Section 74 grants absolute immunity only for a "fair and true report of any judicial proceeding." Courts construe the privilege narrowly, and defendants bear the burden to prove it applies conclusively. Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co., 49 N.Y.2d 63, 67 (1979); *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2d Dep't 2009). Any substantial doubt resolves against immunity, or at least should be considered as a substantial argument for these purposes.

The plaintiff advanced multiple strong, substantive arguments that the privilege did not attach each of which would be sufficient to deny immunity:

1.      Defendant's tweets/posts were not "reports" of a judicial proceeding. They consisted entirely of satirical commentary, ridicule, and original content rather than fair and true reporting of the *Doe* action. One post featured a digitally manipulated "DO NOT ADMIT" poster that defendant Finkelman herself solicited from an anonymous third party (referred to by her as an "anonymous tipster") and republished. The defendants of the Doe action originally created this image and it never appeared in any court filing, docket, or public record of that case though pleadings mentioned it. Soliciting and injecting private, third-party material transforms the publication into commentary, not a "report." See *Fine v. ESPN, Inc.*, 2013 WL 528468, at *6 (N.D.N.Y. Sept. 18, 2013); *Wenz v. Becker*, 948 F. Supp. 319, 323 (S.D.N.Y. 1996). Furthermore, it is not clear that since the posts are distinct from each other by address and in format, that one may bring immunity to another.

2.      The tweets/posts were neither "fair" nor "true" in substance. Defendant republished a fabricated image created by the defendants of the *Doe* action, obtained privately, and placed in a post without clear disclaimer as if it were authentic or officially tied to the proceeding. This added false and unfair implications of serious misconduct. The privilege requires substantial accuracy and forbids

material distortions or additions that alter the report's effect on the reasonable person. Holy Spirit, 49 N.Y.2d at 67–68; *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 520-521 (S.D.N.Y. 2013). The test is whether a reasonable person would reach a different conclusion in relying upon the report compared with considering the actual contents of the proceedings. Defendant Finkelman directly contradicted the pleadings in order to satirize and mock the plaintiff, which is not consistent with making a fair and true report by fabricating a quotation "To be clear, I was excited about women's rights getting stripped, but I was way more excited about getting to play with guns." when in fact the materials in the official proceedings stated the opposite "plaintiff was not particularly interested in the Dobbs case" Complaint Exhibit 2 at 6. Furthermore, defendant Finkelman's contribution did not provide any factual information about the actual proceedings whatsoever. Instead, defendant Finkelman speculated about things such as whether a Twitter personality referred to as "the menswear guy" would be called as an expert witness *Id.* at 5, compared the plaintiff to a fictional villain from the *Final Fantasy* series of Japanese role-playing computer games *Id.* at 21 and referred to him as a "monster" created by "ghouls" *Id.* at 23.

3.      The fabricated image was never part of any official judicial record when republished on August 6, 2023, and would only become part of the *Doe* action almost one year after defendant Finkelman's republication on May 24, 2024. Section 74 protects only reports of material actually contained in or arising directly from the proceeding itself. The image was originally created by third parties, and only mentioned in the *Doe* pleadings, but was never filed, exhibited, or docketed, and was not publicly available online, when defendant Finkelman republished it thus falling entirely outside the record. Defendant Finkelman's act of soliciting it privately and republishing it added extra-record material Complaint Exhibit 2 at 3. Courts limit the privilege strictly to the proceeding's contents. *Corporate Training Unlimited v. Nat'l Broad. Co.*, 868 F. Supp. 501, 509 (E.D.N.Y. 1994) (references

to proceeding were mostly in passing and not seriously addressed); *Komarov v. Advance Magazine Publishers, Inc.*, 180 Misc. 2d 658, 663 (Sup. Ct. N.Y. Co. 1999).

4.      The image constituted "other matter added" explicitly excluded from § 74 protection. The statute itself provides: "This section does not apply to a libel contained in any other matter added by any person concerned in the publication…" N.Y. Civ. Rights Law § 74 (final sentence). Defendant's solicitation and republication of a private, third-party-fabricated image—never part of the official proceeding—qualifies as precisely such "added matter." No reported case extends § 74 to immunize a publisher who actively seeks out and inserts non-record, third-party-created defamatory materials, even if tangentially referenced in pleadings, as opposed to incidental background information that is not the main topic of the defamation action nor inherently defamatory.

