**OPPOSITION TO DEFENDANT FINKELMAN'S MOTION FOR SANCTIONS**

Gideon Rapaport, *pro se*
627 – 1078 Summit Avenue
Jersey City, NJ 07307
gideonrapaportlaw@outlook.com
(862)-213-0875

## TABLE OF CONTENTS

**Preliminary Statement**………………………………………………………………..3

**Argument**……………………………...…………………………………………….6

The Purported Contradiction Alleged By Defendant Finkelman In The Plaintiff's Attribution Of Injury Is Misapprehended By Defendant Finkelman Due To A Failure To Consider The Filing Dates Of Relevant Pleadings And The Logical Truth That Multiple Causes May Together Result In The Same Outcome………………………………………………………….…6

Defendant Finkelman Failed To Enter A Personal Declaration In Favor Of Her Contentions……7

The Plaintiff Did Not Commence This Action For An Improper Purpose And No Evidence Supporting Such A Contention Or Bad Faith Was Provided…………………………………..…8

Defendant Finkelman's Conduct After Becoming Aware Of This Action Undermines Her Claims………………………………………………………………………………12

The Plaintiff Had Adequate Legal Support For All Claims………………………………...…13

The Defamation Claim Involving the Digitally Manipulated "Do Not Admit" Image Was Not Frivolous Because the Image Was Reasonably Capable of a Defamatory Meaning, Including Per Se, Under New York Law…………………………………………………………...…13

The Defamation Claim Was Not Frivolous Because Multiple Nonfrivolous Arguments Existed That Defendant's Tweets Did Not Qualify for the Fair Report Privilege Under N.Y. Civil Rights Law § 74………………………………………………………………………………16

The False Light and Invasion of Privacy Claim Was Not Frivolous Because a Nonfrivolous Choice-of-Law Argument Supported Application of New Jersey Law, Which Recognizes the Tort………………………………………………………………………………19

**Conclusion**…………………………………………………………………………**22**

## Preliminary Statement

Defendant Finkelman has returned with a previously vacated motion for sanctions that has no basis in fact or law and is itself sanctionable as a malicious and vexatious abuse of process. This renewed motion is part of a pattern of abusive litigation tactics meant to harass and burden the *pro se* plaintiff and extort money as well as unwarranted (and often unrelated) concessions in these proceedings. The plaintiff has previously moved for sanctions to limit these abuses by defendant Finkelman and her counsel under the inherent power of the Court, and has also provided a safe harbor warning within the meaning of Rule 11 which was not utilized.

In the interim period between the original filing of this sanctionable motion for sanctions and its current renewal, defendant Finkelman has also moved for an extraordinary filing ban against the plaintiff on an emergency basis. This temporary restraining order/preliminary injunction motion brought on an emergency posture was properly denied, and the Court correctly noted that it failed to satisfy any of the four requirements for such extraordinary injunctive relief generally nor any of the factors that justify a filing ban in general Dkt No. 74. Such deficiency in every aspect would be apparent to any competent attorney, but it did not deter defendant Finkelman's counsel from bringing such a baseless motion in order to harass and burden the plaintiff while also wasting judicial resources See Dkt No. 68.

In seeking such unjustified relief, defendant Finkelman also deceptively represented to the Court that the plaintiff had violated a standing Court order when in fact he did not as the Court noted Dkt No. 74 at 4 and also that the plaintiff brought another action asserting the same claims that were dismissed when in fact he brought a declaratory judgment action relating to future litigation threatened by defendant Finkelman, among many other misrepresentations.

