UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIDEON RAPAPORT,

Plaintiff,

-against-

ABIGAIL FINKELMAN,

Defendant.

24-CV-5942 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Gideon Rapaport, initially represented by counsel, brought this action alleging that Defendant Abigail Finkelman defamed him on Twitter for posting about a separate lawsuit Rapaport brought against other individuals. The Court dismissed Rapaport's complaint against Finkelman with prejudice, finding that it lacked any merit. Now, Finkelman brings two motions seeking to recover the attorney's fees she has incurred in defending herself in this action. The Court denies Finkelman's motion for attorney's fees under New York's anti-SLAPP law for procedural reasons and denies her motion for Rule 11 sanctions because the circumstances do not warrant them.

**BACKGROUND**

The Court assumes general familiarity with the facts underlying this action and reviews the background only as relevant to the instant motions. Rapaport's claims in this case relate to a prior lawsuit in this Court. In 2023, Rapaport filed a case against unnamed John Does—later identified to be fellow New York University law students—who he alleged conspired to defame him on the Internet in order to ruin his reputation. Complaint, *Rapaport v. Doe # 1 et al.* ("Rapaport I"), 23-CV-6709 (JGLC) (S.D.N.Y. July 28, 2023), ECF No. 1. The alleged defamation involved false statements about Rapaport and a forged poster with Rapaport's

corporate headshot suggesting that a law office's security desk barred his entry (the "Photograph"). *Id.* ¶¶ 6–9. The image was posted on Reddit.com and Top-Law-Schools.com but, according to Rapaport, not "indexed by any search engine" at the time. *Id.*; ECF No. 1 ("Compl.") ¶ 19.

Soon after the Rapaport I complaint was filed, Finkelman—posting anonymously—published a series of Twitter (now "X") posts discussing and satirizing it. "I need all of #lawtwitter to read this complaint," she wrote. ECF No. 1-2 at 2. Finkelman chided Rapaport for not including "screenshots" of "the fake 'wanted' or 'public enemy' poster" involved in the Rapaport I action. ECF No. 1-2 at 2. Replying to this comment, Finkelman later published an image of the Photograph, which she had received directly from an unnamed source. *See* ECF No. 1-2 at 20. After Finkelman's post, the Photograph "was, and remains, widely available." Compl. ¶ 19. Finkelman continued to post about the case between August 2023 and May 2024, according to screenshots Rapaport attached to the Complaint. *See generally* ECF No. 1-2.

On August 5, 2024, Rapaport filed this action alleging defamation and the New Jersey tort of false light and invasion of privacy. *See* Compl. His claims stemmed from Finkelman's online commentary about Rapaport I and in particular, her posting of the Photograph. *See* ECF No. 52 ("MTD Opinion") at 6 (citing Compl. ¶¶ 6, 27–33).

Although Rapaport has proceeded pro se for the vast majority of this litigation, he was initially represented by counsel Richard Altman, who filed the Complaint. *See* Compl. On September 9, 2024—just over a month after filing this action—Altman informed the Court that he "was no longer authorized" to represent Rapaport. ECF No. 8. On September 17, 2024, the Court permitted Altman to withdraw with Finkelman's consent. ECF Nos. 11, 13. However, per Finkelman's request, the Court retained jurisdiction over Altman to adjudicate any request for

Rule 11 sanctions. ECF Nos. 13–14, 16. Rapaport, proceeding pro se, filed a motion for sanctions against Finkelman's counsel on October 17, 2024. ECF No. 24. On October 21, 2024, Finkelman then filed her motion to dismiss Rapaport's complaint and her first Rule 11 sanctions motion against Rapaport and Altman. ECF Nos. 17, 20. At that juncture, the Court stayed briefing on both sanctions motions until after its decision on the Motion to Dismiss. ECF No. 30.

On August 29, 2025, the Court issued its Opinion and Order on the Motion to Dismiss. *See* MTD Opinion. It determined that Finkelman was immune from liability under the New York Civil Rights Law's fair report privilege and that, in any event, "her tweets amount to nothing more than non-actionable opinions or, at most, statements which can be verified as true." *Id.* at 2. The Court also rejected Rapaport's false light and invasion of privacy claim because the claim does not exist under New York law, which applies to this action. *Id.* at 6. Thus, the Court dismissed all of Rapaport's claims with prejudice. *Id.* at 2.