5.      The forged image was the tweets' primary defamatory content, not mere "background material." Even incidental background material loses protection when it becomes the publication's focus or contains inherently defamatory material. Here, the fabricated poster dominated the tweets reach and was the sole source of the alleged defamatory injury.

6.      From a policy perspective, the outcome achieved by the holding that Section 74 applies, which is that an individual may seek out and republish defamatory material, including by targeting it to new and professional audiences, and then claim an absolute immunity because they included some screenshots of an official proceeding as well as erroneous and clownish commentary as part of a series of posts is a deeply troubling one, and would create a license to republish any defamation that is being litigated without any caveat or warning.

        Taken both separately or together, these arguments and especially the statutory exclusion for "added matter" and the image's non-record status made § 74's application far from clear-cut, demonstrating a substantial argument that was brought or could further be brought by the plaintiff.

<u>There Exists Substantial Argument As To The Application of False Light Invasion of Privacy</u>

<u>Under New Jersey Law</u>

As to false light invasion of privacy, the plaintiff's claim was dismissed due to a finding that New Jersey law did not apply under New York's choice-of-law analysis.

Defendant Finkelman erroneously labels the New Jersey plaintiff's false light invasion of privacy claim as "patently frivolous" solely because New York does not recognize the cause of action. This ignores the critical choice-of-law analysis required in diversity cases and Plaintiff's New Jersey domicile, which provided an objectively reasonable basis to argue for application of New Jersey substantive law as to this claim.

Under New York's choice-of-law rules, which govern here per *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941), the law of the plaintiff's domicile applies to privacy torts such as false light because the domiciliary state has the greatest interest in protecting its resident's personality rights in their local community. *Restatement (Second) of Conflict of Laws* § 153 (1971) on multistate invasion of privacy: "The local law of the state of the plaintiff's domicil governs" privacy claims); see also *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (applying domicile rule in multi-state defamation cases with analogous interest-analysis).

This precise issue arose in *Catalanello v. Kramer*, 18 F. Supp. 3d 504 (S.D.N.Y. 2014), where the Southern District in applying New York choice-of-law principles held that New Jersey law governed a false light claim brought by a New Jersey-domiciled plaintiff, even though the defamatory publication and other contacts were centered in New York and elsewhere. *Id.* at 518–19 (Engelmayer, J.) (expressly recognizing that "New Jersey courts recognize a cause of action for false-light invasion of privacy" under *Romaine v. Kallinger*, 109 N.J. 282, 294–95 (1988), and applying New Jersey substantive law).

*Romaine* contrasted the global reputational nature of defamation injuries from those of false light invasion of privacy, which involve the plaintiff's privacy and mental tranquility in the context of their local community, false light invasion of privacy is a tort that should clearly be applied per New Jersey law due to New York's adoption of the doctrine of dépeçage in and the definitionally local nature of the tort "[T]here is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction" *Babcock v. Jackson*, 191 N.E.2d 279, 12 N.Y.2d 473 (N.Y. 1963) at 484.

*Catalanello* was favorably cited by the Second Circuit in *Kinsey v. New York Times Co.*, 991 F.3d 171 (2d Cir. 2021). There, the Circuit identified Catalanello as a case where false light was properly analyzed under the law of a recognizing jurisdiction (New Jersey) due to the plaintiff's domicile and the local nature of the injury, reinforcing that choice-of-law determinations rather than blanket non-recognition under New York law controls the viability of such claims. *Id.* at 176 & n.3 (citing *Catalanello* approvingly in contrast to cases applying New York law).

Given plaintiff's New Jersey domicile and the directly applicable precedent of *Catalanello* (as endorsed in *Kinsey*), the false light claim presented a substantial, even if ultimately unsuccessful, argument for the application of New Jersey law.

## The Plaintiff's Action Is Protected By Federal Litigation Privilege/Immunity Against Which New York State May Not Improperly Manufacture Causes Of Action

Litigation privilege exists in courts in general, and in federal courts as well, to protect access to the courts, and to allow persons to seek justice in an open and candid setting suitable for arriving at the truth.