3

Defendant Finkelman's counsel, Mr. Max Rodriguez, also directly lied to the Court at the September 10, 2025 emergency hearing sought by him about defendant Finkelman's intentions to bring a new action against the plaintiff as she previously threatened, and referred to such references and later threatening language communicated to the plaintiff on several occasions as mere "boilerplate". These instances of misconduct and deception were further elaborated on in my support of my motion for extension of time Dkt No. 88. Subsequent to that hearing and as discussed therein, the plaintiff repeatedly offered to dismiss the declaratory judgment action in exchange for a specific waiver by defendant Finkelman of such future claims she had previously threatened to bring in order to avoid unnecessary litigation. Defendant Finkelman would not agree to the terms proposed at the hearing, and instead threatened the plaintiff with sanctions and also demanded unrelated concessions, as shown in Dkt No. 68 at 2-3, including that the plaintiff agree to a general filing ban anyway, only file his notice of appeal according to a set of restrictions which may render it untimely and thus jurisdictionally defective, and ask for defendant Finkelman's permission to file any motion so her counsel in advance. This was also after Mr. Max Rodriguez ridiculously asserted the ability to know *ex ante* that there was no "colorable basis" for any possible future motion by the plaintiff. Dkt No. 67-2 at 4 and 8.

For defendant Finkelman and her counsel, every accusation is in fact an admission, as is further demonstrated by Mr. Max Rodriguez's assertion that he found a "trust issue" in conferring with the plaintiff at the same hearing where he himself directly lied to the Court, and after which he would go on to attempt to deceive the Court into finding that the plaintiff had made exhaustive remarks as to what future basis the plaintiff would have for a motion for reconsideration at the hearing See Transcript Dkt No. 75. In fact, the plaintiff did not make any

remarks whatsoever relating to any basis for reconsideration, and rather outlined the well-supported and good-faith nature of arguments already made, with the false light invasion of privacy claim (also addressed herein) provided by was of an example as explained in the plaintiff's letter Dkt No. 78 at 2.

There are ample examples of frivolous argument, abuse of process and relief being demanded for improper purposes in this docket, but they are all attributable to defendant Finkelman and her counsel, Mr. Max Rodriguez, and not to the plaintiff or his former counsel. In the conduct giving rise to this action defendant Finkelman sought to injure, humiliate and ruin the life and career of the plaintiff, and did so by seeking out, republishing and repeatedly promoting defamatory forgeries meant to defame and portray the plaintiff in a false light. Now, defendant Finkelman wishes to punish the *pro se* plaintiff for attempting to utilize in good faith the only means available to clear his name.

In addition to specifically cited materials, the plaintiff incorporates by reference his opposition to defendant's motion for attorney's fees, his opposition to the defendant's denied emergency motion for a filing ban and surreply Dkt. Nos. 62, 65 and 68 his opposition to the defendant's vacated prior motion for sanctions Dkt. No. 28 and the motion to dismiss Dkt. No. 33. The plaintiff also incorporates letter Dkt. No. 78 as well as defendant Finkelman's exhibits to the motion to dismiss Dkt Nos. 18-5,18-6 and 18-7.

**Argument**

<u>The Purported Contradiction Alleged By Defendant Finkelman In The Plaintiff's Attribution Of Injury Is Misapprehended By Defendant Finkelman Due To A Failure To Consider The Filing Dates Of Relevant Pleadings And The Logical Truth That Multiple Causes May Together Result In The Same Outcome</u>

Defendant Finkelman continues in attempting to mislead the Court by representing that the plaintiff's First Amended Complaint of the original *Doe* action, which was filed on May 24, 2024 somehow contradicts the Complaint in this action brought against her, filed on August 5, 2024, resulting in a purportedly sanctionable falsity.

The supposed contradiction is that the injury the plaintiff suffered defamatory conduct of the defendants relating to his admission to the bar was attributed both to the defendants of the *Doe* action and to defendant Finkelman.

Defendant Finkelman omits that the filing of the Original Complaint of the *Doe* action on July 28, 2023, which necessarily preceded defendant Finkelman's reaction in republishing the defamatory forged image on August 6, 2023, did not allege the injury attributed to her at that time. That Original Complaint did not and could not allege injury as to the plaintiff's admission to the bar because the plaintiff had only finished sitting for the bar exam on July 26, 2023, two days prior to filing, thus making it impossible to apply for admission at that time. Rather, the plaintiff only alleged such an injury on May 24, 2024, well-after defendant Finkelman's August 6, 2023 republication. Thus, defendant Finkelman's republication of the forged image, preceded the plaintiff's first representation that he had suffered such an injury in the amended pleading.