In the wake of the Court's MTD Opinion, Finkelman filed a sanctions motion, alleging that Rapaport and his former counsel abused the legal system in filing this lawsuit. ECF No. 80. On the same day, Finkelman filed a second motion for attorney's fees under New York's anti-SLAPP law. ECF No. 83. Through these motions, Finkelman seeks full recovery of the attorney's fees, costs, and expenses associated with her defense of this action, and asks that the Court impose any other appropriate monetary and nonmonetary sanctions. *See* ECF No. 82 ("Sanctions Mot.") at 7; ECF No. 84 ("SLAPP Mot.") at 9.

**DISCUSSION**

Finkelman brings two alternative motions for attorney's fees—one under New York's anti-SLAPP law seeking fees from only Rapaport, and another seeking fees as a sanction under

Rule 11 jointly and severally from Rapaport and his former attorney, Altman. The Court denies both requests in turn below.

## I. Defendant's Anti-SLAPP Motion Fails

New York is one of many states with a so-called "anti-SLAPP law"—that is, a law limiting "strategic lawsuits against public participation" that have "little legal merit but are filed nonetheless to burden opponents with legal defense costs and to discourage those who might wish to speak out in the future." *Satanic Temple, Inc. v. Newsweek Digital LLC*, 177 F.4th 202, 210–11 (2d Cir. 2026) (cleaned up); *Carroll v. Trump*, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022). "Anti-SLAPP laws are intended to deter actions filed to punish or harass a defendant for participating in public life." *Carroll*, 590 F. Supp. 3d at 580. In New York, the law allows a defendant to recover fees, costs, and other damages from the plaintiff who brought the meritless suit. *Id.* at 581.

New York's anti-SLAPP law, as amended, contains both substantive and procedural provisions. First, substantively, it provides that "[a] defendant in an action involving public petition and participation . . . may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action." N.Y. Civ. Rts. L. § 70-a(1). The law covers any public communication made about "an issue of public interest" where a lawsuit directed at that communication was brought or continued without "a substantial basis in law and fact." *Carroll*, 590 F. Supp. 3d at 580–81 (quoting N.Y. Civ. Rts. L. §§ 70-a(1)(a), 76-a(1)(a)). Upon meeting this standard, the party who made the public communication is entitled to costs and attorney's fees. *See Carroll*, 590 F. Supp. 3d at 581. The law also contains certain procedural provisions that "are designed to facilitate the early dismissal of baseless SLAPP suits by flipping the burden of proof ordinarily

applied under state law to motions to dismiss and motions for summary judgment." *Heilbut v. Cassava Sciences, Inc.*, 778 F. Supp. 3d 551, 565 (S.D.N.Y. 2025) (cleaned up).

Finkelman contends that this case squarely fits within New York's anti-SLAPP law: Rapaport brought frivolous claims to harass her for the public statements she made about Rapaport's prior lawsuit and to pressure her to remove her commentary. *See* SLAPP Mot. The issue, however, is whether Finkelman may recover these fees through the motion she filed, or whether she is required to bring it by a separate claim. This Court joins many others in this District in concluding that Defendant cannot recover these fees, under the anti-SLAPP statute, by motion in federal court.