Federal courts have long recognized an absolute privilege (sometimes called an "absolute immunity") that protects parties, counsel, and witnesses from civil liability for statements made in the

course of judicial proceedings. See *Briscoe v. LaHue*, 460 U.S. 325, 330–34 (1983) (absolute immunity for witness testimony); *Imbler v. Pachtman*, 424 U.S. 409, 424–28 (1976) (absolute immunity for prosecutorial acts within judicial process, rooted in common-law litigation privilege). The privilege extends to statements in pleadings. See, e.g., *Bradley v. Hartford Accident & Indem. Co.*, 30 Cal. App. 3d 818, 825 (1973) (privilege applies to allegations in complaint even when action is later dismissed); *Silberg v. Anderson*, 50 Cal.3d 205 (Cal.,1990), See Restatement (Second) of Torts § 587 (1977) ("A party to a private litigation … is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates, if it has some relation to the proceeding").

When the statements at issue were made in a federal judicial proceeding, federal common law governs the scope of the privilege. Courts have repeatedly applied a uniform federal privilege to protect the integrity of federal process from collateral attack via state-law tort claims. See *Kimes v. Stone*, 84 F.3d 1121, 1127 (9th Cir. 1996) (applying federal common law absolute privilege to statements in federal attorney disciplinary proceeding) see also Rodney A. Smolla, *Law of Defamation* § 8.5 to § 8.13 (2d ed.) ("When the prior proceeding was in federal court, many courts have concluded that the privilege should be a matter of federal common law"). Applying varying state privileges to federal pleadings would subject federal litigants to inconsistent and unpredictable liability depending on the plaintiff's residence or chosen forum for the collateral suit which is a result incompatible with the need for national uniformity in federal practice.

The privilege is absolute and is not defeated by a Rule 12(b)(6) dismissal. The whole point of the privilege is to protect litigants or counsel from being subject to collateral proceedings brought in other courts, including state courts after litigation. As the Sixth Circuit remarked in *Theiss v. Scherer*, 396 F.2d 646, 649-650 (6th Cir. 1968): "The rule of absolute privilege for relevant statements made by

one attorney to another during the course of and in relation to judicial proceedings in which they are participating as counsel rests on solid basis. An attorney is an officer of the court and is subject to disciplinary action by the court and by his bar association. The rights of clients should not be imperiled by subjecting their attorneys to the fear of suits". A Rule 12(b)(6) dismissal adjudicates only whether the allegations, accepted as true, state a plausible claim for relief. It is not an adjudication on the merits of the truth of the allegations and therefore cannot abrogate the privilege.

This should not be taken to mean that states may not discipline attorneys or litigants for misconduct such as perjury, discovery violations of destroying or concealing discoverable material, perpetrating a fraud on the court or engaging in other criminal or sanctionable conduct See *Theard v. United States*, 354 U.S. 278, 281 (1957) (state may discipline attorneys for misconduct in federal courts but may not usurp federal control over federal practice). Rather it should be taken as a limit to the ability to create new causes of action to punish litigants from pursuing factually based and good-faith legal arguments as New York attempts to punish the mere dismissal of an action through the creation of a new cause of action.

Absent a proper basis justifying intrusion on the federal system as protected by federal litigation privilege among many other laws and doctrines as is allowed for sanctions, fraudulent or criminal conduct, New York should restrict itself to creating substantive remedies regulating or attaching to occurrences in its own court system, as opposed to the federal court system.

<u>Section 70-a Violates the First Amendment As Incorporated By The Fourteenth Amendment by Burdening and Chilling the Right to Petition the Government, Including Access to Courts</u>

The First Amendment provides that "Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances." U.S. Const. amend. I. This right encompasses access to courts for filing lawsuits, as judicial redress is a core form of petitioning, and has been incorporated against the states through the Fourteenth Amendment U.S. Const. amend. XIV.