6

Asides from mistaking a date by approximately 10 months, defendant Finkelman also neglects the very simple logical truth that multiple causes may bring the same result. Her tortious conduct is clearly linked to the conduct of the defendants in the *Doe* action because she republished the defamatory material that they originally fabricated and published, and significantly amplified its reach to over 300,000 viewers in addition to permanently entrenching it in major search engine results. If the defendants in the *Doe* action had not created and initially published that forged image, defendant Finkelman could not have republished it. Conversely, if defendant Finkelman had not republished it on August 6, 2023, it may have never been republished (to over 300,000 viewers) or become publicly available at all, as the plaintiff only entered it into the record of the *Doe* action on May 24, 2024.

<u>Defendant Finkelman Failed To Enter A Personal Declaration In Favor Of Her Contentions</u>

Defendant Finkelman has also presented assertions as to supposed injuries suffered by her related to her purported loss of privacy as to her "Mrs. Detective Pikajew Esq." pseudonym (even after she has persuaded the Court that New York law does not provide for any such right to privacy) but has provided no personal declaration or affidavit as to these facts asserted. This is because these factual allegations, which are only improperly presented without a sworn statement, are not true. In *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136 (2d Cir. 2000) it was held that "remand is necessary because it appears that the District Court erred in fixing the amount of the 'compensatory' sanction by relying on unsworn assertions by Mackler concerning its injury". Attorney say-so is not enough to support a finding of particular injury, and should be treated as a nullity.

<u>The Plaintiff Did Not Commence This Action For An Improper Purpose And No Evidence
Supporting Such A Contention Or Bad Faith Was Provided</u>

Defendant Finkelman bears the burden of proof in providing the Court with particularized

findings of bad faith or improper purpose on the part of the plaintiff. "Sanctions may not be

imposed unless a particular allegation is utterly lacking in support."*Storey v. Cello Holdings,

L.L.C.*, 347 F.3d 370, 387–88 (2d Cir. 2003) citing *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d

Cir.1996) . Furthermore, mere dismissal on the merits does not prove bad faith or improper

purpose, and this must be proven independently. "Without objectively unreasonable statements,

economic disparity and a greater litigiousness do not alone amount to improper purpose." *Storey*

at 393. In this case, the economic disparity is clearly in favor of defendant Finkelman, because

she is an attorney and has obtained professional employment, converse to results of the injury

she has maliciously inflicted on the plaintiff.

Defendant Finkelman has not provided any actual or acceptable evidence to show

improper purpose or bad faith on the part of the plaintiff and instead relies purely on speculation,

which is not an acceptable basis for factual findings, and most of which is rebuttable by the

record, including a significant amount of materials entered by defendant Finkelman herself in

Dkt Nos. 18-5,18-6 and 18-7. The materials exhibit in the first two instances true and fair

reporting that was nonetheless critical of the plaintiff, and in the latter case derogatory and

insulting remarks made against him by anonymous internet users. The plaintiff did not bring any

action against any of those persons, because they did not republish the forged image which is the

topic of this action, and part of the *Doe* action.

In terms of speculation, defendant Finkelman asserts that the plaintiff brought this action in for the improper purpose of identifying her as "Mrs. Detective Pikajew Esq." posting under the username @clapifyoulikme. This conclusion is patently illogical because the plaintiff could have identified her in any speech or publication he wished, as protected by the First Amendment because such an identification would be true, and also by NY CLR 76-a because the public posts of defendant Finkelman are a matter of "public interest" which must be "construed broadly … any subject other than a purely private matter" 76-a(1)(d). New York, which the domicile of defendant Finkelman does not recognize a right to privacy as this Court has held. The plaintiff did not advertise or publish any material exposing defendant Finkelman as "Mrs. Detective Pikajew Esq." because he was not interested in doing so. Unlike in the *Doe* action, the plaintiff did not even rely on any subpoena or similar compulsory legal process to identify her. Defendant Finkelman abusively attempts to sanction the plaintiff for bringing an action against her by her legal name, which is an ordinary requirement of service by FRCP Rule 4.