Courts in this District disagree about whether any portion of New York's anti-SLAPP law applies in federal court. *Compare, e.g.*, *Prince v. Intercept*, 634 F. Supp. 3d 114, 142 (S.D.N.Y. 2022) (collecting cases finding that Section 70-a is "inapplicable in federal court") *with Grifols, S.A. v. Yu*, No. 24-CV-00576 (LJL), 2026 WL 836657, at *4 (S.D.N.Y. Mar. 26, 2026) (collecting cases that "favor[] the application of the substantive standards of the New York anti-SLAPP statute in federal court"). Although the Second Circuit recently upheld the application of another provision of the law in federal court, it has yet to reach the relevant provision here: Section 70-a. *See Satanic Temple, Inc. v. Newsweek Digital LLC*, 177 F.4th 202, 211–12 & n.7 (2d Cir. 2026). There is "an emerging trend of cases favoring the application of the substantive standards of the New York anti-SLAPP statute," including Section 70-a, "in federal court." *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049 (LJL), 2026 WL 852733, at *4 (S.D.N.Y. Mar. 27, 2026); *see also, e.g.*, *Grifols, S.A.*, 2026 WL 836657, at *4; *Button v. New York Times Co.*, No. 24-CV-5888 (MKV), 2025 WL 2643674, at *20–21 (S.D.N.Y. Sept. 15, 2025); *Heilbut v. Cassava Sciences*,

Inc., 778 F. Supp. 3d 551 (S.D.N.Y. 2025); *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 182 (S.D.N.Y. 2024), *appeal withdrawn*, No. 25-17, 2025 WL 1009663 (2d Cir. Mar. 31, 2025).

The Court, however, need not determine whether the anti-SLAPP law applies in federal court because the statute itself resolves Finkelman's motion. As several other courts in this District have recently found, the statute's plain language, which provides that a defendant "may maintain an action, claim, cross claim, or counterclaim" to recover attorney's fees, precludes a Section 70-a fees application brought by motion in federal court. N.Y. Civ. Rts. L. § 70-a(1); *see also, e.g.*, *Morley v. Oliver*, No. 25-CV-2563 (RA), 2026 WL 1552346, at *13 (S.D.N.Y. June 2, 2026); *Torres v. Carlson*, No. 25-CV-3474 (CM), 2026 WL 1534439, at *19 (S.D.N.Y. June 1, 2026); *Wang v. Sussman*, No. 24-CV-3987 (AS), 2025 WL 2607155, at *4 (S.D.N.Y. Sept. 9, 2025). This Court agrees. Although Finkelman did not have the opportunity to assert an anti-SLAPP counterclaim in this action—and the law governing how to pursue anti-SLAPP fees was less established when she filed this motion—her available remedy at this juncture is to "file a follow-on case seeking fees." *Wang*, 2025 WL 2607155, at *6 (S.D.N.Y. Sept. 9, 2025). Accordingly, Defendant's motion, in this regard, is denied.

## II. Rule 11 Sanctions Are Not Warranted Against Rapaport and Are Procedurally Impermissible Against His Former Counsel

Finkelman claims three independent grounds for Rule 11 sanctions: first, that Rapaport's claims were frivolous and thus Altman violated his duty to evaluate the validity of the claims and to decline to pursue frivolous claims; second, that Rapaport's allegations of injury were demonstrably false because he alleged the same injury, attributable to different events, in Rapaport I; and third, that the Complaint "was pursued for an improper purpose, namely to harass, intimidate, and inconvenience Ms. Finkelman." Sanctions Mot. at 7. The Court first finds that Finkelman offers no basis for relief from Rule 11's safe harbor provision, which bars

sanctions against Altman. Next, in light of Rapaport's previously represented and now pro se status, the Court declines to impose Rule 11 sanctions against him.

**A. Legal Standard**

Rule 11 of the Federal Rules of Civil Procedure requires that parties, in making representations to a court, certify that all submissions are for a proper purpose, that factual contentions are supported by available evidence, and that "denials of factual contentions are warranted on the evidence." Fed. R. Civ. P. 11(b); *see also Parnoff v. Fireman's Fund Ins. Co.*, 796 F. App'x 6, 8 (2d Cir. 2019) (citation omitted). It creates an "incentive to stop, think and investigate more carefully before serving and filing papers." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (internal quotation marks omitted). And, it "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *AJ Energy LLC v. Woori Bank*, 829 Fed. App'x 533, 535 (2d Cir. 2020) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)). Throughout a case, a plaintiff also has a "'continuing obligation' to ensure that the action has reasonable support and, if not, to withdraw it." *Klein v. Aicher*, No. 19-CV-9172 (RA), 2020 WL 4194823, at *11 (S.D.N.Y. July 21, 2020) (citing *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018)).