The Supreme Court has long recognized that the Petition Clause protects the ability to seek judicial remedies without undue interference, see *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983) (filing a lawsuit is "a form of petitioning activity protected by the First Amendment"), and extends to civil actions, including defamation suits. Section 70-a burdens this right by imposing financial penalties on plaintiffs who file actions later deemed insubstantial or motivated by harassment, even if filed in good faith as understood to apply to any other action. This creates a chilling effect, deterring individuals from seeking redress for fear of retaliatory claims. In *NAACP v. Button*, 371 U.S. 415 (1963), the Supreme Court held that litigation is a protected form of political expression and association, in response to Virginia's creation of substantive remedies against attorneys or other backers of litigation to benefit indigent civil rights plaintiffs through the regulation of attorney solicitation and ethics rules. In *Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217 (1967) the Supreme Court balanced Illinois' interest in maintaining high standards of legal ethics against union workers' access to petition state or federal courts, and extended *NAACP v. Button* to non-religious and non-political petitions as supported by the reasoning of *Thomas v. Collins*, 323 U.S. 516, 531 (1945): "Great secular causes, with small ones, are guarded. The grievances for redress of which the right of petition was insured, and with it the right of assembly, are not solely religious or political ones." On the purely economic side of the spectrum, even antitrust complaints have benefited from Petition Clause protection "Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition." *California Motor Transp. Co. v. Trucking Unlimited*, 404 US 508, 510 (1972).

Unlike content-neutral regulations, § 70-a targets speech and petitioning related to "public petition and participation" defined broadly in the companion § 76-a to include matters of public interest. This is not content-neutral because it discriminates based on the subject matter of the lawsuit (e.g., favoring defenses against public-interest claims over others) thus triggering strict scrutiny. See

*Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (laws are content-based if they draw distinctions based on communicative content). Under strict scrutiny, § 70-a fails, as less restrictive means exist to deter frivolous suits, such as FRCP 11 sanctions or state equivalents which clearly satisfy all other cases, without broadly chilling access. Analyzing the remedies separately underscores these violations:

1. Subsection (1)(a): Attorney's Fees. This mandatory fee-shifting for actions "without a substantial basis in fact and law" is not content-neutral, as it applies only to defamation actions involving matters of public interest. It chills petitioning by imposing asymmetric risks—plaintiffs face fees upon dismissal, while defendants do not—discouraging filings on public matters. This burdens the right to petition more than necessary, even failing intermediate scrutiny applicable to some petition regulations. See *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011) (petition rights subject to balancing but protected against undue burdens). Since the Supreme Court has rejected that newspapers, publishers or broadcasters have a duty to provide individuals with access, space or time to counter speech made against them, petitioners as to public matters cannot be forced into the same position to bear the burden of counter-petitioners under the First Amendment *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241; *Pacific Gas & Electric v. Public Utilities Commission*, 475 US 1 (1986).

2. Subsection (1)(b): Compensatory Damages. Requiring proof of 'harassing, intimidating, punishing or otherwise maliciously inhibiting" free exercise, this creates a new tort-like claim tied to the content of the petition (i.e., lawsuits on public issues). It is content-based, targeting motives in public discourse, and chills by allowing damages for subjective intent, even if the suit has merit. This violates the Petition Clause, as it penalizes the act of filing based on impossibly vague perceived purpose see *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 533 (2002) (retaliatory penalties on lawsuits chill access).

3. Subsection (1)(c): Punitive Damages. Reserved for actions with the "sole purpose" of harassment, this is the most punitive, imposing exemplary damages based on content-specific motives.

It fails content-neutrality and strict scrutiny, as it deters legitimate petitions by threatening severe financial ruin for filings later deemed solely malicious, without adequate safeguards. This exacerbates chilling effects, particularly for resource-limited plaintiffs such as those who are unable to obtain regular employment as a result of the defamations perpetrated against them, like this plaintiff. Overall, § 70-a's remedies disproportionately burden the right to petition, rendering the statute unconstitutional on its face.

Put simply, New York has expanded protection for speech and press activities, which already enjoy significant protection under the First Amendment as a matter of federal constitutional law, to such an extreme and novel extent that it now violates the First Amendment Petition Clause protections, which are a substantive right of the plaintiff, and places a dangerous and unconstitutional moat around the courthouse for plaintiffs.