Defendant Finkelman also asserts that reference to her being an attorney is somehow improper. This is a matter of public record on the New York Courts website[1], helpful in identifying her as opposed to multiple other individuals in the New York area with the same name who are not attorneys, and is also probative of her knowledge and state of mind and intent regarding the legal topics that she engaged with in her series of posts, one of which republished the defamatory forged image. In this litigation she successfully argued that the forged image, although not in the record of the proceeding, was "background material" in the context of this litigation. She seems to have a very different standard as applied to true and unobjectionable background information provided to identify her. As to her personal conduct, defendant

---

1    https://iapps.courts.state.ny.us/attorneyservices/search?1

Finkelman also published ("doxxed" by her definition) the personal information and home address of the plaintiff's former counsel merely because he represented the plaintiff Complaint Exhibit at 25 and mocked him because of his age.

Though not a party to the private conversation between the plaintiff's former counsel and defendant Finkelman's counsel, it can be reasonably inferred that defendant Finkelman's fragmentary quotation of a phone call absent any context was not improper in the proper context of a settlement discussion. Defendant Finkelman's counsel likely offered a removal of the defamatory forged image and to obtain Mr. Altman's reasonable affirmative response as a basis for fabricating claims of an improper purpose against the plaintiff. Defendant Finkelman's counsel has a pattern of making deceptive and fraudulent representations to the Court, some of which have included falsely accusing the plaintiff of violating a Court order and directly lying to the Court about threats for future actions constantly renewed were mere "boilerplate" as discussed *supra*.

Rather than having any improper purpose, the plaintiff, as declared to, was solely concerned with clearing his name and obtaining just compensation from defendant Finkelman for the republication of defamatory forged image.

In *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) the Second Circuit held: "It is not the role of Rule 11 to safeguard a defendant from public criticism that may result from the assertion of nonfrivolous claims. Further, unless such measures are needed to protect the integrity of the judicial system or a criminal defendant's right to a fair trial, a court's steps to deter attorneys from, or to punish them for, speaking to the press have serious First Amendment

implications. Mere warnings by a party of its intention to assert nonfrivolous claims, with predictions of those claims' likely public reception, are not improper."

Here, the plaintiff did not engage in any speech regarding defendant Finkelman to the public or press, and merely asserted claims in good faith to clear his name and obtain just compensation. Defendant Finkelman may inevitably face some criticism from the public for her malicious and outrageous conduct properly understood and accurately attributed to her, but as *Sussman* explained, this may be an unavoidable part of litigation.

Even when one of a parties' multiple purposes in seeking relief by filing an action may be improper, which is not the case here, the party may not be sanctioned or deterred from seeking and obtaining warranted judicial relief as long as the action is not objectively unreasonable or frivolous. "A party should not be penalized for or deterred from seeking and obtaining warranted judicial relief merely because one of his multiple purposes in seeking that relief may have been improper." *Sussman v. Bank of Israel*, 56 F.3d 450, 32 Fed. R. Serv. 3d 978 (2d Cir. 1995); see also *Spithogianis v. Haj-Darwish*, 2008 WL 82188 (S.D.N.Y. 2008) (Francis, M.J.) (subjective evidence of improper purposes behind filing complaint including family members and associates of defendant with limited justification were insufficient for sanctions when pleading was not objectively frivolous).

The plaintiff brought this action because defendant Finkelman is the *only* person known to the plaintiff to have sought out and republished in a publicly accessible manner the first version of the defamatory forgery that was at issue in the *Doe* case, which the defendants in that action had taken down from the internet approximately one day after publishing it in order to

11

prevent comparison with their second, more technically sophisticated, version of the defamatory forgery.