Rule 11 obligations are measured under an "objective unreasonableness" standard, which a party's pro se status is factored into. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003); *Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 142 n.9 (S.D.N.Y. 2005), *aff'd,* No. 5-2971, 2008 WL 749564 (2d Cir. Mar. 20, 2008) (cleaned up). That standard "is purposefully high, so as not to stifle legal creativity and zealous advocacy." *Galin*, 283 F. Supp. 3d at 201. "Rule 11 sanctions are reserved for extraordinary circumstances," and courts are directed to "resolve all

doubts in favor of the signer" of a pleading. *Id.* (quoting *Park v. Seoul Broad. Sys. Co.*, No. 5-CV-8956 (BSJ) (DFE), 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6. 2008)); *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

When Rule 11 sanctions are filed against a pro se party, the special solicitude that the Second Circuit affords such litigants kicks in. Pro se pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) *(per curiam)* (internal citation omitted). Accordingly, a court may consider the "special circumstances" of pro se parties who are "untutored in the law" when contemplating Rule 11 sanctions, and this Court does so.[1] *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989). Nevertheless, "[a]lthough some hesitation in imposing sanctions against a party proceeding pro se is warranted, 'pro se filings do not serve as an impenetrable shield, for one acting pro se has no license to harass others . . . .'" *Stengel v. Black*, No. 10-CV-8661(CM), 2011 WL 4975767, at *2 (S.D.N.Y. Oct. 18, 2011) (quoting *Durant v. Traditional Invs., Ltd.*, 135 F.R.D. 42, 49 (S.D.N.Y. 1991)).

**B. Altman May Not Be Sanctioned Pursuant to Rule 11 for Filing the Complaint**

Finkelman seeks sanctions against Altman for filing a frivolous action. Sanctions Mot. at 7. Altman argues that he cannot be subjected to Rule 11 sanctions for filing the Complaint in this action because he lacked notice and an opportunity to withdraw the Complaint, ECF No. 91, and the Court agrees. Rule 11 requires that a motion for sanctions be served on the party against whom sanctions are sought at least 21 days before it is "filed or . . . presented to the court." Fed. R. Civ. P. 11(c)(2). This "safe harbor" period "generally provid[es] protection against sanctions if

[1] Although Plaintiff has graduated from law school and passed the New York Bar Exam, he is not an attorney and has never practiced law as an attorney. Compl. ¶¶ 1, 7. As such, the Court, out of an abundance of caution and as it has done before, continues to extend to him the special protections that pro se litigants receive.

[the relevant entities] withdraw or correct contentions after a potential violation is called to their attention." Fed. R. Civ. P. 11(b)–(c) advisory committee's note to 1993 amendment. It is a "strict procedural requirement," and "only conduct explicitly referred to in the instrument providing notice is sanctionable." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (citations omitted). The "sensible balance" in this rule is evident: It "mak[es] a lawyer sanctionable for an objectively unreasonable submission and at the same time afford[s] the lawyer a 'safe harbor' opportunity to reconsider and withdraw a submission challenged by an adversary." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003).

Here, Altman was not provided an opportunity to cure the deficiencies in the Complaint. Finkelman's counsel did not serve Altman with the Rule 11 sanctions motion until September 27, 2024—ten days *after* Altman had already withdrawn from this action. ECF No. 81–8 ¶ 2. By that point, Altman could not withdraw the Complaint in this action. And as such, Altman's inability to take action to remedy potentially sanctionable conduct during the safe harbor period was not within his control. "Courts typically 'look to New York Rules of Professional Conduct for guidance on motions to withdraw.'" *City Merch. Inc. v. Tian Tian Trading Inc.*, No. 19-CV-9649 (MKV), 2021 WL 119075, at *3 (S.D.N.Y. Jan. 13, 2021) (quoting *Szulik v. Tag Virgin Islands, Inc.*, No. 12-CV-1827 (PKC), 2013 WL 6009945, at *1 (S.D.N.Y. Nov. 13, 2013)). And, when a client fires his attorney, "withdrawal is mandatory." *Id.* (citing 22 N.Y.C.R.R. § 1200 (Rule 1.16(b)(3))). Altman informed the Court that Rapaport fired him on September 9, 2024, and the Court granted Altman's application to withdraw on September 17, 2024. ECF Nos. 8, 13.