<u>Section 70-a is Unconstitutional When Applied to Claims Arising from Prior Federal Actions Under the Supremacy Clause and Rules Enabling Act</u>

When § 70-a is invoked based on a dismissed federal lawsuit, it conflicts with federal law, violating the Supremacy Clause, U.S. Const. art. VI, cl. 2. The Rules Enabling Act empowers the Supreme Court to prescribe federal procedural rules, which govern in federal courts 28 U.S.C. § 2072. Federal Rules of Civil Procedure (FRCP), including Rule 11 (sanctions for frivolous filings) Rule 12 dismissal motions as well as exclusively control fee awards and remedies in federal actions. Allowing § 70-a to impose state remedies post-federal dismissal supplants these rules, as state law cannot alter federal procedural outcomes. For instance, if a federal defamation suit is dismissed under FRCP 12(b)(6), § 70-a's fee-shifting or damages claims in state court effectively reviews and penalizes the federal proceeding, contravening supremacy. See *Testa v. Katt*, 330 U.S. 386, 389 (1947) (state courts must

enforce federal law, but cannot undermine it). This application is preempted, as it frustrates federal procedural uniformity.

By creating a new state statutory claim or tort, New York has attempted to supplant federal procedural norms, and in so doing threatens every aspect of the independent operation of the federal judiciary as to both procedural and substantive matters. For example, if New York or any other state were dissatisfied by any other procedural rule, such as the standards for stating a claim or for serving a defendant with a complaint, it could create a state substantive remedy like 70-a and circumvent *Erie*, as well as chill access to the federal courts. In an example of the former, a state with an inclination against dismissing complaints on "plausibility" grounds as established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 US 662 (2009) and a preference for the earlier "no set of facts" *Conley v. Gibson*, 355 US 41 (1957) approach, could create a substantive state law claim equal to the entirety of any claim dismissed, with proof of the prior dismissal per 12(b)(6) plausibility as the only allegation required, and then have that substantive claims win a slam-dunk in either state or federal court. Clearly this would have a chilling effect on defendants raising 12(b)(6) motions in federal court. With regards to service of process, a state insisting on in-hand personal delivery for the protection of defendants could create a substantive cause of action against any person serving a federal complaint on a defendant "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there" per FRCP 4(e)(2)(B), equal to the amount in controversy of that case plus an additional punitive amount.

This also applies to the methods by which the federal law operates, and are not exclusively limited to its substantive claims. As this district recently found in *Murchinson Ltd. v. Nano Dimension Ltd.*, 2025 WL 1397615 at *6:

Under the Supremacy Clause of the Constitution, '[w]here a state statute conflicts with, or frustrates, federal law, the former must give way.' " *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d

21

185, 195 (S.D.N.Y. 2012) (alteration in original) (citation omitted) (quoting *CSX Transp., Inc. v. Easterwoo*d, 507 U.S. 658, 663 (1993)); see U.S. Const. art VI, cl. 2 ("[T]he Laws of the United States ... shall be the supreme Law of the Land ...."). "A state law may be conflict preempted if it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' or 'interferes with the method by which the federal statute was designed to reach this goal.' " *Coal. for Competitive Elec. v. Zibelman*, 906 F.3d 41, 55 (2d Cir. 2018) (citations omitted) (first quoting *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015); and then quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987)).

<u>Section 70-a Violates the Erie Doctrine by Inevitably Creating Disparate Substantive Rules For A</u>

<u>Supposedly Identical Cause of Action</u>

Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts in diversity apply state substantive law but federal procedural rules. Anti-SLAPP laws like § 70-a attempt to improperly straddle this line, and their applicability in federal court has not been endorsed by any binding authority. Section 70-a creates forum-shopping incentives: if a prior action is dismissed in federal court (under the FRCP), subsequent § 70-a claims in state court impose state remedies unavailable federally, violating Erie's twin aims of uniformity and discouraging forum shopping. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). Moreover, § 70-a invents a "substantive tort" for procedural dismissals, that applies differently based on prior forum because federal dismissals trigger state penalties without federal equivalents, leading to inconsistent outcomes. This offends Erie by inseparably mixing federal and state substance and procedure at various steps of litigation, and creating different substantive criteria for 70-a claim defendants depending on the prior procedures applied in the original defamation action. Consider for example 70-a's explicit reference to specific state procedures unavailable in federal court "including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules" which represent a balancing of interests to increase efficiency for defendants, while also allowing limited discovery to plaintiffs, which is generally unavailable in federal court at this stage. This is particularly relevant as applied here, because after learning of this action, defendant Finkelman