As is stated in the Complaint, this action was brought solely because defendant Finkelman republished the first version of the defamatory injury, caused it to be viewed hundreds of thousands of times in conjunction with the #LawTwitter tag on Twitter (now X) to direct the republication to a professional audience as well as become indexed by major internet search engines in conjunction with the plaintiff's name, and repeatedly promoted the specific posting of that image by link.

Defendant Finkelman's Conduct After Becoming Aware Of This Action Undermines Her Claims

Upon becoming aware of this action, which was filed on August 5, 2024, on or about August 12, 2024 defendant Finkelman immediately blocked from public view the entirety of her account[2] on Twitter, now X. Prior to this, defendant Finkelman would regularly tweet/post between 100 and 200 times per day.

At the same time, defendant Finkelman does not appear to have been deterred in any way from utilizing her pseudonymous "Mrs. Detective Pikajew Esq." with the same username @clapifyoulikeme, only she now publishes elsewhere[3].

It appears that defendant Finkelman, for all of her concerns about speech and press, has plenty to hide, especially considering that the only post at issue is her republication of the defamatory forged image. Though it is impossible for the plaintiff or the Court to know for sure, based on differing error messages provided when accessing the thread and the specific republication of the image at issue as opposed to entirely unrelated posts, that they may have

---

2    https://x.com/clapifyoulikeme/
3    https://bsky.app/profile/clapifyoulikeme.favrd.social

been deleted behind the scenes. The plaintiff presented this concerning issue, with as much

evidence as he could gather at Dkt No. 47 with exhibits 47-1 and 47-2 in comparison. Defendant

Finkelman on the other hand only offered attorney say-so as opposed to any real evidence.

<u>The Plaintiff Had Adequate Legal Support For All Claims</u>

In *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157 (2d Cir.

1999) the Second Circuit cited *Mareno v. Rowe*, 910 F.2d 1043 (2d Cir.1990), cert. denied, 498

U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991):"to constitute a frivolous legal position for

purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of

success and no reasonable argument to extend, modify or reverse the law as it stands." *Id.* at

1047. Here there exist nonfrivolous arguments, with strong chances of success that are

reasonable in support of the claims brought in this action.

<u>The Defamation Claim Involving the Digitally Manipulated "Do Not Admit" Image Was Not
Frivolous Because the Image Was Reasonably Capable of a Defamatory Meaning, Including Per
Se, Under New York Law</u>

Defendant asserts that Plaintiff's defamation claim was "patently frivolous" in its entirety,

devoting particular criticism to the allegation concerning Defendant's publication of a digitally

manipulated photograph depicting a fictitious "Do Not Admit" notice posted in the lobby of

Plaintiff's former employer's building. the plaintiff has nonfrivolous argument to support a state

of law is or should properly find such a forged image to be defamatory. The digitally

manipulated photograph depicted a fictitious "Do Not Admit" notice posted in the New York

lobby of Kirkland & Ellis LLP, the plaintiff's former employer's building. The forged image

prominently featured the plaintiff's photograph, full name, and the employer's name, purporting

to be an official security notice barring Plaintiff from the premises. In fact, no such notice was ever created or displayed. A nonfrivolous argument exists that the forged image constitutes, or should properly constitute defamation, including defamation *per se*, under New York law.

A publication is defamatory under New York law "if it *tends* to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977) (emphasis added). Whether a statement is reasonably susceptible of defamatory meaning is a threshold legal question. Such a consideration must be made by a Court in from the perspective of the average reasonable reader in full context, which here would include the related defamatory allegations that the plaintiff was fired for sexual harassment, as published and spread by the defendants of the *Doe* action, and discussed in that action itself as engaged with by defendant Finkelman. *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985); *Silsdorf v. Levine*, 59 N.Y.2d 8, 12–13 (1983); *Golub v. Enquirer/Star Group, Inc.*, 89 N.Y.2d 1074, 1076 (1997).