Accordingly, Altman was unable to benefit from the notice requirements of Rule 11, and thus cannot be sanctioned under Rule 11 for his filing of the Complaint.[2]

**C. The Court Declines to Impose Monetary Sanctions Against Rapaport**

Because Altman may not be sanctioned under Rule 11, the Court only addresses the merits of Finkelman's arguments for sanctions against Rapaport. *See* Fed. R. Civ. P 11(c)(1) (permitting courts to impose appropriate sanctions "on any attorney, law firm, or party that violated the rule or is responsible for the violation"); *Maduakolam*, 866 F.2d at 56 ("Rule 11 applies both to represented and pro se litigants . . . ."). Finkelman maintains that Rapaport should be sanctioned for falsely alleging injury in this action and for pursuing frivolous claims with a harassing purpose. The Court addresses each argument in turn.

First, the Court rejects Finkelman's contention that Rapaport should be sanctioned because he alleged an injury that is factually false. In the Complaint, Rapaport alleges that Finkelman's Twitter thread caused him not to seek admission to the New York Bar. Compl. ¶ 7. Finkelman argues that this claim runs afoul of Rule 11(b)'s requirement that factual allegations have evidentiary support. Sanctions Mot. at 12–13. Her argument rests on the fact that the same injury is alleged in two different complaints detailing different events occurring in different years. *Id.* However, the Court credits Plaintiff's account that, for him, "multiple causes" contributed to "the same result." ECF No. 93 at 7. While Plaintiff's decision not to apply to the Bar is not legally compensable in this action—or, indeed, in the other actions where he alleged

[2] Finkelman did not request that the Court order sanctions under its inherent powers, so the Court does not consider doing so here. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–49 (1991) (recognizing that although "inherent powers must be exercised with restraint and discretion," they may still form the basis for sanctions where "procedural rules exist which sanction the same conduct"); *but see also id.* at 51 (distinguishing cases where inherent power sanctions are impermissible because they "thwart[] the purposes of the other sanctioning mechanisms").

the same injury—that claimed injury does not constitute an objective falsity that merits sanctions.

Second, the Court cannot conclude that Rapaport brought this action for an improper purpose that warrants sanctions. In inferring improper purpose, courts consider whether, "in light of [Plaintiff's] conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit." *An v. Despins*, No. 22-CV-10062 (VEC), 2023 WL 4931832, at *6 (S.D.N.Y. Aug. 2, 2023). There is support that Rapaport pursued this lawsuit "to intimidate Ms. Finkelman" into "delet[ing] her entire [Twitter] thread" about Rapaport I.[3] Sanctions Mot. at 16. Rapaport's main concern, it appears, is that the Photograph was "never indexed by any search engine" until its appearance on Finkelman's Twitter, after which "it was, and remains, widely available." Compl. ¶ 19. And, as Defendant notes, this action "essentially doxxed Ms. Finkelman" by "directly and publicly associat[ing] her with an online account she had intentionally chosen to keep anonymous." Sanctions Mot. at 15.

However, the Court cannot ultimately conclude from the circumstances that Rapaport pursued a frivolous lawsuit for a harassing purpose. Rapaport first brought this action through his counsel, who asserted legal claims on his behalf. This fact suggests that by relying on his experienced, licensed attorney—Altman—Rapaport believed there was a legitimate legal remedy for the harm he claims he suffered. Indeed, Altman filed this case and certified that the claims were not baseless. And a represented party may not be sanctioned for failing to ensure that the

[3] The Court does not credit much of Finkelman's characterization of Rapaport's intent to harass Finkelman. *See* Sanctions Mot. at 14–15. Rapaport appears before this Court as a plaintiff in four cases, and the Court is well acquainted with his briefing style. Rapaport's commentary about Finkelman mirrors similar statements about the defendants in Rapaport I and the related action, *Rapaport v. Epstein*, 24-CV-7439 (JGLC). Indeed, it is unsurprising that a pro se plaintiff who feels personally harmed by a defendant's actions is "displease[ed] with Ms. Finkelman[]." Sanctions Mot. at 14. That fact alone does not evince an intent to harass.

legal contentions their counsel put forward were warranted by existing law. *See Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 140 (S.D.N.Y. 2002)) ("A represented party, as Plaintiff was at the inception of this action, may not be sanctioned monetarily for a violation of subdivision (b)(2).").