sought to deny the plaintiff and the Court access to her postings on X, formerly Twitter by blocking the entire account from public view. This is despite defendant Finkelman's continued postings elsewhere such as on Bluesky[1], a competitor to X, and her protestations that all of her activity on that account is protected free speech containing no wrongdoing.

Accepting defendant Finkelman's argument would multiply the inconsistencies that the *Erie* doctrine is meant to reduce. In all prior applications of the *Erie* doctrine the issue presented was solely whether a rule was a procedural or substantive rule (also referred to as a rule of decision), and thus whether a rule provided by federal rules of civil procedure should replace a state rule resulting in a binary set of possibilities. Here, a quadrant matrix is created with four possibilities: a federal court dismissal resulting in 70-a claims being adjudicated in federal court, a state court dismissal resulting in 70-a claims being adjudicated in state court, a federal court dismissal resulting in 70-a claims being adjudicated in state court and a state court dismissal resulting in 70-a claims being adjudicated in federal court. The danger of forum-shopping and inconsistency is further compounded by the fact the cause of action created by 70-a requires the invention of different rules of decision not provided by statute for any purported claim arising out of a dismissal in federal court as opposed to that of a New York state court.

As the Second Circuit noted in *La Liberte v. Reid* at 88:

"The idea that the more stringent requirement of the anti-SLAPP standard is a beneficial "supplement" to the Federal Rules is a policy argument – and fatal, because *the more permissive standards of the Federal Rules likewise reflect policy judgments as to what is sufficient*. See *Shady Grove*, 559 U.S. at 401, 130 S.Ct. 1431 (explaining that because "Rule 23 permits all class actions that meet its requirements, ... a State cannot limit that permission by ... impos[ing] additional requirements") (emphasis added). In *Reid*, the Second Circuit also relied upon rulings by the DC and Fifth Circuit reaching the same conclusion: "Reid and amici curiae contend that she is entitled to attorneys' fees under the anti-SLAPP statute based on the district court's separate Rule 12(b)(6) dismissal. We disagree. "The Act does not purport to make attorney's fees available to parties who obtain dismissal by other means, such as under Federal Rule 12(b)(6)." *Abbas*, 783 F.3d at 1337

---

1    https://bsky.app/profile/clapifyoulikeme.favrd.social

n.5; see also *Klocke*, 936 F.3d at 247 n.6. ("Suffice to say that because [Texas's anti-SLAPP statute] does not apply in federal court, the district court erred by awarding fees and sanctions pursuant to it.").

California's anti-SLAPP statute likewise awards attorneys' fees only to "a prevailing defendant on a special motion to strike." Cal. Civ. Pro. Code § 425.16(c)(1) (emphasis added). So Reid cannot recover attorneys' fees based on the district court's Rule 12(b)(6) dismissal … Nor may she recover them under the anti-SLAPP statute if she later prevails by other means." New York's current 70-a also explicitly requires that the demonstration required for relief be one "including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules".

Some further discussion of *Shady Grove* is warranted because although lacking a majority opinion, it is the last word on the *Erie* doctrine. Justice Scalia summarized in part II-B, joined by the Chief Justice, Justice Thomas, and Justice Sotomayor:

In sum, it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule. We have held since *Sibbach*, and reaffirmed repeatedly, that the validity of a Federal Rule depends entirely upon whether it regulates procedure. See *Sibbach v. Wilson & Co.*, 312 U. S. 1, 14 (1941), supra, at 14; *Hanna v. Plumer, 380 U. S. 460, 463–464 (1965)*, supra, at 464; *Burlington Northern R. Co. v. Woods*, 480 U. S. 1, 4–5 (1987), 480 U. S., at 8. If it does, it is authorized by §2072 and is valid in all jurisdictions, with respect to all claims, regardless of its incidental effect upon state-created rights…

Because Rule 12(b)(6) is a rule of procedure, as it trans-substantively governs the process by which any civil claim regardless of its substance or origin is dismissed for failure to state a claim, it prevails in federal court and cannot be modified or imposed upon by any state, and it does not provide for attorney's fees to be awarded pursuant to a dismissal. Thus in federal court, only a successful substantive cause of action proven on the merits, and not the dismissal of one (as New York Court's practice per the NY CPLR), can result in the award of attorney's fees.

Section 70-a also runs afoul of the alternative view expressed by the dissent in *Shady Grove* by Justice Ginsburg joined by Justices Kennedy, Breyer and Alito, which takes a purpose driven analysis. In Part I-C of the J. Ginsburg opinion, she thoroughly considered the design and intention of the state

rule governing remedies in class actions and concluded that it was substantive in nature because it sought to effect a cap on damages for an existing cause of action. There, a specific dollar amount of statutory damages was provided by New York for the procedural aims of encouraging individual plaintiffs with fairly small (and thus not economically justifying of attorney time) actual damages resulting from a substantive cause of action to vindicate their rights precisely for the reason that attorney's fees are not recoverable by default. New York decided to limit the availability of those specified statutory damages only in class actions because the aggregation of claims was sufficient to justify the resources dedicated towards the bringing of the underlying substantive claims, and the multiplication of the statutory amount would be a huge and disproportionate penalty. Here, by contrast, the clear intent of the New York legislature is to manufacture a purportedly substantive remedy (as defendant Finkelman argues) motivated purely by the existence of procedures applicable in federal court, which do not allow for fee shifting, an inherently procedural matter. New York is not adding, and then limiting some unjustified circumstances statutory damages to an existing cause of action as contemplated in *Shady Grove*, but rather manufacturing a new cause of action that serves no other purpose but to circumvent the procedural federal rules of civil procedure and attach otherwise conflicted and impermissible consequences to a federal Rule 12(b)(6) dismissal. Therefore also under this analysis, though for a different reason from that of J. Scalia, 70-a should be rendered a nullity in federal court because it is superficially substantive but truly procedural.

In his lone concurrence, Justice Stevens who joined in the result with J. Scalia but agreed in many points with J. Ginsburg, and focused his analysis on whether there was a clash as prohibited by the Rules Enabling Act 28 U.S.C. § 2072 which requires that "Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect". Such a focus further undermines 70-a for another reason, which is that the substantive right that defendant Finkelman alleges is created as the result of a federal Rule

12(b)(6) dismissal, is itself only triggered and thus fatally attached to the operation of that federal rule. In other words, the federal rule (or rules) does not "abridge, enlarge or modify" any substantive right, rather it merely does not result in the creation of a new one according to its ordinary application by a federal court. The second sentence of the Rules Enabling Act affirmatively overrides 70-a, because it is in "conflict" with the federal rules, which do not provide for attorney's fees while also not abridging, enlarging or modifying any substantive right as exempted by the first sentence. New York tacitly acknowledges this by requiring that the creation of the substantive right be proven by "a demonstration, including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules". Without such an adjudication, New York cannot properly create a substantive right from a federal Rule 12(b)(6) dismissal, and it is important to evaluate the order of operations.

Taking a step back and looking at the issue from a broader perspective, it should also be considered that as matter of international law and in looking at the approach followed in other nations, the award of costs and fees is also universally viewed as an inherently procedural matter, in which the *lex fori* applies. No known jurisdiction, and certainly not the other common law jurisdictions such as the United Kingdom, Canada, Australia and New Zealand determine the award of costs and attorney's fees on the basis or as a question of substantive law. None of the continental European civil law jurisdictions do so either and the plaintiff has been unable to identify any jurisdiction that creates a substantive remedy for attorney's fees to overcome the "American rule" under which each party bears their own legal costs to litigation when they are not awarded procedurally by a forum, nor of one that achieves the opposite result by imposing the result of the American rule in a different court system where the English (but really universal international) rule is followed. To do as New York has done offends comity between jurisdictions and court systems, and could also lead to international law and jurisdictional problems if applied to foreign litigants.

In sum, New York is attempting to use a superficial understanding of *Erie* and its progeny in order to destroy the fundamental equilibrium established by *Erie* and the Federal Rules of Civil Procedure, both products of 1938 and the New Deal. Thus, after examining the original meaning and purpose of the doctrine, alongside the Rules Enabling Act it seeks to apply, it may be necessary to violate it in a superficial way by foreclosing a constitutionally problematic and underhanded attempt to circumvent the independence of the federal judiciary applying its own rules of procedure, in order to save the whole doctrine from being supplanted by a 'substantification' of any federal procedural rule disliked by any state legislature. It is simply impossible to allow for the independence of the federal courts and the policy choices made by the Federal Rules of Civil Procedure as promulgated by the Supreme Court and submitted to Congress pursuant to the Rules Enabling Act 28 U.S.C. § 2071-2077 while also allowing every state to create new substantive causes of action that attach to the outcomes of federal procedural rules being applied in federal court that any given state dislikes. *Erie* at 74 itself addressed the "mischievous results" of federal courts ignoring state precedent, common law and inventing their own tort law out of whole cloth, and should not be contorted to encourage new mischief by upsetting a delicate balance achieved between federal and state courts as New York is attempting.

<u>Section 70-a Engages in Reverse Commandeering of Federal Courts</u>

The anti-commandeering doctrine prohibits the federal government from compelling states to enforce federal law, see *Murphy v. NCAA*, 584 U.S. 453 (2018). In reverse, states cannot commandeer federal entities. Section 70-a does so by subjecting federal court dismissals to state remedies, effectively forcing federal courts to anticipate state liability determinations in rulings and compelling federal plaintiffs to face state procedures post-dismissal. This "reverse commandeering" undermines federal sovereignty, as states cannot dictate consequences for federal proceedings and thereby control them.

Federal courts, even despite the Anti-Injunction Act, 28 U.S.C. § 2283 may ensure the finality of their own proceedings, and protect their own proper jurisdiction and independence by commanding state courts to stay or surrender jurisdiction as to certain matters. For example, in *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988) this was endorsed with respect to protecting the finality of prior judgments issued according to federal procedures. Such an exercise of power was also endorsed when necessary in aid of federal jurisdiction in *Kline v. Burke Construction Co.*, 260 U.S. 226 (1922).

<u>The Societal Value of Defamation Actions Underscores the Unconstitutionality of Section 70-a</u>

Defamation suits, including *per se* categories (e.g., imputing crime or loathsome disease), serve vital social purposes by enabling truth-proving through evidentiary rules, fostering accountability in discourse. They deter falsehoods while allowing defenses like truth, promoting societal trust. Section 70-a undermines this by chilling such actions when they touch public interests, depriving society of judicial truth-finding mechanisms essential to democratic debate. Even indigent plaintiffs who are injured by defamation, and can show no economic injury or prospects are still entitled to correct the record relating to the most fundamental truths necessary to allow them to participate, even minimally, in society such as their not being criminals or possessing "loathsome diseases".

According to its own terms, 70-a purports to recognize and protect "public petition", yet all of its remedies are crafted in a manner that seems to only protect speakers and publishers, but never petitioners, and are in fact squarely against those who petition in relation to public matters to limit them from so doing. Defendant Finkelman's conduct, as demonstrated by the exhibits to the Complaint and in the record, amounts to a hateful and vicious campaign of personal destruction aimed at preventing the plaintiff from obtaining a professional license, professional employment or fairly participating in society free of false stigma and defamation. In this motion and the bad-faith and abusive concurrent

sanctions motion defendant Finkelman goes a step further to punish the plaintiff for attempting to utilize the only means available to clear his name.

## Conclusion

Defendant Finkelman's FRCP Rule 54(d)(2) motion for attorney's fees should be denied with prejudice.

Respectfully submitted,

/s/ Gideon Rapaport

Gideon Rapaport, *pro se*
627 – 1078 Summit Avenue
Jersey City, NJ 07307
gideonrapaportlaw@outlook.com
(862)-213-0875