The forged image conveyed the unmistakable false factual assertion that the plaintiff's former employer had officially declared him *persona non grata* and banned him from its premises. "Do Not Admit" or trespass notices are not issued lightly, they are reserved for individuals who have engaged in serious misconduct, typically criminal behavior (e.g., theft, assault, threats) or conduct posing a genuine security risk. By publishing an image that appeared to be an authentic security poster, defendant Finkelman necessarily implied that Plaintiff had committed ban-worthy acts and that his former employer had formally determined him to be dangerous, dishonest, or unfit. That implication is defamatory on its face. Defendant Finkelman

14

enthusiastically credited her receipt of the previously taken down forged image to an "anonymous tipster" further bolstering its supposed credibility.

The claim is especially meritorious as defamation *per se*. New York recognizes defamation *per se* (presumed damages) when a statement that tends to injure another in his trade, business, or profession or that imputes the commission of a serious crime. *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992); *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 179 (2d Cir. 2000). The forged image did both.

As an attorney, bar candidate or professional in general, a fabricated notice implying plaintiff was banned for cause directly attacks his professional reputation and fitness which is precisely the type of statement courts have held actionable *per se*, *November v. Time Inc.*, 13 N.Y.2d 175, 178 (1963) (statement injuring plaintiff in profession is *per se*); *Afftrex, Ltd. v. General Elec. Co.*, 161 A.D.2d 855, 856 (3d Dep't 1990) (implying dishonesty or unfitness in business context is *per se*).

The visual suggestion that Plaintiff is a trespasser or security threat imputes criminality or moral turpitude, another classic *per se* category. See *Epifani v. Johnson*, 65 A.D.3d 224, 233 (2d Dep't 2009).

New York also recognizes defamation by implication, where a defendant "intends or endorses" a defamatory inference drawn from juxtaposed true and false facts or from fabricated material. *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37–38 (1st Dep't 2014); *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015). Fabricating an ostensibly official document and publishing it without any attached disclaimer that it is fictitious is the functional equivalent of a deliberate alteration that materially changes meaning, also conduct the Supreme Court has held

actionable in the analogous context of fabricated quotations *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (deliberate alteration giving false impression is actionable falsity). A reasonable viewer could readily conclude that the employer actually issued the notice, and defendant endorsed that false and damaging inference by crediting it to an "anonymous tipster" without any caveat or qualification after receiving and republishing it.

<u>The Defamation Claim Was Not Frivolous Because Multiple Nonfrivolous Arguments Existed</u>
<u>That Defendant's Tweets Did Not Qualify for the Fair Report Privilege Under N.Y. Civil Rights</u>
<u>Law § 74</u>

Section 74 grants absolute immunity only for a "fair and true report of any judicial proceeding." Courts construe the privilege narrowly, and defendants bear the burden to prove it applies conclusively. *Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 67 (1979); *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2d Dep't 2009). Any substantial doubt resolves against immunity, or at least should be considered as a nonfrivolous argument for these purposes.

The plaintiff advanced multiple strong, nonfrivolous that the privilege did not attach each of which would be sufficient to deny immunity:

1.      Defendant's tweets/posts were not "reports" of a judicial proceeding. They consisted entirely of satirical commentary, ridicule, and original content rather than fair and true reporting of the *Doe* action. One post featured a digitally manipulated "DO NOT ADMIT" poster that defendant Finkelman herself solicited from an anonymous third party (referred to by her as an "anonymous tipster") and republished. The defendants of the *Doe* action originally created this image and it never appeared in any court filing, docket, or public record of that case though

16

pleadings mentioned it. Soliciting and injecting private, third-party material transforms the publication into commentary, not a "report." *Wenz v. Becker*, 948 F. Supp. 319, 323-324 (S.D.N.Y. 1996). Furthermore, it is not clear that since the posts are distinct from each other by address and in format, that one may bring immunity to another.

2.        The tweets/posts were neither "fair" nor "true" in substance. Defendant republished a fabricated image created by the defendants of the *Doe* action, obtained privately, and placed in a post without clear disclaimer as if it were authentic or officially tied to the proceeding. This added false and unfair implications of serious misconduct. The privilege requires substantial accuracy and forbids material distortions or additions that alter the report's effect on the reasonable person. Holy Spirit, 49 N.Y.2d at 67–68; *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 520-521 (S.D.N.Y. 2013). The test is whether a reasonable person would reach a different conclusion in relying upon the report compared with considering the actual contents of the proceedings. Defendant Finkelman directly contradicted the pleadings in order to satirize and mock the plaintiff, which is not consistent with making a fair and true report by fabricating a quotation "To be clear, I was excited about women's rights getting stripped, but I was way more excited about getting to play with guns." when in fact the materials in the official proceedings stated the opposite "plaintiff was not particularly interested in the Dobbs case" Complaint Exhibit 2 at 6. Furthermore, defendant Finkelman's contribution did not provide any factual information about the actual proceedings whatsoever. Instead, defendant Finkelman speculated about things such as whether a Twitter personality referred to as "the menswear guy" would be called as an expert witness *Id.* at 5, compared the plaintiff to a fictional villain from the *Final*

*Fantasy* series of Japanese role-playing computer games *Id.* at 21 and referred to him as a

"monster" created by "ghouls" *Id.* at 23.

3.        The fabricated image was never part of any official judicial record when republished

on August 6, 2023, and would only become part of the *Doe* action almost one year after

defendant Finkelman's republication on May 24, 2024. Section 74 protects only reports of

material actually contained in or arising directly from the proceeding itself. The image was

originally created by third parties, and only mentioned in the *Doe* pleadings, but was never filed,

exhibited, or docketed, and was not publicly available online, when defendant Finkelman

republished it thus falling entirely outside the record. Defendant Finkelman's act of soliciting it

privately and republishing it added extra-record material Complaint Exhibit 2 at 3. Courts limit

the privilege strictly to the proceeding's contents. *Corporate Training Unlimited v. Nat'l Broad.

Co.*, 868 F. Supp. 501, 509 (E.D.N.Y. 1994) (references to proceeding were mostly in passing

and not seriously addressed); *Komarov v. Advance Magazine Publishers, Inc.*, 180 Misc. 2d 658,

663 (Sup. Ct. N.Y. Co. 1999).

4.        The image constituted "other matter added" explicitly excluded from § 74 protection.

The statute itself provides: "This section does not apply to a libel contained in any other matter

added by any person concerned in the publication…" N.Y. Civ. Rights Law § 74 (final sentence).

Defendant's solicitation and republication of a private, third-party-fabricated image—never part

of the official proceeding—qualifies as precisely such "added matter." No reported case extends

§ 74 to immunize a publisher who actively seeks out and inserts non-record, third-party-created

defamatory materials, even if tangentially referenced in pleadings, as opposed to incidental

background information that is not the main topic of the defamation action nor inherently defamatory.

5.    The forged image was the tweets' primary defamatory content, not mere "background material." Even incidental background material loses protection when it becomes the publication's focus or contains inherently defamatory material. Here, the fabricated poster dominated the tweet's reach and was the sole source of the alleged defamatory injury.

6.    From a policy perspective, the outcome achieved by the holding that § 74 applies, which is that an individual may seek out and republish defamatory material, including by targeting it to new and professional audiences, and then claim an absolute immunity because they included some screenshots of an official proceeding as well as erroneous and clownish commentary as part of a series of posts is a deeply troubling one, and would create a license to republish any defamation that is being litigated without any caveat or warning.

These textually grounded arguments—especially the statutory exclusion for "added matter" and the image's non-record status made § 74's application far from clear-cut. Reasonable litigants could conclude the tweets fell outside the privilege's narrow scope. The Court's contrary merits ruling does not render the claim sanctionable. *Salovaara v. Eckert*, 222 F.3d 19, 29-30 (2d Cir. 2000); *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) ("The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable.")

   The False Light and Invasion of Privacy Claim Was Not Frivolous Because a Nonfrivolous Choice-of-Law Argument Supported Application of New Jersey Law, Which Recognizes the Tort

Defendant Finkelman erroneously labels the New Jersey plaintiff's false light invasion of privacy claim as "patently frivolous" solely because New York does not recognize the cause of

19

action. Def. Mem. at 11 (citing, *inter alia*, *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115 (1993)). This ignores the critical choice-of-law analysis required in diversity cases and Plaintiff's New Jersey domicile, which provided an objectively reasonable basis to argue for application of New Jersey substantive law as to this claim.

Under New York's choice-of-law rules, which govern here per *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941), the law of the plaintiff's domicile applies to privacy torts such as false light because the domiciliary state has the greatest interest in protecting its resident's personality rights in their local community. *Restatement (Second) of Conflict of Laws* § 153 (1971) on multistate invasion of privacy: "The local law of the state of the plaintiff's domicil governs" privacy claims); see also *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (applying domicile rule in multi-state defamation cases with analogous interest-analysis).

This precise issue arose in *Catalanello v. Kramer*, 18 F. Supp. 3d 504 (S.D.N.Y. 2014), where the Southern District in applying New York choice-of-law principles held that New Jersey law governed a false light claim brought by a New Jersey-domiciled plaintiff, even though the defamatory publication and other contacts were centered in New York and elsewhere. *Id.* at 518–19 (Engelmayer, J.) (expressly recognizing that "New Jersey courts recognize a cause of action for false-light invasion of privacy" under *Romaine v. Kallinger*, 109 N.J. 282, 294–95 (1988), and applying New Jersey substantive law).

*Romaine* contrasted the global reputational nature of defamation injuries from those of false light invasion of privacy, which involve the plaintiff's privacy and mental tranquility in the context of their local community, false light invasion of privacy is a tort that should clearly be applied per New Jersey law due to New York's adoption of the doctrine of dépeçage in and the

definitionally local nature of the tort "[T]here is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction" *Babcock v. Jackson*, 191 N.E.2d 279, 12 N.Y.2d 473 (N.Y. 1963) at 484.

*Catalanello* was favorably cited by the Second Circuit in *Kinsey v. New York Times Co.*, 991 F.3d 171 (2d Cir. 2021). There, the Circuit identified Catalanello as a case where false light was properly analyzed under the law of a recognizing jurisdiction (New Jersey) due to the plaintiff's domicile and the local nature of the injury, reinforcing that choice-of-law determinations rather than blanket non-recognition under New York law controls the viability of such claims. *Id.* at 176 & n.3 (citing *Catalanello* approvingly in contrast to cases applying New York law).

Given plaintiff's New Jersey domicile and the directly applicable precedent of *Catalanello* (as endorsed in *Kinsey*), the false light claim presented a nonfrivolous argument for the application of New Jersey law. Rule 11 does not punish reasonable, even if ultimately unsuccessful, legal contentions. *Salovaara v. Eckert*, 222 F.3d 19, 29-30 (2d Cir. 2000) (sanctions inappropriate for novel but reasonable arguments). As a *pro se* litigant at the time of opposition to dismissal and thereafter, plaintiff is entitled to additional latitude in legal research and pleading. See *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989).

The Court's ultimate application of New York law does not retroactively render the claim sanctionable; it simply reflects a merits resolution of a debatable issue. Defendant's assertion of frivolousness on this as with all other grounds fails entirely.

**Conclusion**

The Court should deny defendant Finkelman's motion for sanctions.

Respectfully submitted,

/s/ Gideon Rapaport

Gideon Rapaport, *pro se*
627 – 1078 Summit Avenue
Jersey City, NJ 07307
gideonrapaportlaw@outlook.com
(862)-213-0875