Furthermore, although the Court resoundingly rejected Rapaport's defamation claim, Rapaport also asserted a claim for false light and invasion of privacy. The Court never reached the merits of this claim and dismissed it solely on choice of law grounds. It is difficult to conclude, then, that this claim was frivolous and brought solely to harass Finkelman.

Although the Court is sympathetic to the costs that Finkelman has incurred in defending this action, "the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses." *Lipin v. Hunt*, 573 F. Supp. 2d 836, 846 (S.D.N.Y. 2008) (quoting *Caisse Nationale de Credit Agricole–CNCA, N. Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 266 (2d Cir. 1994)). The Court did not find—nor did Finkelman cite—any sufficiently analogous precedent justifying their imposition here. This case was Rapaport's first against Finkelman. Even though he subsequently filed a second case against her, *Rapaport v. Beryl Finkelman*, 25-CV-7294 (JGLC) (S.D.N.Y.), Rapaport seeks substantially different relief in the second case. *Cf. Williams v. Off. Of Child Support*, No. 21-CV-8235 (PAE) (RWL), 2023 WL 2396354, at *4 (S.D.N.Y. Mar. 3, 2023), *report and recommendation adopted* 2023 WL 3967791 (S.D.N.Y. June 13, 2023) (finding an intent to harass where the plaintiff filed the same claim a third time against the same defendant after two *sua sponte* dismissals).

Additionally, courts in this District disfavor monetary sanctions against pro se parties. *See, e.g.*, *Hubbuch v. Cap. One, N.A.*, No. 25-CV-406 (VSB) (RWL), 2026 WL 691261, at *30

(S.D.N.Y. Feb. 10, 2026) (declining monetary sanctions, despite finding that the plaintiff's improper conduct was willful or negligent, part of a pattern of activity across multiple cases, and increased the time and expense of litigation); *Zimmerman v. UBS AG*, No. 17-CV-4503 (JMF), 2018 WL 4054860, at *5 (S.D.N.Y. Aug. 24, 2018) (declining to impose sanctions "primarily because [the plaintiff] is proceeding pro se," despite being "tempted" to do so) (citing *Newman & Cahn, LLP. v. Sharp*, 388 F. Supp. 2d 115, 119 (E.D.N.Y. 2005) (declining to impose sanctions on a pro se plaintiff even though the plaintiff's "petition [was] frivolous and unwarranted")); *Murawski v. Pataki*, 514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007) (declining sanctions because, "[w]hile [the pro se] plaintiff's claims against [the defendant] are so completely without merit as to border on the vexatious, plaintiff may not have been aware or warned of the possible imposition of sanctions"). And, in those cases where sanctions have been recommended or imposed, the conduct of the pro se parties rose to a more egregious level of willfulness and clear litigation harassment than was present here. *See, e.g.*, *Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14-CV-2065 (AJN), 2015 WL 13654007, at *34 (S.D.N.Y. Mar. 26, 2015) (imposing a $5,000 sanction on an attorney representing herself who the court deemed to be "using litigation as a tool for revenge or extortion" where "the facts known to [the plaintiff] provided no support *whatsoever* for any of [her] claims); *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 141 (S.D.N.Y. 2002) (imposing $3,000 worth of attorney's fees for four successive lawsuits on substantially overlapping—and decided—grounds, for the express purpose of "deter[ring] repetition of the offending conduct").

For all of these reasons, the Court declines to impose monetary sanctions under Rule 11 in this case.

**CONCLUSION**

For the foregoing reasons, Finkelman's motions for attorney's fees and other sanctions are DENIED. The Clerk of Court is directed to terminate ECF Nos. 80 and 83.

Dated: September 1, 2026
White Plains, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge